**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:24-cv-0927**

| | |
|---|---|
| **BRENT ROBERTS and** )<br>**REGINALD E. BLOOM, JR.,** )<br>)<br>    **Plaintiffs,** )<br>)<br>**v.** )<br>)<br>**GASTON COUNTY, NORTH CAROLINA,** )<br>**CHAD BROWN, In His Individual Capacity,** )<br>**and STEPHEN ZILL, In His Individual** )<br>**Capacity.** )<br>)<br>    **Defendants.** )<br>) | **COMPLAINT**<br><br>**(JURY TRIAL DEMANDED)** |

The Plaintiffs, Brent Roberts and Reginald E. Bloom, Jr., aver and say the following:

**INTRODUCTION & BACKGROUND**

In 1972, Detective Walter McGill brought a civil lawsuit in the U.S. District Court for the Western District of North Carolina against the Gaston County Police Department, alleging he was denied promotional opportunities because of his race (black). Subsequently, the District Court entered judgment in favor of Officer McGill, awarding McGill back pay and promoting him to the rank of Sergeant. Additionally, the Court recognized that systemic racism existed within the Gaston County Police Department and ordered measures to be implemented to combat racial inequalities then existing within the Department. Those measures resulted in positive changes, such as establishing written rules for promotions, and, as a result of these measures, more black officers were hired and promoted into leadership positions, including, the eventual promotion of James

Buie, to the rank of Chief of Police in 2011 - the first African-American officer to hold such a position in the history of the Gaston County Police Department.

However, as discussed in this action, beginning in or about 2015, the racism that plagued the Gaston County Police Department in the '70's has made an ugly resurgence and the Defendants named in this case have devised new methods of keeping blacks out of leadership positions. Those methods include, but are not limited to, frequent changes in the procedures used for promotions to leadership positions, creation of new promotional criteria that violates state law, the elimination of promotional testing, failing to post leadership positions, and failing to adhere to stated selection criteria. For example, as discussed in further detail below, during 2023, discriminatory measures were taken by Defendant Gaston County, by and through the efforts of Defendant Chad Brown, Chairman of the County Board of Commissioners, to disregard the County's publicly stated selection criteria, as well as State law, to ensure that an internal white male applicant, then Captain Stephen Zill, be promoted to the rank of Chief of Police – despite the fact that he did not meet the stated qualifications for the position. More disturbing, Defendant Brown placed a post on Facebook - which he has now taken down – stating that he wants to "start a white dudes" club for himself, whose membership includes a number of white officers within the Gaston County Police Department including Assistant Chief Anderson Holder – Captain Roberts' and Captain Bloom's immediate supervisor.

Most significantly, since 2023, Defendant Chief of Police, Stephen Zill, has promoted a "good old boys" culture and has aligned himself with Defendant Brown's "white dudes" mentality by discriminatorily instituting unwritten selection criteria for the position of Assistant Chief of Police, by ignoring state mandated promotion procedures, by failing to post open positions and to articulate selection criteria for the selection of qualified candidates for leadership positions. Instead, he has stated in the presence of the Plaintiff, Captain Brent Roberts, that only members of the all-

white Emergency Response Team or "ERT" make the "best leaders," thus, indicating that only white officers will be considered by him for promotional opportunities for leadership roles. Furthermore, Defendant Zill has fostered and encouraged a retaliatory working environment for anyone, including the Plaintiffs, Captain Roberts and Captain Bloom, who dare to challenge racial inequities and discriminatory policies existing within the Gaston County Police Department.

## II.
## <u>NATURE OF ACTION</u>

This civil action arises from violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter referred to as "Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 ("Section 1983") and state law. The Plaintiffs, Brent Roberts and Reginald E. Bloom - who currently serve as Captains of the Gaston County Police Department - allege that the Defendants have denied them promotional opportunities because of their race (black), and in the case of Captain Roberts, have retaliated against him for his history of advocacy for equal employment opportunities for minorities who serve within the Gaston County Police Department. In addition, Captain Roberts and Captain Bloom contend that the Defendant Gaston County currently maintains policies and practices intended to exclude them and other minorities from promotional opportunities because of race, and to effectively establish a glass ceiling, barring qualified black and minority candidates from obtaining the highest leadership ranks within the Gaston County Police Department. In sum, the Defendants have moved the goal post with the intent and purpose to deny Captain Brent Roberts, Captain Bloom, and other minorities promotional opportunities because of race and in retaliation for their protected activity.

In this action, Captain Roberts and Captain Bloom seek appropriate equitable and monetary relief from the Defendants in the form of present and future lost wages, compensatory damages for emotional distress, punitive damages against the individual Defendants, attorney's fees and costs,

and such other relief to which they are entitled as a consequence of the Defendants' discriminatory acts.

## III.
## JURISDICTIONAL STATEMENT & PARTIES

1.     The Plaintiff, Brent Roberts, is a black male citizen and resident of Cleveland County, North Carolina. At all times relevant to this Complaint, Captain Roberts was, and continues to be an employee of the Defendant, Gaston County, North Carolina. He currently serves Defendant Gaston County as a Captain of the Gaston County Police Department.

2.     The Plaintiff, Reginald E. Bloom, Jr., is a black male citizen and resident of Gaston County, North Carolina.  At all times relevant to this Complaint, Captain Bloom was, and continues to be an employee of the Defendant, Gaston County, North Carolina.  He currently serves the Defendant Gaston County as a Captain of the Gaston County Police Department.

3.     The Defendant, Gaston County, North Carolina (hereinafter referred to as "Defendant County"), was, and is a county government organized and existing under the laws of the State of North Carolina.

4.     At all times relevant herein, the Defendant County is and continues to be an "employer" under federal and state law in that it is engaged in commerce and/or an activity or industry affecting commerce, and employs fifteen (15) or more employees for each working day during each of twenty (20) or more calendar workweeks in this the current and/or preceding calendar year. Currently, the Gaston County Police Department employs 150 officers and over 100 civilian employees.

5.     At all times relevant herein, Defendant County has waived its governmental immunity by the purchase of liability insurance coverage and/or through its participation in a governmental risk pool.

6.     Defendant Chad Brown ("Defendant Brown") is the Chairman of the Defendant County's Board of County Commissioners and has held the role of Chairman over the last several years of Captain Roberts' employment with Defendant County.  Based upon information and belief,

Defendant Brown became Defendant County's Chairman of the Board of County Commissioners in or about 2020. As Chairman of Defendant County's Board of County Commissioners, Defendant Brown holds significant influence and authority over the affairs of Defendant County, including decisions regarding its operational policies and procedures. Defendant Brown exercises and continues to exercise substantial influence and control over Defendant County's County Manager, who reports to Defendant County's Board of County of Commissioners. At all times relevant to this Complaint, Defendant Brown exercised substantial influence and authority over the decisional processes related to the adverse discriminatory actions described in this Complaint.

7.     Stephen Zill is the current Chief of Police of the Gaston County Police Department. Under Defendant County's policies, the Chief of Police is responsible for, among other things, administering the Gaston County Police Department's role in the promotional process and for establishing criteria for promotion consistent with Defendant County's Human Resources policies and consistent with state and federal law.

8.     This Court has jurisdiction over the parties and the subject matter of this Complaint. Venue in the U.S. District Court for the Western District of North Carolina is proper.

9.     All procedural prerequisites to the institution of this action have been fulfilled.

## IV.
## STATEMENT OF FACTS

**A.     Captain Roberts' Employment with Defendant County.**

10.     Captain Roberts is a 1993 graduate of Kings Mountain High School located in Kings Mountain, North Carolina. Following his graduation from high school, Captain Roberts obtained a B.S. degree in Business Administration and Law from Western Carolina University. Following his graduation, Defendant County hired Captain Roberts in August, 1997 as a community police (Patrol) officer with the Gaston County Police Department. Captain Roberts completed his Basic

Law Enforcement Training at Gaston College during December, 1997. In 2004, he received his Advanced Law Enforcement Certification from the State of North Carolina.

11.    Throughout his more than 27 years of dedicated service to Defendant County's Police Department, Captain Roberts has been recognized for his outstanding performance. For example, the Gaston County Police Department awarded Captain Roberts Special Investigations Officer of the Year in 2016 and, during 2021, the Gaston County Police Department presented him with an Outstanding Service Award. In 2024, Captain Roberts was awarded the John Marable Award at the annual North State Law Enforcement Conference held in Raleigh, North Carolina.

12.    Since beginning his employment with Defendant County, Captain Roberts has progressed slowly through the ranks, after participating in multiple promotional processes where he was listed as the #1 candidate yet denied those promotions, and despite the fact that he achieved high ratings on his annual job performance evaluations. Over the course of his employment with Defendant Gaston County, Captain Roberts worked in multiple divisions within the Police Department, eventually attaining promotion to the rank of Captain on January 13, 2018. From November 2020 through September 16, 2024, Captain Roberts supervised Defendant County's Telecommunications Division. In that role, Captain Roberts supervised 63 telecommunicators and was responsible for an annual budget of $5,000,000.00. The Telecommunications Division is a 24/7 operation, responsible for 911 and emergency calls. As Captain of this Division, Captain Roberts supervised 24% of the Department's employees and was responsible for the management of over 500,000 calls each year.

13.    As the supervisor of Defendant County's Telecommunication Division, Captain Roberts' role was a very visible and significant one. On a frequent basis, Captain Roberts communicated with Fire Chiefs, Police and EMS Chiefs, state and local officials, and various department heads of the counties surrounding Defendant Gaston County. This role was identical in responsibilities and liability to the job of Assistant Chief of Police, albeit the compensation is considerably less. Further,

every Captain who has commanded the Telecommunications Division has been promoted to the rank of Assistant Chief of Police within the Gaston County Police Department because of the similarities in responsibilities between Captain over Telecommunications and Assistant Chief of Police.

14.     Since 2017, Captain Roberts' annual job performance evaluations have exceeded expectations or have been considered high performance based upon the scoring criteria used during each respective evaluation period.

15.     Since attaining the position of Captain in 2017, Captain Roberts has publicly verbalized his desire to advance in his professional career and to obtain promotion to the position of Assistant Chief and eventually, to obtain promotion to the position of Chief of Police of Defendant County's Police Department.

16.     During 2018, candidates interested in promotion to the rank of Assistant Chief of Police of Defendant County's Police Department had to submit a resume and a letter of interest, and had to sit for an interview with the Chief of Police. According to the County's policy at that time, to be eligible for promotion, the successful candidate had to have two years of experience as a Captain. This requirement barred Captain Roberts and another black Captain from applying for the Assistant Chief positions available during that year.  During 2020, when a new Assistant Chief position became available, Defendant County changed its eligibility requirements again – this time, without notification and without placing the new eligibility requirements in writing.  This change resulted in Defendant County's only 2 black Captains being passed over for promotion.

**B.     Captain Roberts Has Been a Vocal Advocate Throughout his Employment for Equal Opportunity for Black and Minority Officers.**

17.     Throughout his employment with Defendant County, Captain Roberts has advocated for equal opportunity for black and minority officers and has otherwise engaged in protected activity under the federal anti-discrimination laws.  For instance, on August 3, 2016, Captain

7

Roberts, while serving as a Sergeant, filed an internal complaint of discrimination alleging that the Department – and in particular, then Chief of Police, Joseph Ramey – discriminated against black Sergeants and Captains with regard to promotional pay increases, and that the County maintained a practice and policy of treating black officers, including himself, unequally than similarly situated white officers. He also complained that black and minority officers with qualifications superior to those of white male officers were passed over for promotional opportunities. Although Defendant Gaston County did not sustain Captain Roberts 2016 complaint, it did make some changes, largely to pacify the complainants, including the promotion of a black officer to the position of field training officer. Since that time, however, that officer has been denied promotions in favor of less qualified white applicants.

18.     During July, 2019, Captain Roberts, and all minority supervisors, met with then Chief Ramey to discuss issues affecting minority supervisors, including a culture within the Department which created a hostile working environment for black and minority supervisors.

This meeting concerned an internal complaint filed by Captain Eric Johnson (black) and included then Sergeant, Plaintiff Reggie Bloom, and Sergeant Katherine Williamson (white female).

19.     Similarly, on April 11, 2022, Captain Roberts filed another internal complaint with then Chief Ramey and with the Defendant County's Human Resources Director, Amia Massey, alleging that minorities within the Department were being excluded and that minorities within the Department felt subjected to a racially hostile working environment. In addition, Captain Roberts complained that a former Assistant Chief of Police (white) made disparaging comments about him to other current white officers of the Police Department, including the remarks that "Brent is dead to me" and "Brent doesn't exist." Captain Roberts viewed these comments as a threat to his personal safety at that time, and in his internal complaint, he questioned whether other disparaging comments had been made about him and more specifically, whether racial slurs had been used

during the officers' conversation.

20.     The County largely ignored Captain Roberts' 2022 internal complaint, although its

investigation substantiated that the comment, "Brent is dead to me," was made. Following

Defendant County's investigation of his complaint, however, Captain Roberts received a warning

letter for alleged insubordination on December 20, 2022.  Captain Roberts denies that the

written warning was justified under the circumstances, and alleges that the warning letter was an act

of retaliation on the part of then Chief of Police, Joseph Ramey, for Captain Roberts' protected

activity.

**C.     Captain Bloom's Employment with Defendant Gaston County.**

21.     Captain Bloom is a 1997 graduate of Woodberry Forest School, located in Orange, Virginia.

Following his graduation from high school, Captain Bloom obtained a B.A. degree in Political

Science from Furman University in 2001.  Defendant County hired Captain Bloom in 2004 as a

community police (Patrol) officer with the Gaston County Police Department. Like Captain

Roberts, Captain Bloom earned his Advanced Law Enforcement Certification from the State of

North Carolina and has held various positions within the Police Department, including emergency

response team negotiator, lead criminal investigation detective, field training officer, Educational

Service Unit Sergeant, Criminal Investigation Unit Sergeant, and Civil Emergency Unit Commander.

Notably, in 2017, Captain Bloom was promoted from the rank of patrol officer to the rank of

Sergeant. After holding the rank of Sergeant for a period of 6 years, Defendant County promoted

him to the rank of Captain on April 29, 2023.

22.     Throughout his more than 20 years of dedicated service to Defendant County's Police

Department, Captain Bloom has been recognized for his outstanding performance.  For example,

the Gaston County Police Department recognized Captain Bloom for civic engagement leadership

during 2019-2020 and awarded him the Chief's Commendation during 2010.  In addition, he was

recognized for his outstanding service with a unit during May, 2009, was awarded Problem Solver of the Year in 2008, and recognized as Sworn Employee of the Month during September, 2008 and during April, 2007.

23.     Since beginning his employment with Defendant County, Captain Bloom has progressed more slowly through the ranks than some of his white peers, despite the fact that he achieved high ratings on his annual job performance evaluations. Further, since at least 2022, Captain Bloom has been warned by several of his white peers that he should "distance himself" from Captain Roberts because of Roberts' advocacy for racial equality within the Police Department.  Captain Bloom regarded these comments as a threat to his professional career within the Gaston County Police Department intended to chill his desire to complain about racial inequality and bias within the Police Department.

D.      **Gaston County's Policies for the Selection of a New Chief of Police in 2022 Were Intended to and Did Exclude Captain Roberts and Other Qualified Minorities.**

24.     On or about September 27, 2022, then Chief of Police, Joseph Ramey, announced that he would be stepping down from his position as Chief of Police once a replacement could be hired,  in order to transition to a newly-created school safety role within Defendant County.

25.     On November 4, 2023, Defendant County formally posted the Chief of Police position and began taking applications through December 5, 2022.  The announcement of the job vacancy stated that the salary range for the position of Chief of Police was $150,000.00 - $180,000.00 annually. Defendant County represented that it was conducting a nationwide search to fill the position. At the direction of Defendant Brown, however, Defendant County intended and sought to fill the vacancy with an internal white male candidate.

26.     According to Defendant County's job announcement for the Chief of Police position, the County minimally required that the successful candidate would possess **"10 years of progressive**

**law enforcement experience,** *including 5 years of senior supervisory/management experience at a command staff level"* **and a BA/BS degree (Master's degree strongly preferred….)"** A "command staff level position" within the County's Police Department means an administrative role at the level of Captain or above.

27.     Notwithstanding the County's expressed job requirements North Carolina State Law 1983-904, Section 3, states, in pertinent part, that

> The process used by the County Manager to recommend the appointment to the Office of Chief of Police shall be one …that provides equal opportunity for employment, that establishes a selection and appointment process based on merit and a reasonable evaluation of each candidates' qualifications, which may minimally include, … (1) Bachelor's Degree; (2) A minimum of *four years'* police administrative experience; (3) Above average physical condition and excellent state of health; ….

28.     The County's 5-year requirement deviated from State Law and this deviation was intended to screen out qualified internal black Captains. At the time of the County's job posting, Captain Roberts was 1 of 2 black Captains employed by the County.  The other Captain, Captain Eric Johnson, at the time the Chief of Police position was posted, had announced his plan to retire from the Police Department in May, 2023. Captain Roberts, however, possessed 4.875 years of senior/management experience at a command staff level and was literally weeks away from meeting the 5-year County requirement.

29.     At the time of the posting of the job announcement for the position of Chief of Police, Defendant Chad Brown actively encouraged at least 3 white Captains, Billy Downey, Reid Rollins, and Stephen Zill – none of whom met the County's minimum or preferred qualifications for the position of Chief of Police – to submit their applications for the role.

30.     Unlike his white counterparts, neither Defendant Brown nor any other County official, encouraged Captain Roberts or Captain Johnson to apply for the position of Chief of Police. Had Captain Roberts received the same encouragement, he would have applied for the position of Chief of Police.

11

31.    By January 10, 2023, Defendant County narrowed down the original pool of job applicants to 6 individuals – 1 of whom was an internal, fully qualified female candidate, and 2 external, fully qualified black candidates.  Downey, Rollins and Zill were not a part of the six qualified candidates.

32.    Despite the fact that they had been disqualified to move forward in the interview process, on or about January 14, 2023, Defendant Gaston County abandoned its publicly stated application process and notified the 3 white male internal applicants, Captains Downey, Rollins, and Stephen Zill, that they would be folded back into the selection process and would be included in the final round of interviews for the Chief of Police position. While Captain Billy Downey is believed to have met the 5-year requirement of command staff level experience, Captains Reid Rollins and Defendant Stephen Zill did not.

33.    On or about March 4, 2023, Defendant County selected then Captain, Defendant Stephen Zill for promotion to the position of Chief of Police of the Gaston County Police Department. In connection with its decision to select Defendant Zill, Defendant Gaston County overlooked the superior qualification of the two black external candidates, both of whom had served as Chiefs of Police, and the only female internal candidate, who had served as the County's Assistant Chief of Police since 2018. It also abandoned its publicly stated job requirements for the position.

34.    On March 6, 2023, Defendant County formally installed Defendant Stephen Zill as its new Chief of Police, despite the fact that he did not possess 5, or even 4, years of command level experience, and did not possess 10 years of progressive law enforcement experience as he had only been promoted to the rank of Sergeant in 2016. Further, Defendant Zill did not possess a Masters' Degree and did not meet the preferred qualifications stated by Defendant County in its original job posting. This fact was confirmed by a communication authored by Defendant County's HR Director, which stated, "The candidate ultimately offered the position of Chief of Police lacked the 5 years of command staff experience."

35.     In short, the Defendant County, by and through Defendant Chad Brown, discriminatorily and intentionally manipulated its own selection criteria to ensure that a white male internal candidate would be selected as its Chief of Police to the exclusion of qualified black and/or minority candidates.

**E.      The Defendants Fail to Promote Captain Roberts and Captain Bloom to the Rank of Assistant Chief of Police in Favor of Less-Qualified White Candidates During 2023**.

36.     Following his promotion to the position of Chief of Police, during March, 2023 Defendant Zill promoted Anderson Holder (white) from the rank of Sergeant to the rank of Captain. **A mere 5 months later**, in August 2023, Defendant Zill promoted Anderson Holder to the rank of Assistant Chief of Police.

37.     The position of Assistant Chief of Police was not posted, nor was any competitive bidding or evaluation conducted for the position. Further, Defendant County published no eligibility criteria for the position as required by North Carolina law.  Had the position been posted both Plaintiffs, Captains Roberts and Bloom, would have applied for it.

38.     At the time of Holder's promotion to Assistant Chief of Police, Captain Roberts had been at the top of an eligibility list for promotion to the position of Assistant Chief for several years. Further, at the time of Anderson Holder's promotion, Captain Roberts had held a command staff level position since January 2018, versus the less than 5 months Holder had held a Captain's rank. Moreover, Captain Roberts had more experience than Holder with the Gaston County Police Department. As of August, 2023, Anderson Holder had 17 years of experience with the Police Department versus Captain Roberts' 26 years of experience.  Captain Roberts also had superior supervisory/management experience when compared to that of Holder.

39.     At the time of Holder's promotion to Assistant Chief of Police, Captain Bloom had been employed by the Defendant for 19 years, compared to Holder's 17 years of employment.  Captain

Bloom had more experience with the Gaston County Police Department than Holder and had more supervisory/management experience when compared to that of Holder.

40.     Defendant Zill selected Holder and refused to select, or even consider, Captain Roberts or Captain Bloom for the position of Assistant Chief of Police because of their race.

41.     Similarly, on November 14, 2023, Defendant Zill selected Captain Jon Cole (white) for the rank of Assistant Chief of Police. The Defendant County did not post the position vacancy nor was the position the subject of a competitive bidding or evaluation process in violation of State law. Had the position been posted, both Captains Roberts and Bloom would have applied for it.  At the time of Cole's promotion, Captain Roberts had superior supervisory/management experience when compared to that of Cole.  Furthermore, prior to his promotion, Cole had announced that he had planned to retire from the Gaston County Police Department in January 2024. Defendant Zill selected Cole and refused to select, or even consider, Captains Roberts or Bloom for the position of Assistant Chief of Police because of their race.

42.     North Carolina state law 1983-904, Section 8, states in pertinent part, "All promotions within the Gaston County Police Department shall be made by the Chief of Police pursuant to the policies and procedures adopted by the Board of County Commissioners; provided, that promotions to any position other than Chief of Police shall be made by the Chief of Police **after a competitive examination is administered to eligible officers**." With regard to the selections of Holder and Cole to the position of Assistant Chief of Police, Defendant Zill deliberately disregarded State law, conducted no competitive examination of eligible officers, and intentionally excluded Captains Roberts and Bloom from selection because of their race.

43.     Neither Captain Roberts, nor Captain Bloom, nor any black officer has ever been fast-tracked for promotion in the same manner as Defendant Chief Zill and Assistant Chief Anderson Holder. For example, since his promotion to Captain in March, 2023, Assistant Chief Holder's

hourly compensation has almost doubled. Similarly, Assistant Chief Cole's hourly compensation has dramatically increased since 2023.

44. Since at least 2011, all Assistant Chiefs of Police employed by Defendant County's Police Department have been white.

**F.** **Captain Roberts Lodges Complaints Regarding Defendant County's Discriminatory Employment Practices and Becomes the Target of Disparate Treatment**.

45. Since the promotion of Defendant Zill to the position of Chief of Police and since the promotions of Anderson Holder to Assistant Chief of Police, Captain Roberts has been the subject of disparate treatment in the terms and conditions of his employment.

46. During July, 2023, for instance, Defendant Zill claimed that Captain Roberts was on a Performance Improvement Plan and that he had not complied with its terms and demanded an explanation. The allegation that he had been placed on any formal Performance Improvement Plan is false and Captain Roberts immediate supervisor at that time, Assistant Chief Suzanne Mauney-Smith, stated she was unaware of any such Performance Improvement Plan directed at him. The falsity of Defendant Zill's allegation was also confirmed by Defendant County's Human Resources Director and Public Safety Director, Vincent Wong.

47. As another example of the disparate treatment and hostility directed at Captain Roberts, during October, 2023, Defendant Zill directed Captain Roberts to go home because he was wearing a gray shirt with his uniform and to change into a white shirt. Captain Roberts had been wearing a gray shirt for almost one year as had several white officers. On the date in question, Defendant Zill did not direct Captain Roberts' white counterparts, who were also wearing gray shirts, to go home and change.

48. In addition, since his promotion, Defendant Zill has questioned Captain Roberts' decision-making authority within the Communications Division and complained that he did not like how Captain Roberts writes his reports but gave no feedback regarding what was objectionable

about them. Captain Roberts, however, has never previously received any coaching or disciplinary action regarding his writing skills.

49.     Further, since the promotion of Anderson Holder to the position of Assistant Chief of Police, Anderson Holder has refused to return Captain Roberts' calls and refuses to engage in verbal communications with him. Instead, Holder requires Captain Roberts to text or email him if he wishes to have any communication with him at all. Captain Roberts has not observed Anderson Holder to treat his white counterparts in a similar manner.

50.     Both Chief Zill and Assistant Chief Holder have also excluded Captain Roberts from meetings where most, if not all, other Captains are included. For instance, Defendant Zill sent Captain Roberts to an out-of-county meeting that was not relevant to his position on a day when a critical meeting was being held with all Captains.

51.     In connection with his 2023 Job Performance evaluation, Captain Roberts wrote that he found the current culture within the Gaston County Police Department to be "hostile and discriminatory" and that a "good old boys' club culture flourishes" under the administration of Defendant Zill.

52.     In late November, 2023, Captain Roberts verbally complained to Defendant County's Human Resources Director, Amia Massey, and to Vincent Wong, Defendant County's Public Safety Manager, regarding actions and employment practices Captain Roberts reasonably perceived to be discriminatory on the basis of race and his previous protected activity. Ms. Massey, however, was dismissive of Captain Roberts' complaint and told him there would be no investigation unless he filed a formal grievance with the County.

53.     On January 29, 2024, Captain Roberts filed a formal written grievance with Defendant County's Human Resources Department, alleging race discrimination in the area of promotional opportunities and disparate treatment because of race. In addition, Captain Roberts alleged that he

had been subjected to a hostile working environment because of his race and because of his previous protected activity.

54.     On January 29, 2024, Captain Roberts also filed a formal charge of discrimination with the U.S. Equal Employment Opportunity Commission, styled, *"Brent Roberts v. Gaston County, North Carolina*," EEOC Charge No. 430-2024-01433.  In his charge of discrimination, Captain Roberts alleged that Defendant County discriminated against him in violation of Title VII of the Civil Rights Act, of 1964, as amended.  A copy of Captain Roberts' charge of discrimination is attached hereto as "**Exhibit 1**."

55.     On April 23, 2024, Defendant County concluded its investigation regarding Captain Roberts' internal grievance and dismissed his grievance as unsubstantiated.

56.     Unfortunately, Captain Roberts has continued to be the subject of retaliatory conduct, as well as disparate treatment, because of his race and his protected activity.

57.     On or about June 10, 2024, Captain Bloom informed Captain Roberts that he received a report from one of the white officers he supervises, that a former member of the ERT, wanted to physically assault Captain Roberts. On June 11, 2024, Captain Roberts, through his attorney, informed counsel for Defendant County of what he perceived as a threat to his personal safety. Despite this notification, Defendant County did not undertake any investigation regarding this threat to Captain Roberts' personal safety and well-being.

58.     On July 29, 2024, the U.S. Equal Employment Opportunity Commission issued its Notice of Right to Sue to Captain Roberts in the matter of EEOC Charge No. 430-2024-01433.  A copy of the Notice of Right to Sue is attached hereto as "**Exhibit 2**."

**G.     Captains Roberts and Bloom Are Passed Over for Promotion a Third Time.**

59.     On or about August 2, 2024, the Defendant County announced that it planned to fill a third Assistant Chief of Police position.  In connection with this announcement, the Defendant

County again changed its promotional policies for that position. Specifically, the new policy states that

> Any sworn employee who receives a sustained violation from the list below will be ineligible for promotion or participating in a promotional process for Assistant Chief for a period of two (2) years from the date of adjudication of said allegation:
>
> *      Unsatisfactory performance
> *      Truthfulness
> *      Insubordination
> *      Conformance to laws that results in an arrest and conviction (e.g. DWI, Domestic Violence)
>
> Exceptions: Nothing in this policy shall serve to restrict the authority of the Chief of Police to make promotions, demotions, or appointments in any position he or she shall deem to be in the best interest of the Department.

60.     The requirement that an applicant for the Assistant Chief position have no sustained disciplinary action for a 2-year period was never previously a stated minimum requirement for the position. The current requirement that the applicant have no violations from the list for a period of two (2) years would make Captain Roberts ineligible for promotion to the position of Assistant Chief despite his overall experience, knowledge, and years of service with Defendant County.

61.     The change to Defendant County's promotional process for the position of Assistant Chief is and was intended to exclude Captain Roberts from promotional opportunities because of his race and because of his protected activities under federal law.

62.     On August 12, 2024, Captain Bloom submitted his letter of interest and resume to Defendant Zill consistent with Defendant County's new requirements for promotion to the third vacant position of Assistant Chief of Police. Defendant Zill did not interview Captain Bloom.

63.     On August 15, 2024, Captain Roberts submitted his letter of interest and resume to Defendant Zill consistent with Defendant County's new requirements for promotion to the third vacant position of Assistant Chief.  Defendant Zill did not interview Captain Roberts.

64.     On September 3, 2024, Defendants Gaston County and Chief Zill rejected Captains Roberts' and Bloom's applications and announced that Matt Johnson (white) was promoted to the position of Assistant Chief of Police.  Neither Defendant Zill nor Defendant County have provided Captain Roberts or Captain Bloom with any explanation for the decision to reject them from consideration for the position.

65.     Captain Roberts and Captain Bloom are more qualified than Matt Johnson to hold the position of Assistant Chief of Police. Matt Johnson was promoted to the rank of Captain in or about February, 2024. At the time of his promotion, Matt Johnson had held the rank of Captain for less than one year and had less supervisory training and experience than either Captain Roberts or Captain Bloom.

66.     While the Defendants have not provided any explanation for their failure to promote Captain Roberts or Captain Bloom to the two vacant positions of Assistant Chief during late 2023, Captains Roberts and Bloom contend any explanation Defendants may provide during the course of this litigation will be a pretext for purposeful race discrimination and/or retaliation in violation of federal law. Similarly, with regard to their failure to promote Captain Roberts or Captain Bloom to the position of Assistant Chief of Police in August, 2024, any explanation the Defendants' may provide during the course of the instant litigation will be a pretext for purposeful race discrimination and/or retaliation in violation of federal law.

67.     On September 4, 2024, Defendants County and Zill informed Captain Roberts that he would be transferred from his position over the Communications Division to a patrol position. While the transfer does not affect Captain Roberts rank or hourly rate of pay, the new role requires him to work almost every holiday and every other weekend.  Further, it is a much more dangerous role than the position he held over the Communications Division.  More significantly, the new patrol position is less prestigious and less visible than the position he held over Communications.  In

his former role over Communications, Captain Roberts interacted with County officials, as well as with more than 100 Chiefs and Assistant Chiefs of other area law enforcement departments, fire departments and EMS services. He was the only Captain who managed a $5,000,000.00+ budget.

68. Further, in his new role with patrol, Captain Roberts has been moved from running a division – from hiring, promoting, interviewing, purchasing, transferring and making strategic decisions – to now only approving arrest reports, reviewing case reports, answering domestic calls, and otherwise managing the daily operations of just 12 police officers.

69. Defendants' decision to transfer Captain Roberts to Patrol is a demotion for him. More significantly, Captain Roberts' transfer to Patrol places all of the black supervisors into the Patrol Division, placing all of them in more danger and doing jobs usually reserved for newly promoted sergeants and captains.

70. Robbie Waldrop (white) was transferred to assume Captain Roberts' former position over the Communications Division. Like Anderson Holder, Captain Waldrop was only promoted to the position of Captain in 2023, by Defendant Zill.

71. The Defendants were motivated in whole and/or in part to discriminate against Captain Roberts and Captain Bloom because of their race. In the case of Captain Roberts, the Defendants were also motivated to discriminate against him because of his protected opposition to discriminatory employment practices.

72. As a result of the Defendants' refusal to promote them to the Assistant Chief of Police position 3 times, Captain Roberts and Captain Bloom have suffered and continue to suffer economic, professional and emotional harm. For example, as a Captain, both Captains Roberts and Bloom are paid significantly less than Assistant Chiefs Holder, Cole, and Johnson because they now receive a salary that is nearly at the top of the salary band for the rank of Assistant Chief of Police. Given their age and their expected retirement dates, Defendants' refusal to promote Captains

Roberts and Bloom to the position of Assistant Chief of Police because of race and/or protected activity will result in the loss to them of salaries and other benefits, including retirement benefits, of over $500,000.00 each.

73.     On September 23, 2024, Captain Roberts filed a second charge of discrimination against Defendant Gaston County, styled, "*Roberts v. Gaston County, NC*," EEOC Charge No. 430-2024-04567, alleging that he has once again been passed over for promotional opportunities in favor of a less qualified white candidate and has been transferred to a lesser role because of his race and in retaliation for his protected activity, including filing a previous charge of discrimination with the U.S. Equal Employment Opportunity Commission.  In addition, Captain Roberts alleged that the Defendant County discriminates against African American officers as a class in violation of Title VII inasmuch as white officers have been fast-tracked for promotion over equally or more qualified black officers.  A copy of Captain Roberts' charge of discrimination is attached hereto as "**Exhibit 3**."

G.     **Captain Bloom Has Been the Subject of Disparate Treatment and Harassment and Has Filed a Charge of Discrimination with the EEOC.**

74.     Following his promotion to the position of Assistant Chief of Police, Anderson Holder specifically questioned Captain Bloom regarding his "feelings" concerning Holder's promotion to Assistant Chief of Police, stating that he had heard "rumors" about him.  Captain Bloom was upset about this comment and asked several of his white colleagues regarding the comment.  These colleagues confirmed that they had witnessed and overheard negative comments made by members of the ERT and K9 Unit about Captain Roberts because of his association and friendship with Captain Roberts.

75.     Additionally, in November 2023, Assistant Chief Holder provided Captain Bloom with the lowest job performance evaluation score among all Captains. The evaluation was devoid of any areas of concern and Assistant Chief Holder had been Captain Bloom's supervisor for only two months.

When Captain Bloom questioned Assistant Chief Holder about the score, Holder stated that he "did not give high scores to new captains." However, Assistant Chief Holder evaluated Captain Waldrop (white) and gave him a higher job performance evaluation despite the fact that Captain Waldrop was promoted to Captain *after* Captain Bloom. The difference in scores resulted in Captain Waldrop's receipt of a higher pay raise than Captain Bloom.

76.     Following his discussion with Assistant Chief Holder, Captain Bloom spoke to Vincent Wong regarding his 2023 job performance evaluation.  This conversation was not the first time Captain Bloom had discussed issues of race discrimination or racial disparity with him. While Mr. Wong stated he would "look into the matter," Captain Roberts has received no follow-up from him.

77.     Since his discussion with Mr. Wong regarding his 2023 job performance evaluation, Assistant Chief Holder has undermined Captain Bloom's authority over his subordinates and has instructed him to disregard Gaston County Police Department policies.  Further, Assistant Chief Holder has questioned Captain Bloom multiple times during 2024 about his decisions concerning his patrol squad and Captain Bloom has received at least one email from Assistant Chief Holder attacking Captain Bloom's ability to lead and directing hi to stay in his lane of supervision.

78.     On October 16 , 2024, Captain Bloom filed a charge of discrimination against Defendant Gaston County, styled, "Bloom *v. Gaston County, NC*," EEOC Charge No. 430-2025-00213, alleging that he has been passed over for promotional opportunities in favor of a less qualified white candidates and has been subjected to disparate treatment and harassment because of his race. In addition, Captain Bloom alleged that the Defendant County discriminates against African American officers as a class in violation of Title VII inasmuch as white officers have been fast-tracked for promotion over equally or more qualified black officers.  A copy of Captain Bloom's  charge of discrimination is attached hereto as "**<u>Exhibit 4</u>**."

79.     With respect to his Title VII claims against Defendant County stemming from its failure to promote him to the rank of Assistant Chief of police in August and in November, 2023, Captain Roberts has exhausted his administrative remedies.  With regard to his Title VII claims against the County stemming from its failure to promote him to the rank of Assistant Chief of Police in August, 2024 and its discriminatory and/or retaliatory decision to transfer him to a lesser role, the EEOC has not yet completed its investigatory process. Similarly, with regard to Captain Bloom's Title VII claim against the County stemming from its failure to promote him to the rank of Assistant Chief of Police in August, 2024, the EEOC has not yet completed its investigatory process. Captain Roberts and Captain Bloom specifically reserve the right to amend this Complaint upon the EEOC's issuance of its Notice of Right to Sue in connection with EEOC No. 430-2024-04567 and EEOC No. 430-2025-00213.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANT GASTON COUNTY
### (Violation of 42 U.S.C. § 2000e, *et seq.* – Race Discrimination, Promotions)

80.     Captains Roberts and Bloom realleges and incorporates by reference herein Paragraphs 1 through 79 of this Complaint.

81.     Title VII prohibits discrimination based upon an employee's race.  This prohibition includes subjecting an individual to disparate treatment in the terms and conditions of his employment or refusing to provide promotional opportunities because of an employee's race.

82.     Defendant Gaston County subjected Captain Roberts to disparate treatment by rejecting him as a candidate for promotional opportunities for which he was qualified and by promoting less qualified white candidates in 2023 – Anderson Holder and Jon Cole - to the position of Assistant Chief of Police.

83.     Defendant Gaston County's explanation for its failure to promote Captain Roberts to the position of Assistant Chief of Police in 2023 is a pretext for purposeful race discrimination.

84.     Captain Roberts' race was a motivating factor, in whole or in part, in the Defendant Gaston County's decision not to promote him to one of the two available Assistant Chief of Police positions in 2023.

85.     As a direct and proximate result of Defendant Gaston County's acts and omissions, Captain Roberts suffers and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits, including retirement benefits. In addition, Captain Roberts has sustained, as a direct and proximate result of Defendant County's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Roberts is entitled to have and recover of Defendant Gaston County back pay, front pay, and compensatory damages in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT COUNTY
### (Violation of 42 U.S.C. § 1981 – Race Discrimination & Retaliation; Denial of Promotional Opportunities, Discriminatory Transfer)

86.     Captains Roberts and Bloom reallege and incorporate by reference herein Paragraphs 1 through 85 of this Complaint.

87.     Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

88.     For purposes of Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

24

89.     Captains Roberts' and Bloom's employment relationship with Defendant County may be deemed a contractual one for purposes of Section 1981.

90.     Defendant County has purposely and discriminatorily manipulated its employment policies to ensure that only white male candidates are considered for promotion to the positions of Chief of Police and Assistant Chief of Police to the exclusion of qualified black and/or minority candidates, including Captain Roberts and Captain Bloom.  In this regard, Defendant County, by and through the efforts of Defendants Chad Brown and Stephen Zill, discriminatorily

a.    Deviated from state law by imposing a 5-year requirement of command level experience in connection with its position posting for Chief of Police in November 2022, thereby excluding Captain Roberts – the only qualified black internal candidate - from eligibility for the position.

b.    Encouraged only white, non-minority internal candidates to apply for the Chief of Police position despite the fact that they failed to meet its 5-year Requirement of command level experience to the exclusion of its black Captains – Brent Roberts and Eric Johnson.

c.    Returned the 3 white internal male candidates to the application process for the position of Chief of Police despite the fact that they had been disqualified to proceed to the second round of interviews.

d.    Selected Defendant Stephen Zill to the position of Chief of Police to the exclusion of more qualified black and/or minority candidates.

e.    Failed to consider Captains Roberts and Bloom for promotion to the position of Assistant Chief of Police in August and November, 2023.

f.    Changed its internal practice for the selection of Assistant Chief of Police to ensure that Captain Roberts was ineligible for selection to the position in August, 2024.

g.    Failed to consider Captains Roberts and Bloom for promotion to the position of Assistant Chief of Police in August, 2024.

h.    Selected a white candidate for the position of Assistant Chief of Police who is less qualified for the role than Captains Roberts and Bloom on September 3, 2024.

i.    Subjected Captain Roberts and Bloom to disparate terms and conditions of employment negatively affecting their promotional opportunities, professional reputation, and compensation. In the case of Captain

Roberts by transferring him to a lesser role, causing him injury respecting the terms and conditions his employment.

91.    Defendant Gaston County's explanation for its failure to promote Captains Roberts or Bloom to the position of Assistant Chief of Police in 2023 and in August, 2024, is a pretext for purposeful race discrimination and retaliation. Similarly, its explanation for placing Captain Roberts in a lesser role is a pretext for purposeful race discrimination and retaliation.

92.    Captain Roberts' race and his protected activities were the motivating factors in the Defendant Gaston County's decision not to promote him to one of the two available Assistant Chief of Police positions in 2023 and the third Assistant Chief of Police position in August, 2024. His race was also a motivating factor in its decision to transfer him to the Patrol Division.

93.    Similarly, Captain Bloom's race was the motivating factor in the Defendant County's decision not to promote him to one of the two available Assistant Chief of Police positions in 2023 and the third Assistant Chief of Police position in August, 2024.

94.    As a direct and proximate result of Defendant Gaston County's acts and omissions, Captains Roberts and Bloom suffer and continue to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Captains Roberts and Bloom have sustained, as a direct and proximate result of Defendant County's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Roberts and Bloom are entitled to have and recover of Defendant Gaston County back pay, front pay, and compensatory damages in amounts to be proved at trial.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANT GASTON COUNTY
**(Violation of 42 U.S.C. § 1981 – Retaliation & Race - Hostile Working Environment)**

95.     Captains Roberts and Bloom reallege and incorporate by reference herein Paragraphs 1 through 94 of this Complaint.

96.     Since at least June, 2023, Defendant County, by and through Defendant Zill and Anderson Holder, has created a racially hostile and retaliatory work environment for Captains Roberts and Bloom because of their race and protected opposition to employment practices which they reasonably believe to be discriminatory, as well as their participation in protected activities under the law.

97.     Defendant County ratified and condoned the actions of Defendant Zill and Assistant Chief Holder.

98.     Defendant County, by and through the actions of Defendant Zill and Assistant Chief Holder, created a racially hostile and retaliatory work environment by, among other things, holding Captains Roberts and Bloom to different work place standards than those imposed by their white counterparts. In the case of Captain Roberts, they have excluded him from communications and meetings that his white counterparts attended, singled him out for unwarranted counseling, tolerated and/or have encouraged threatening comments made by personnel about Captain Roberts after he engaged in protected activity, failed to promote him to the position of Assistant Chief of Police in August, 2024 and then demoted him from the Communications Division to Patrol. They also encouraged a work environment which was intended to discourage his colleagues, including Captain Bloom, from assisting or supporting Captain Roberts in his protected activities.

99.     In the case of Captain Bloom, Defendant County, by and through the actions of Defendant Zill and Assistant Chief Holder, has created a racially hostile and retaliatory work environment by lowering his 2023 evaluation compared to that of a similarly-situated white Captain and by denying him a merit pay increase, by unjustly singling out Captain Bloom for unwarranted criticism following his verbal complaint to Vincent Wong, and by fomenting and encouraging negative rumors about Captain Bloom because of his association with Captain Roberts.

100.    Such acts on the part of the Defendant County were deliberately intended to dissuade, and would dissuade a reasonable employee from filing further legal action to enforce his rights under the federal anti-discrimination statutes.

101.    As a direct and proximate result of Defendant Gaston County's acts and omissions, Captains Roberts and Bloom suffer and continue to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits.  In addition, Captains Roberts and Bloom have sustained, as a direct and proximate result of Defendant County's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing.  Accordingly, Captains Roberts and Bloom are entitled to have and recover of Defendant Gaston County back pay, front pay, and compensatory damages in amounts to be proved at trial.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT GASTON COUNTY
**(Violation of 42 U.S.C. § 1983)**

102.    Captains Roberts and Bloom reallege and incorporate by reference herein Paragraphs 1 through 101 of this Complaint.

103.    Captains Roberts and Bloom are citizens of the United States of America.

104.    Defendant County, by and through its Chairman of the Board of County Commissioners, Defendant Chad Brown and its Chief of Police, Defendant Stephen Zill, deprived Captains Roberts and Bloom of their right to be free of race discrimination within the workplace as secured by the Equal Protection Clause of the Constitution of the United States and Title VII of the Civil Rights Act of 1964, as amended, and Section 1983.

105.    Defendant County's Board of County Commissioners, as well as its Chairman, Defendant Brown and Defendant Zill, are the final policy making authority for Gaston County. Defendant County's Board of County Commissioners, by and through its Chairman, Defendant Brown and Chief

of Police, Defendant Zill, significantly changed and/or altered its long-standing promotional policies in order to achieve the discriminatory goal of filling its highest-ranking positions, the positions of Chief of Police and Assistant Chief of Police, with white officers only.

107.     Captains Roberts' and Bloom's race was a motivating factor, in whole or in part, in Defendant Gaston County's decision not to promote them to the position of Assistant Chief of Police.

108.     As a direct and proximate result of Defendant County's acts and omissions, Captains Roberts and Bloom suffer and continue to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits.  In addition, Captains Roberts and Bloom have sustained, as a direct and proximate result of Defendant County's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing.  Accordingly, Captain Roberts and Bloom are entitled to have and recover of Defendant Gaston County back pay, front pay, and compensatory damages in amounts to be proved at trial.

### FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS CHAD BROWN AND STEPHEN ZILL IN THEIR INDIVIDUAL CAPACITIES
(**Violation of 42 U.S.C. §§ 1981 and 1983 & U.S. Constitution – Race Discrimination; Retaliation**)

109.     Captains Roberts and Bloom reallege and incorporate by reference herein Paragraphs 1 through 108 of this Complaint.

110.     Defendant Chad Brown and Defendant Stephen Zill directly participated in the selection processes for a new Chief of Police and/or Assistant Chiefs of Police and altered Defendant County's long-standing promotional policies in order to effectuate the discriminatory result which they intended, i.e. – the selection of an internal white male candidate for promotion to the position of Chief of Police of the Gaston County Police Department and the selection of three white Assistant Chiefs of Police. Captain Roberts' and Captain Bloom's race, as well as their protected activities, were the

factors in Defendants Brown's and Zill's decisions to deny and/or to refuse them promotional opportunities with regard to the Chief of Police position and with regard to the 3 Assistant Chiefs of Police positions, and with regard to Captain Roberts' transfer to Patrol.

111.    As a result of Defendants Brown's and Zill's discriminatory and retaliatory acts and omissions, Captain Roberts and Captain Bloom were deprived of their right to be free of race discrimination and retaliation within the workplace as secured by the Equal Protection Clause of the Constitution of the United States, Section 1981, and Title VII of the Civil Rights Act of 1964, as amended.

112.    As a direct and proximate result of Defendants Brown's and Zill's acts and omissions, Captains Roberts and Bloom suffer and continue to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits.  In addition, Captains Roberts and Bloom have sustained, as a direct and proximate result of Defendants Brown's and Zill's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing.  Accordingly, Captains Roberts and Bloom are entitled to have and recover of Defendants Brown and Zill, in their individual capacities, jointly and/or severally, back pay, front pay, and compensatory damages in amounts to be proved at trial.

113.    Defendant Brown's and Zill's acts and omissions were undertaken with malice and/or a reckless indifference to Captains Roberts' and Bloom's federally protected rights.  Accordingly, Captains Roberts and Bloom are entitled to have and recover from Defendants Brown and Zill, jointly and/or severally punitive damages in amounts to be proved at trial.

## PRAYER FOR RELIEF

Wherefore, the Plaintiffs, Captain Brent Roberts and Captain Reginald E. Bloom, Jr., respectfully request the Court to:

A.      Enter a judgment in their favor and grant a permanent injunction enjoining Defendants from engaging in unlawful employment practices because of race and retaliation, including those practices which violate Title VII, Section 1981, Section 1983, and the U.S. Constitution.

B.      Order the Defendants, jointly and/or severally, to make Captains Roberts and Bloom whole by providing them with equitable relief and monetary damages in an amount in amounts to be proved at trial for present and future lost wages and benefits, as well as for their emotional distress, anxiety, and humiliation caused by the acts of the Defendants.

C.      Order Defendants, Chad Brown and Stephen Zill, to pay to Captain Roberts and Captain Bloom punitive damages in amounts to be proved at trial for their discriminatory and retaliatory actions taken under color of state law against him.

D.      Award Captain Roberts and Captain Bloom their reasonable costs and attorney's fees incurred in this action as provided by federal law.

E.      Grant such further and different relief to Captain Roberts and Captain Bloom as the Court deems necessary and proper under the circumstances.

## **JURY TRIAL DEMANDED**

The Plaintiffs, Captain Brent Roberts and Captain Reginald E. Bloom, Jr., demand a jury trial regarding the matters alleged herein.

This the 21st day of October 2024.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe
Attorney for Plaintiff
N.C. State Bar No. 13698

**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC  28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

*/s/ Julie H. Fosbinder*
Julie H. Fosbinder, Esq.
Attorney for Plaintiff
N.C. State Bar No. 19400

**FOSBINDER LAW OFFICE**
840 Seneca Place
Charlotte, North Carolina  28210
Telephone: (704) 333-1428
Facsimile: (704) 560-8600
Email:  Jhanfos2@gmail.com