IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-0927

| | |
|---|---|
| **BRENT ROBERTS and REGINALD E. BLOOM, JR.,**<br><br>Plaintiffs,<br><br>v.<br><br>**GASTON COUNTY, NORTH CAROLINA, GASTON COUNTY BOARD OF COUNTY COMMISSIONERS, CHAD BROWN, In His Individual Capacity, and STEPHEN ZILL, In His Individual Capacity.**<br>Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER TO PROHIBIT DEPOSITION OF WILLIAM P. DOWNEY, II** |

The Plaintiffs, Brent Roberts and Reginald E. Bloom, Jr., pursuant to Rule 26 (c) and 30 of the Federal Rules of Civil Procedure, hereby respectfully submit their Memorandum in Opposition to Defendants' Motions to Quash & Motion for Protective Order to Prohibit Deposition of William P. Downey, Jr. Inasmuch as Defendants' Motion is late – having been filed on the eve of Mr. Downey's noticed deposition - and because it is wholly without merit, their Motion should be denied in full.

I.

**STATEMENT OF RELEVANT FACTS**

This civil rights action arises under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1983. The Plaintiffs, who are employed by Gaston County as Captains within its County Police Department (the "GCPD"), challenge the promotional processes and employment practices of the Defendants, including its Chairman of the Board of County Commissioners, Chad Brown, and the current Chief of Police, Stephen Zill. Captains Roberts and Bloom allege that they

1

have been denied promotional opportunities because of their race (African-Americans) and that they have been subjected to reprisal for opposing the discriminatory practices of the Defendants. In the case of Captain Roberts, he contends that he was excluded because of his race from the promotional processes surrounding the selection of a new Chief of Police during late November, 2022 through early 2023.

Formal discovery in this matter commenced on April 18, 2025. Plaintiffs identified Willaim P. Downey, Jr. ("Downey"), who is the subject of the present motion, as a potential witness in this matter in their amended pleadings, in their Rule 26 Disclosures served on April 18, 2025, in their Objections & Responses to Defendants' First Set of Interrogatories & Requests for Production of Documents, served on June 25, 2025, and in their privilege log, served on July 8, 2025. Plaintiffs have also noticed and have attempted unsuccessfully to schedule Downey's deposition, as well as other witness depositions, on several occasions throughout the summer and early fall months of this year. Discovery in this case, however, has been fraught with delays, largely caused by Defendants' counsel. (See, Sharpe Declaration, ¶¶ 9-13, 16-19, attached hereto as **Exhibit 1**)

Downey, like Captains Roberts and Bloom, is also employed by Gaston County. He is a Captain with the GCPD. He is well-known to both Plaintiffs to be a witness favorable to their current litigation as he has offered them support and has disclosed information to them in aid of their claims against the Defendants. (See, Declarations of Brent Roberts and Reginald E. Bloom, Jr. attached here to as **Exhibits 2** and **3**). Chad Brown encouraged Captain Downey to apply for the Chief of Police position which was posted in late 2022. [DE 31, ¶¶ 33; Sharpe Declar., Ex. A & B; Roberts Declar., ¶¶ 4-8, 13-14; Bloom Declar., ¶¶ 4-6, 10, 1316) Downey, however, was not selected.

Downey is also known to Plaintiffs' counsel, Jenny L. Sharpe. He was known to Ms. Sharpe due to her representation of Suzanne Smith, now former Assistant Chief of Police, who filed an

2

internal grievance with the County and subsequent charge of discrimination with the EEOC following the selection process for the new Chief of Police. In connection with that matter, Downey communicated with Ms. Smith several times in early 2023 and told her that Defendant Chad Brown had encouraged him to apply for the Chief of Police position. Captain Downey also told Ms. Smith that Chad Brown informed him that she would never be selected as Chief of Police as long as he had anything to do with it. (Sharpe Declar. ¶¶ 4-6, Ex. A ) Ms. Smith states that she believes that Captain Downey was interviewed by Defendants as part of its internal investigation of her grievance. (*Id.*, Ex. A) Captain Downey also communicated this information to the Plaintiffs during 2023 before December 14, 2023. (Roberts Declar., ¶ 5; Bloom Declar., ¶ 5)

Defendants' counsel, Kathleen Lucchesi represented the County in connection with Ms. Smith's legal matter, and she, too, has known, since at least early 2023, that Downey is a witness who is potentially hostile to Defendants' defense of this current litigation. Moreover, Downey is also well-known to Defendant Chad Brown, Chairman of Defendant Gaston County Board of County Commissioners. (Sharpe Declar., ¶ 18, Ex. F)

Ms. Smith's legal matter with the County was resolved in late October, 2023 and she is no longer employed by the County.

On December 14, 2023, Downey had a consultation with Ms. Sharpe, to discuss his "potential legal claims related to [his] employment with Gaston County, North Carolina." Both before and after that date, Ms. Sharpe has had no interaction with Downey and has never sought to obtain a written statement from him due to the N.C. State Bar's Rules of Professional Conduct which prohibit *ex parte* communications with managerial level employees. (*Id.*, ¶¶ 6, 8) Nonetheless, on July 30, 2025, Downey sent a text message to Ms. Sharpe. In response, Ms. Sharpe indicated that she could not speak with him in connection with the current litigation. (*Id.*, ¶ 14) Other than her consultation with him and a follow-up email exchange on December 20 and 21, 2023, these were the

3

last and only communications she has had with Downey since December 14, 2023. (*Id*., ¶ 6) Since the inception of the current litigation, none of the documents provided by Captain Downey or the substance of his discussion with Ms. Sharpe in his 2023 consultation with her have been disclosed during this current litigation. Further, none of the information he shared with her was used in connection the drafting of the pleadings filed in this matter. Ms. Sharpe already was aware of certain facts about Downey that she learned during her representation of Ms. Smith and prior to her consultation with him. Further, Downey disclosed information outside the confines of his consultation with Ms. Sharpe to Captains Roberts and Bloom both **before** and **after** December 14, 2023, and prior to drafting the pleadings. (Roberts Declar.,¶¶ 5-9, 12; Bloom Declar., ¶¶ 5-6, 15-16) More significantly, based upon the supplemental document production of Defendant Chad Brown – received on September 30, 2025 – it is apparent that Downey communicated with Brown via text on several occasions about the Chief of Police promotional process in early 2022, before the position had been posted to the public and before December 14, 2023. (Sharpe Declar., ¶18, Ex. F)

On October 6, 2025 – just 2 days before Downey's scheduled deposition - Defendants' counsel notified Plaintiffs' counsel that she intended to file a motion to quash the deposition of Captain Downey. Ms. Sharpe consulted with the N.C. State Bar on October 7, 2025. Plaintiffs' counsel advised Ms. Lucchesi that no conflict existed warranting the cancellation of Downey's scheduled deposition (*Id*., ¶¶ 20-23, Ex. G) and requested legal authority for Defendants' insistence that they could unilaterally postpone a noticed deposition that had been arranged by consent of the parties. Defendants thereafter filed the present motion at 10:12 p.m. on October 7, 2025, and informed Plaintiffs' counsel that Downey would not be present for his deposition. (*Id.*, Ex. G)

In their correspondence to legal counsel and as support for their current motion, Defendants contend that Ms. Sharpe has a concurrent conflict of interest and that she and her co-counsel should be prohibited from deposing Downey. Captain Bloom states, however, that the only concern

expressed by Downey was his concern that his discussions with attorney Martha Thompson would be shared with the County. According to Captain Bloom, Downey informed him that he had had a consultation with Ms. Thompson concerning his legal claims against the County prior to her employment as the County's new executive legal counsel. Downey told Captain Bloom that he felt Ms. Thompson had been hired to perform work relating to Plaintiffs' case against the Defendants. He further advised Captain Bloom that he was worried that Ms. Thompson might breach the attorney-client privilege and was concerned with the potential conflict of interest the County – not Plaintiffs' counsel - might have. (Bloom Declar., ¶¶ 7; Roberts Declar., ¶¶ 12-13)

On the evening of October 2025, during a shift change, Captain Bloom and Downey spoke again. Downey told Captain Bloom that he had roughly 108 days before he can retire from the GCPD and that an attorney told him not to participate in a deposition until after his retirement because of his fear of reprisal. Nonetheless, Downey told Bloom he wanted to testify in this case, but truly believes the County "would go after his job." (Bloom Declar., ¶ 17)

## II.
## LEGAL ARGUMENT

Defendants' motion for a protective order to quash the deposition of Captain William P. Downey, II is late, unnecessary, and without merit. It appears Defendants' motion is designed solely to delay discovery in this matter, like the many other actions taken by Defendants in this litigation, as described in Ms. Sharpe's Declaration. (Sharpe Declar., ¶¶ 10-20) Moreover, just hours before his previously scheduled deposition, Defendants unilaterally announced Downey would not appear for his deposition, providing no legal authority for this action. (*Id*., ¶¶ 20-23 Ex. G) In *Crawford v. Blue Ridge Metals Corp.,* 2020 U.S. Dist. LEXIS 133044, *1-2 (W.D.N.C. July 27, 2020) this Court stated:

> The filing of the Motion does not relieve BRM of its obligation to attend the deposition as noticed. See White v. McHugh, Nos. 3:09-1559, 3:09-2271, 2010 U.S. Dist. LEXIS

5

114369, 2010 WL 4340399, at * 2 (D.S.C. Sept. 3, 2010) ("A deponent is relieved of appearance only if the protective order is issued [*2] prior to the scheduled deposition. 'Under the Rules, it is for the court, not the deponent or his counsel, to relieve him of the duty to appear.'") (quoting Pioche Mines Consolidated, Inc. v. Dolman, 333 F.2d 257, 269 (9th Cir.1964), cert. denied 380 U.S. 956, 85 S. Ct. 1081, 13 L. Ed. 2d 972 (1965)); Hollar v. Myers, 184 B.R. 243, 246 (M.D.N.C. 1995) ("It is well-settled that the filing of a motion for protective order does not automatically operate to stay a deposition or other discovery. Rather, a deponent is relieved of his or her duty to appear only if [a] court order is granted before the scheduled deposition.")

Defendant's motion is also untimely because it was filed *less than 12 hours* before the scheduled deposition, at 10:12 p.m. the night before the deposition, and *months* after Defendants were on notice of Downey's consultation with Ms. Sharpe which forms the basis for their motion. As such, it should be denied as untimely. (*Id*., ¶ 9)  *See, Allstate Ins. Co. v. Nassiri*, 2011 U.S. Dist. LEXIS 119377, *4  (D. Nev. Oct. 14, 2011) (Motion to quash subpoena was denied under Rule 45(c)(3) where deponent had three weeks' notice of the deposition yet filed his motion only three business days before the deposition's scheduled date.)

Defendants' motion is unnecessary because Downey will not be subject to "annoyance, embarrassment, oppression, or undue burden or expense." The thrust of Defendants' arguments is that Downey's attorney client privilege should not be violated.  Plaintiffs' counsel are aware of the attorney client privilege and have taken steps to and will continue to preserve it.

Defendants also seem to argue that because three paragraphs of the Amended Complaint (DE 31,  ¶¶ 33, 35, 36) refer to Downey, that the information in those paragraphs came from Downey, and that those references somehow support their current motion.

Defendants are engaged in pure speculation, and, as is often the case with speculation, Defendants' conclusion is wrong.   In fact, the statements referencing Downey in the Amended Complaint (ECF No. ¶¶ 33, 35, 36) came from the named Plaintiffs and other witnesses**.** (Sharpe Decl., ¶ 7; Roberts Decl., ¶¶ 5) For instance, Assistant Chief Suzanne Smith stated that Downey

6

Case 3:24-cv-00927-DCK     Document 71      Filed 10/21/25     Page 6 of 15

recounted to her, the conversations he had with Defendant Brown around the time of the 2022-2023 Police Chief hiring process. (Sharpe Decl., ¶¶ 5, 7, Ex. A) Captain Downey also told Plaintiff Roberts about the promotional process resulting in Captain Zill's promotion to Police Chief. (Roberts Decl., ¶ 5) [1] and Roberts "learned from Captain Downey that Brown had told Downey that Assistant Chief Smith would never be Chief of Police if Brown had anything to do with it. Brown's statement to Downey occurred at a social event. " (*Id*.)  Brown, himself, even acknowledged that he may have made this statement in his deposition. (Sharpe Decl., Ex. B, at 128)

### A. DEFENDANTS' MOTION IS WITHOUT MERIT.

The moving party bears the burden of showing why it is entitled to a protective order. *Martin v. Bimbo Foods Bakeries Distribution, LLC*, 313 F.R.D. 1, 5 (E.D.N.C. 2016) "A party moving for a protective order has the burden of making a particularized showing of why discovery should be denied."  A party must show the need for protective order and the harm resulting without one.  Because Defendant cannot make this showing, Defendants' motion should be denied

Defendants attempt to support their motion by citing to N. C. Rules of .Professional Conduct (hereafter "RPC") Rule 1.7(a), which prohibits a lawyer from representing a client if the representation involves a concurrent conflict of interest when "the representation of one client will be directly adverse to another client; or the representation of one or more clients may be materially limited by the lawyer's responsibilities to another client, a former client, or by a personal interest of the lawyer." Defendants further rely upon  NCRPC Rule 1.9.  RPC  R. 1.9 forbids a lawyer who

---

[1] Just as witness Downey apparently did not share with the Defendants' counsel the specific details or content of his December 14, 2023 consultation with Plaintiffs' counsel, in order to preserve the attorney-client privilege arising from that consultation (DE 70 at 7, FN4), counsel Sharpe has not shared with Plaintiffs the details of what Downey disclosed to her. Thus, her obligations to Downey have in no way been "materially limited" by her responsibilities to plaintiffs.

7

has formerly represented a client in a matter from representing another person in "the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client gives informed consent, confirmed in writing." N.C. R.P.C. 1.9(a).

The attorney client relationship between Plaintiffs' counsel and Captain Downey began and ended when Downey met with Ms. Sharpe for a consultation in December, 2023.

Plaintiffs at this time do not dispute Defendants' contention that the Plaintiffs' claims and the potential claims of Captain Downey are substantially related. But that is just the beginning of the inquiry. Here, the restrictions created by Rules 1.7 and 1.9 do not prohibit Plaintiffs' attorneys from representing Plaintiffs or from taking Downey's deposition because there is neither "direct advers[ity]" or any reason why the representation of a client needs to be materially limited.

NC Rev. R. Prof. Conduct 1.7(a), comment 6 , defines the phrase "directly adverse" as occurring when a lawyer acts as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. Because the representation of Downey ended in December 2023, and this lawsuit was not filed until October, 2024, there is no direct adversity here. *See also*, RPC 1.9, comment 2; *Advanced Internet Techs., Inc. v. Dell, Inc.,* 2008 U.S. Dist. LEXIS 129431 (E.D.N.C. May 23, 2008) (finding " no violation of Rule 1.7 of the North Carolina Revised Rules of Professional Conduct, that governs conflicts of interest between current clients."). *See also, Johnson v. Brock & Scott,* 2012 U.S. Dist. Lexis 140713 (E.D.N.C. September 27, 2012) (finding that because the attorneys representation of former client ended before representation of the current client began, no conflict existed under Rule 1.7(a)(1)).

The cases Defendants rely upon in support of its contention that Plaintiffs' counsel must be prohibited from taking Downey's deposition are inapposite. [DE 70, at 7]  In each of those cases, the Court granted the motions for disqualification of counsel because the attorneys had had substantial involvement in the movant's

8

representation and had essentially "changed sides" in connection with their subsequent litigation, representing new clients whose interests were adverse to those of the movant. This is simply not the case here.

As Plaintiffs' Declarations demonstrate, there has been no "changing of sides," Both Plaintiffs and Downey have claims and concerns that are mostly supportive of each other. Thus, there is no reason for representation of any client to be materially limited by the lawyer's responsibilities. Downey and Plaintiffs allege that they have been retaliated against due to protected activity, which involved complaints about being wrongfully denied promotions to the Chief of Police and Assistant Chief positions and claims that discrimination was the reason for wrongful denials. [2]According to Captain Roberts, Downey told him that he felt his rights had been violated and that he felt he was being retaliated against by Gaston County because he provided information to Gaston County's Human Resources Department favorable to Assistant Chief Smith's allegation of sex discrimination. (Roberts Decl., ¶¶ 8)

The cases construing Rule 1.7 show that it only applies to situations where the parties represented by counsel have interests in representation that cannot reasonably be reconciled. Thus, in finding that such a conflict of interest was present where counsel represented both the buyer and seller of commercial property, the Court stated in *N.C. Bar v. Merrell*, 243 N.C. App. 356 (N.C. App. 2015):

> [The] Comment 8 to Rule 1.7 explains that "[e]ven where there is no direct adverseness, a conflict of interest exists if a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client may be materially limited as a result of the lawyer's other responsibilities or interests. For example, a lawyer asked to represent a seller of commercial real estate, a real estate developer and a commercial lender is likely to be materially limited in the lawyer's ability to recommend or advocate all possible positions that each might take because of the lawyer's duty of loyalty to the others. The conflict in effect forecloses alternatives that would otherwise be available to the client."

Here, Defendants fail to show there is, or will be, any material limitation in Ms. Sharpe's

---

[2] Because of the attorney client privilege protecting Captain Downey's statements, we rely only on the statements of the Plaintiffs to make that assertion.

ability to "recommend or advocate all possible positions" to her clients. Moreover, as shown by Plaintiffs' Declarations, there have been several conversations between one or the other Plaintiff and Downey, where details surrounding the selections of Chief Zill and the subsequent Assistant Chief selections have been shared. In each of those conversations nothing has arisen that would show a material limitation in representation. (Roberts Declar., ¶¶ 5-9, 12; Bloom Declar., ¶¶ 5-6, 15-16)

Plaintiffs agree that Downey cannot be compelled to testify in a deposition about the details of his consultation with Plaintiffs' counsel. However, as the Declarations of the Plaintiffs and counsel demonstrate, Downey's deposition is still warranted and necessary because there are several other topics that are highly relevant to Plaintiffs' claims, including statements and actions made to non-lawyers before and after the November 2023 consultation, that were not the subject of the Downey consultation. Contrary to Defendants' assertions, those areas of inquiry simply are not off limits and are not protected by the attorney client privilege.

Plaintiffs seek to depose Downey about those other topics, but because Downey is a management employee of Defendant County, under the North Carolina RPC Rule 4.2, Plaintiffs' counsel may not interview Downey, even if he is willing to be interviewed. Therefore, his deposition is the only means by which Plaintiffs may obtain his testimony.

Caselaw shows that application of analogous rules like Rule 1.9 are narrowly construed. *See*, *Corso v. Suburban*, 2005 U.S. Dist. Lexis 423 (N.D.Il. Jan. 12, 2005) In *Corso*, plaintiff contended the defendant's attorney had a conflict of interest and moved to disqualify him because he had previously represented the plaintiff in connection with an EEOC charge of sexual harassment filed by a former co-worker against Plaintiff. The Court denied the motion, in part, because there was no evidence that Defendant's attorney had disclosed anything the plaintiff shared with him during their attorney client relationship.

10

The caselaw under N.C. R.P.C. 1.9(a) also shows that this provision does not support Defendants' motion to quash, as there is no material adversity between witness Downey's claims and those claims raised by the Plaintiffs in this litigation. *See, Ohio Cas. Ins. Co. v. Firemen's Ins. Co.*, 2008 U.S. Dist. LEXIS 12360 (E.D.N.C. Feb. 13, 2008) denying motion to disqualify counsel.

As noted above, the moving party must show good cause by demonstrating a particular need for a protective order to prevail on such a motion. Here, good cause does not exist. Plaintiffs' counsel has not and, does not intend to violate the attorney client privilege. Moreover, a protective order (DE 66) is already in place in this matter, making Defendant's motion unnecessary. *See, Summit DNA LLC v Proove Biosciences*, 2015 U.S. Dist. LEXIS 147932 *5 (D.Md. Oct. 30, 2015) where the court denied a motion for a protective order for a third-party deponent, stating that:

> Protective orders protect information, not particular persons. *See Minter v. Wells Fargo Bank, N.A.*, 675 F. Supp. 2d 591 (D. Md. 2009) ("[T]he protective order already in this place is adequate to protect any confidential information produced [by a third party's documents]."). Because the information disclosed in this action, including that revealed by third parties in depositions or in document production, is currently subject to a protective order, there is no need to order additional protection for Mr. Gardner's deposition.

**B. THE COURT SHOULD AWARD PLAINTIFFS' FEES AND COSTS INCURRED IN DEFENDING AGAINST THIS FRIVOLOUS MOTION AND FOR DEFENDANT'S REFUSAL TO PRODUCE CAPTAIN DOWNEY FOR HIS DEPOSITION**

Plaintiffs seek their fees and costs incurred in the preparation of this Memorandum in opposition to Defendant's motion. Rule 37(a)(5)(A), Fed. R. Civ. Proc. applies to motions for protective orders and permits the Court to award the defending party its expenses incurred for having to defend and litigate a motion for protective order. *See, Hudgins v. Total Quality Logistics, LLC*, 2024 U.S. Dist. LEXIS 68004, *29 (N.D. Il. April 15, 2024)(Upholding magistrate judge's determination that defendant should pay the plaintiffs' attorneys' fees connected with responding to defendant's frivolous motion for a protective order.) Finding that an award of fees was appropriate under Rules 26(c)(3) and 37(a)(5).), the court in

11

Hudgins, at *29, stated:

> Rule 37(a)(5) states that, if the motion is denied, the court may require the movant to pay the non-movant's "reasonable expenses incurred in opposing the motion including attorney's fees" unless "the motion was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5).

Here, Defendants' misconduct is exacerbated by its unilateral announcement the night before the scheduled deposition that witness Downey would not appear, while providing no legal authority for this action. Fed. R. Civ. P. 37 provides that the court may order sanctions if "a party ... fails, after being served with proper notice, to appear for that person's deposition." Such sanctions may consist of orders listed in Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi), or the court may require the party that failed to attend his deposition "to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3). "[T]he imposition of discovery sanctions is generally within the sound discretion of the trial court." *Billips v. N.C. Benco Steel, Inc.*, No. 5:10-CV-095-RLV-DCK, 2011 U.S. Dist. LEXIS 87644, (W.D.N.C. Aug. 8, 2011) (internal citations and quotations omitted).

## CONCLUSION

Defendants' arguments for an order quashing the deposition of the witness Captain Downey or imposing a new protective order fail because they have made no showing that the interests of witness Downey and the Plaintiffs are directly adverse, nor have they shown that the representation of any of these clients will be materially limited due to the attorney's responsibilities to another client. Under Fed. R. Civ. Proc. R. 26 (b). "If a motion for a protective order is wholly or partly denied, the court may, on just terms, order that any party or person provide or permit discovery."

Therefore, Defendants' motion should be denied, and Defendants' Gaston County, its Board of County Commissioners and Stephen Zill, should be ordered to produce Captain Downey for his deposition. Further,

Plaintiffs should be awarded their costs and attorneys' fees incurred for the costs and time spent responding to Defendants' motion.

Respectfully submitted this 21st of October, 2025.

*/s/Jenny L. Sharpe*

Jenny L. Sharpe

J Sharpe, PLLC
15720 Brixham Hill Ave Suite 300
Charlotte, NC 28277
T: 704-944-3272
E: sharpeattorney@gmail.com

*/s/ Julie H. Fosbinder*

Julie H. Fosbinder
Fosbinder Law Office
840 Seneca Place
Charlotte, NC 28277
T: 704-560-8600
E: jhanfos2@gmail.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

**Civil Action No. 3:24-cv-0927**

| | |
|---|---|
| BRENT ROBERTS and REGINALD E. BLOOM, JR.,<br><br>            Plaintiffs,<br>v.<br><br>GASTON COUNTY, NORTH CAROLINA, CHAD BROWN, In His Individual Capacity, and STEPHEN ZILL, In His Individual Capacity.<br>            Defendants. | **CERTIFICATE OF SERVICE** |

The undersigned certifies that on October 21, 2025 the foregoing **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER TO PROHIBIT DEPOSITION OF WILLIAM P. DOWNEY, II** was electronically filed with the Clerk of the Court, using the Court's CM/ECF electronic service system, which shall provide service to the following:

Jennifer B. Milak
Teague Campbell Dennis & Gorham, LLP PO Box 19207
Raleigh, NC 27619-9207
jmilak@teaguecampbell.com

**JACKSON LEWIS P.C.**
KATHLEEN K. LUCCHESI
DANIEL Q. LEAKE II
200 South College Street, Suite 1550
Charlotte, North Carolina 28202
Kathleen.Lucchesi@jacksonlewis.com
Daniel.Leake@jacksonlewis.com

This the 21st of October, 2025.

                                                    */s/Jenny L. Sharpe*
                                                    Jenny L. Sharpe
                                                    Counsel for Plaintiffs

## NO USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in connection with the research for preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Lexis, Westlaw, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 21st day of October, 2025.

>*/s/ Jenny L. Sharpe*
>Jenny L. Sharpe
>Counsel for Plaintiffs