IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-0927- DCK

| | |
|---|---|
| BRENT ROBERTS and<br>REGINALD E. BLOOM, JR.,<br><br>    Plaintiffs,<br><br>v.<br><br>GASTON COUNTY, NORTH CAROLINA;<br>GASTON COUNTY BOARD OF COMMISSIONERS,<br>In its official capacity; and CHAD BROWN, In His<br>Individual Capacity, and STEPHEN ZILL, In His<br>Individual Capacity.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO COMPEL**

**I.    STATUS OF DISCOVERY RESPONSES**

Despite Defendant Gaston County's November 26, 2025, Supplemental discovery responses, and their recent document production, several deficiencies in Defendant's discovery responses remain. In connection with the following eight Interrogatories and six Requests for Production of Documents:

**NTERROGATORIES**

*INT Nos.3 and 4.* Asked, for the time period January 1, 2016, for all complaints of racially discriminatory and/or retaliatory conduct against Gaston County and a description of any efforts to investigate the complaints.

In their November 26th Supplemental responses, Defendants did identify two additional race discrimination complaints filed by Gaston County Police Department employees, but it has refused to provide any information regarding race or retaliation complaints against other County

1

departments. This is in spite of Defendant's contention that the Plaintiffs are employed by the County, and the fact that the County's Human resources department has been in charge of investigating and responding to Plaintiff's Roberts race discrimination complaints.

Motions to compel this type of information are routinely granted, *Beasley v First Am. Real Estate Info Servs*., 2005 U.S. Dist. LEXIS 34030 (N.D. Tx. April 27, 2005) (granting motion to compel other complaints of discrimination for two-year period after plaintiff's termination). In *United States EEOC v. Ufp Ranson, LLC*, 2022 U.S. Dist. LEXIS 242189, (N.D. W.Va. Oct. 31, 2022), for example the court ordered the defendant employer to provide responses to interrogatories which sought information regarding all complaints in the workplace regarding racial and religious discrimination, harassment, and retaliation, finding them "clearly relevant to Plaintiff's Title VII claims."

<u>INT No. 10</u>: states "[i]dentify by date all positions for which each of the Plaintiffs have applied and have been denied. For each denial, state the name, race and current employment status of the individual selected for the position."

Defendants have not corrected the deficiencies in their initial responses to this Interrogatory. Defendants have failed to provide any information about seven of Plaintiff Roberts' applications for promotions, including three applications Roberts made seeking to receive the position of Captain in 2016 and 2017, and four applications he made for Sergeant, in or about 2008, 2005, 2003, and 2001. Plaintiff Bloom applied at least twice for the position of Sergeant before his ultimate selection. In each case Defendant has not identified by date the Plaintiffs' applications, nor identified by name and race who was ultimately placed in these positions.

Plaintiffs and other African Americans within the GCPD were repeatedly denied promotions. It is anticipated that this requested information, coupled with full responses to RFP No. 23, will assist in showing that fully qualified African American GCPD employees were held in lower positions

longer than their white counterparts, and were repeatedly denied promotions to positions that were then filled by their white counterparts.

This evidence is both relevant comparator evidence and pattern and practice evidence. Evidence of general patterns of discrimination is discoverable in disparate treatment cases. *McDonnell Douglas*, 411 U.S. at 804-05 (noting that a defendant's "general policy and practice with respect to minority employment" may be relevant to show pretext); *Jackson v. Montgomery Ward & Co., Inc.*, 173 F.R.D. 524, 527-28 (D. Nev. 1997); *Flanagan v. Travelers Ins. Co.*, 111 F.R.D. 42, 48 (W.D.N.Y. 1986); *Sykes v. Target Stores*, 2002 U.S. Dist. LEXIS 6627, *17-15, 2002 WL 554505 (N.D..Il. 4/11/2002); and *Piatt v. City of Austin*, 2008 U.S. Dist. LEXIS 128998, *8, 2008 WL 11334173 (W.D. Tx. 9/29/2008) (court determined that discovery regarding Defendant's alleged pattern or practice of discrimination could proceed but only to the extent that it is relevant and reasonably calculated to lead to evidence that proves Plaintiff's individual disparate treatment claim.)

<u>Interrogatories Nos. 12,13, and 15 and Request for Production No. 11</u> concern the selection of the GCPD Chief of Police, Defendant Stephen Zill, and seek information and documents related to that selection process.

As stated in the Amended Complaint, (D.E. 31, ¶33). had Defendants encouraged Plaintiff Roberts to apply-- as they encouraged three white officers including Zill--Roberts would have applied for the Chief position. Instead, Roberts did not apply because the County published minimum qualifications for the position that he would not meet (Id., ¶¶ 30-32) and which were designed to exclude him. Stephen Zill, who did not meet the articulated minimum qualification, however, was selected (¶¶ 36-37).

Thus, the selection process for the Chief of Police position is relevant to the claims asserted by Captains Robert and Bloom this matter.

As shown by documents disclosed by Defendant, 31 people applied for the Chief of Police

position. In the first prescreening, 16 of the 31 were eliminated from contention, including Chief Zill, as shown by Defendants' recent disclosure, (GC 014304.) In fact, Zill was ranked 22nd of the 31 candidates in this first screening.

The remaining 15 candidates were then subjected to a "Candidate Screening Rubric", which was based on "Experience, Community Engagement, Professional Development, and Workplace Culture. " (GC 19393-19394). Scores were to be assigned for each factor.

Of the fifteen candidates, six were selected for the final phase of the process, which involved interviews and assessments in three stages: a mock Press Conference, a Leadership Interview and a Technical Team feedback session. (GC 019387)

However, of the 6 selected to go forward to the final phases of the selection process, only one was an internal candidate, Ms. Mauney Smith. (GC 019387) Eventually, seven candidates were placed in the final round. (D.E. 77-1, p. 18) Two of the 6 deemed qualified were omitted, while three from the original 31, Downey Rollins and Zill, all of whom had been screened out were brought back into the selection process.--including Stephen Zill, who was ultimately selected as Chief in spite of being in the bottom or the middle of the scores that have been provided thus far.

*INT No. 12* asks Defendant to identify by name and race each person who applied for the Chief of Police position.

Defendant stated that it provided documents providing these answers, but no racial information was provided for 24 of the 31 applicants. Only the seven who made it to the final round were identified by race.

*INT No. 13* asks Defendant to identify by race and the point value scores each candidate selected to advance to the interview and assessment center portion of the promotional process for the Chief of Police, and for each individual *not* selected an explanation of why

he or she was not selected and provision of the point value scores assigned to each individual by the screening committee.

The County's supplemental responses and documents now provide <u>answers to some but not all of this Interrogatory:</u>

a) <u>Of the 31 candidates the race of only the final seven was provided.</u>

b) <u>While final scores were provided for the first phase of the selection process, which whittled the 31 applicants down to 15 (see pps. 014304), it appears that the scoring sheets from which the final scores were tallied were not provided for some of the scorers.</u>

c) <u>It also appears that most scoring sheets /scores have not been provided for all of the fifteen candidates evaluated in the next phase of the process. Thus, Defendant should clarify whether or not all scoring and feedback documents for the fifteen candidates selected after the first round have been provided.</u>

*Int No. 15* asks Defendant to` "[I]dentify all documents used by or relied upon by you in the selection of Defendant Zill for the position of GCPD Police of Chief … and state the scores and feedback of each of the seven final candidates provided by the internal and external assessors".

Defendant's supplemental Interrogatory responses (Int. No. 5, DE 77-1 pp. 14-16) identify <u>twenty-three persons</u> who were allegedly involved in the final round's assessment and interviews of the final seven candidates. While Defendant has provided scoring sheets for some Press Conference, Leadership team and community/Technical assessment panelists, it is not clear if all scoring documents have been provided.

Thus, Defendant should clarify whether or not all scoring and feedback documents for the final seven candidates have been provided. Defendant should supplement their responses with any additional documents showing the written scores and feedback of all evaluators for the final seven candidates, or state that the documents have been destroyed

1

or otherwise explain why they have not been provided.

*INT Nos. 17 and 18* concern two of the three Assistant Chief openings which are at issue in this lawsuit and asked the County to state whether these two vacancies for Assistant Chief positions were "announced or published" and describe whether the criteria used in the selection process was reduced to writing and/or published."

Defendant County has now stated that these Assistant Chief positions were not announced or published but has not yet answered whether the criteria for these two selections were reduced to writing. Here the information sought in Interrogatories Nos. 17 and 18 is relevant because it seeks to determine whether Defendant County followed the requirements of its own policies and practices, and/or the applicable State Statute which governs the Gaston County Police Department, N.C.S.L. 1983-904.

An employer's failure to follow its own policies may support an inference of discriminatory motive. For example, failure to follow established procedures with respect to an employee's discharge has been held to support a finding of discriminatory discharge. *Hamilton v. 1st Source Bank*, 895 F.2d 159, 162 (4th Cir. 1990), *Stiles v. General Elec. Co*., 1993 U.S. App. LEXIS 2870 (4h Cir. 2/12/93).

**REQUEST FOR PRODUCTION OF DOCUMENTS**

*RFP No. 4* asks the County to "[p]roduce all minutes of all open and closed sessions of the Board of County Commissioners for the period January 1, 2020 through the present date." Gaston County stated it was reviewing "the closed session meeting minutes to verify, and will produce relevant, responsive, non-privileged documents."

In their supplemental production the County provided a few pages of minutes which were heavily redacted, and do not represent all the meetings for the time period 1/1/2020 for which there were closed sessions. In fact the minutes produced were for only two meetings, one on March 8, 2023, and the second on January 7, 2025. During this same time period the County's website shows that there were 31 closed sessions held, and several of them concerned personnel matters. Plaintiffs seek these minutes to search for additional race and

retaliation claims brought against Defendant County.

*RFP No. 7* asks the County to "[p]roduce all documents maintained by you which comprise the personnel file for the following individuals, including but not limited to said individuals' application for employment, annual job performance evaluations, commendations, awards, disciplinary action, applications submitted for promotions, training records, test scores, status change forms or other documents reflecting promotions, bonuses, and salary increases."

Defendants' recent document disclosures provided more of the personnel files requested. Still missing are the files of Kim Eagles, former County Manager whom defendants identified as a decisionmaker for the promotion of Chief Zill, and the file of Captain William Downey who also applied for the Chief position as well as Assistant Chief positions that are at issue here. Personnel files of the decision-makers are almost always discoverable with the protection of a protective order. *See*, *Sykes v. Target Stores*, 2002 U.S. Dist. LEXIS 6627, at *14-*18 (N.D. Ill. 4/15/2002) (permitting discovery of personnel files of those who failed to promote claimant). *See also, Cason v. Builders FirstSource-Southeast Group, Inc.*, 159 F. Supp. 2d 242, 247-48 (W.D.N.C. 8/30/2001) *Rivera v. DHL Global Forwarding*, 272 F.R.D. 50, 59 (D.P.R. 2011) *Bennett v. CSX Transp. Inc.,* 2011 U.S. Dist. LEXIS 110669 (E.D.N.C. 9/26/2011.)

*RFP Nos. 8 and 9* asks Defendant to provide all complaints identified in response to *Interrogatory No. 3,* as well as all investigative documents pertaining to those complaints. Again, the County has refused to provide complaints arising outside of the GCPD yet failed to explain why those complaints would not meet the discovery standard.

*RFP No. 11* asks Gaston County to produce "all documents........ related to any interviews and assessment centers conducted by you to fill the position of Chief of Police in early 2023, as well as any other documents upon which you relied in filling the position."

See discussion *infra* at p. 3-5.

<u>RFP No.23</u> asks for "[p] all test scores and eligibility lists for the positions of Sergeant and Captain as maintained in the GCPD Police Chiefs' logs for the period beginning January 1, 2001 through the present date."

Defendant only produced eligibility lists and scores contained on pages GastonCo-002860-2867. These documents show test scores but have redactions of social security numbers, and

1

no names, and go back only to 2017. In the August 26th letter, Plaintiffs limited the time frame of this request to 2010 to the present. Defendant's supplemental response contends that even this time frame is too broad, yet fails to provide any additional data on the test scores and eligibility lists for the positions of Sergeant and Captain.

This request for these scores and eligibility lists is reasonably calculated to lead to the discovery of admissible evidence of race discrimination. It is anticipated that these lists will assist in showing that Brent Roberts, Reggie Bloom and other fully qualified African American GCPD employees were held in lower positions longer than their white counterparts and were repeatedly denied promotions to positions that were then filled by their white counterparts.

## II. DISCUSSION

In assessing the merits of a motion to compel, relevant information "need not be admissible in evidence to be discoverable." *Fed. R. Civ Proc. 26(b)(1)*. "Relevance is not, on its own, a high bar." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188 (4th Cir. 2019).

The party or person *resisting* discovery, not the party moving to compel discovery, bears the burden of persuasion that discovery should not be answered or produced. *Kinetic Concepts Inc. v. ConvaTec, Inc..*, 268 F.R.D. 226 (M.D. N.C. 2010). Defendants have not met their burden here and thus they should be ordered to further supplement their responses. .

42 years ago the Supreme Court stated: "[a]ll courts have recognized that the question facing triers of fact in discrimination cases is both sensitive and difficult. …There will seldom be eyewitness testimony as to the employer's mental processes." *U.S. Postal Service v. Aikens*, 460 U.S. 711, 716 (1983). Discrimination cases remain difficult to prove, especially because the primary issue is ascertaining the intent of the decisionmakers. Thus, "we must be mindful not to cripple a plaintiff's ability to prove discrimination indirectly and circumstantially by

1

'evidentiary rulings that keep out probative evidence because of crabbed notions of relevance. . . .' ". *Robinson v. Runyon*, 149 F.3d 507, 513 (6th Cir. 1998); *see also Kozlowski v. Hampton School Bd*. 77 Fed. Appx. 133 (4th Cir 10/3/2003).

Fed. R. Civ. P. 26(b)(1) allows discovery of non-privileged items that are "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The Rule 26 factors weigh in favor of granting Plaintiffs' motion to compel. With respect to the issues at stake, the federal Courts recognize the importance of allowing civil rights litigants full access to the Courts. This case raises questions about entrenched racism at the GCPD and Gaston County government, such that a glass ceiling exists hindering African Americans from placement in the two highest positions in the GCPD, Chief and Assistant Chief. Plaintiffs' evidence includes statements of racial bias made by the Chair of the Board of County Commissioners, who posted on Facebook that he was seeking "white dudes" to support him.

Civil rights cases particularly entitle Plaintiffs to broad discovery. *See Wolfe v. Green*, 257 F.R.D. 109, 112 (S.D.W.Va. Apr. 2, 2009) ("The great weight of the policy in favor of discovery in civil rights actions supplements the normal presumption in favor of broad discovery[.]"); *Floren v. Whittington*, 217 F.R.D. 389, 391 (S.D.W.Va. Oct. 2, 2003) (recognizing "the important federal interests in broad *discovery* and truth seeking as well as the interest in vindicating important federal substantive policy . . ."). With respect to the amount in controversy in this matter, Plaintiffs expect to offer evidence that because of denied promotions they have lost over a million dollars in back and future compensation and benefits. With respect to the parties' resources the county government presumably has the personnel to provide the

1

requested discovery. Moreover, there is no mechanism to allow Plaintiffs to obtain the information at issue other than through the, discovery process.

Defendant's brief did not respond to plaintiffs' argument that failure to produce a privilege log, causes the objections to discovery to be waived. *See, Oppenheimer v. Williams,* 2021 U.S. Dist. LEXIS, 221997 *8 (D.S.C. Nov. 17, 2021); *Smith v. James C. Hormel Sch. of the Va. Inst. of Autism*, 2010 U.S. Dist. LEXIS 95668 *11 (W.D. Va. Sept. 14, 2010) (failure to timely produce a privilege log may constitute a waiver of any asserted privilege) *[citations omitted]*. Defendant County has still failed to produce a privilege log, despite Plaintiff's request for a privilege log in their August 26th letter. Therefore, this Court should find all of Defendant's objections based on privilege to be waived, or in the alternative, order Gaston County to produce a privilege log.

Finally. Defendants complain that some of Plaintiffs' discovery requests are overbroad, including Int. No. 3, in that they asked for "all" documents. Defendant's concern should be given short shrift, as Plaintiffs' requests in each instance were limited by time, and by scope. For example, Int. No. 3 sought identification of "all complaints received by You during the period beginning January 1, 2016 through the present date, which relate to or involve complaints alleging racially discriminatory and/or retaliatory conduct", and thus is limited both in time and subject matter. In a case cited by Defendants*, Guillen v. B.J.C.R., LLC,* No. 3:20-cv-00317-MMD-CSD, 2022 U.S. Dist. LEXIS 59625, at *28 (D. Nev. Mar. 31, 2022), the court held that requests for "any and all" documents without temporal or other reasonable limitations were overbroad. Here there is a temporal and a reasonable subject matter limitation and thus no overbreadth.

**PLAINTIFFS SHOULD BE AWARDED ATTORNEYS FEES FOR HAVING TO FILE THIS MOTION**

Pursuant to Fed. R. Civ. Proc. Rule 37(a)(50(A), Plaintiffs reiterate their request for an

award of attorneys fees for their time in preparing the motion to compel and memoranda in support. Plaintiffs' motion to compel was necessitated by the Defendant's conduct which left Plaintiffs with no option other than to seek assistance from the Court. It was only after Plaintiff's filed their motion to compel that on November 26, seven months after Plaintiffs' discovery was served, that Defendant served Supplemental discovery responses. Defendant had never responded to Plaintiffs' August 26 letter which explained in detail the items needing supplementation and offered to discuss those items with Defendant. Therefore, this Court should award Plaintiffs' their attorneys' fees under Rule 37 (a)(5)(A).

### III. CONCLUSION

Defendant Gaston County failed to adequately answer discovery served on April 15, over seven months ago, and then ignored Plaintiffs' attempt to resolve the issues without Court intervention  Defendants' supplemental written responses and additional document disclosures have helped to answer the discovery at issue, but deficiencies remain.

Therefore, Plaintiffs ask that this Court a) order Defendant to respond more fully to Interrogatories Nos. 3, 4, 10, 12, 13, 15, 17, and 18, b) to produce all documents responsive to Requests Nos. 4, 7, 8, 9, 11 and 23 in an unredacted form, and c) award Plaintiffs their attorneys' fees incurred in preparing the motion to compel and memoranda. Respectfully submitted this the 10th day of December, 2025.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe
N.C. State Bar No. 13698
**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC  28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

/s/ Julie H. Fosbinder
Julie H. Fosbinder
N.C. State Bar No. 19400
**FOSBINDER LAW OFFICE**
840 Seneca Place

Charlotte, North Carolina  28210
Telephone:  (704) 560-8600
Email:  Jhanfos2@gmail.com

# NO USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in connection with the research for preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Lexis, Westlaw, FastCase, and Bloomberg;

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has served a copy of the foregoing Plaintiffs' Memorandum in Support of Motion to Compel via the court's electronic filing system upon the following counsel for the Defendants:

Jennifer B. Milak
**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**
Post Office Box 19207
Raleigh, North Carolina 27619-9207
Email: jmilak@teaguecampbell.com
*Attorney for Defendant Brown*

Kathleen K. Lucchesi
Daniel Q. Leake, II
**JACKSON LEWIS**
200 S. College Street, Ste. 1550
Charlotte, North Carolina
Email: Kathleen.Lucchesi@jacksonlewis.com
Email: Daniel.Leake@jacksonlewis.com
*Attorneys for Defendants Gaston County & Zill*

This the 10th day of December, 2025.

*/s/Julie H. Fosbinder*
Julie Fosbinder.
Counsel for Plaintiffs