# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:24-cv-0927-DCK

| | |
|---|---|
| REGINALD E. BLOOM, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| GASTON COUNTY, NORTH CAROLINA | ) |
| GASTON COUNTY BOARD OF COUNTY | ) |
| COMMISSIONERS, in its official capacity; | ) |
| and STEPHEN ZILL, In His | ) |
| Individual Capacity. | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT

The Plaintiff, Reginald E. Bloom, Jr., hereby submits his Reply Memorandum in Support of his Motion for Leave to Amend Complaint.

Defendants make two flawed arguments to support their opposition to Plaintiff's proposed amendment. They allege that the amendment will cause prejudice because it adds a new legal claim, and that the motion is unreasonably delayed because of Plaintiff's bad faith.[1] These allegations should be rejected by this Court.

---

[1] Captain Bloom seeks leave to amend his Complaint a second time to: 1) reflect the dismissal of Plaintiff Roberts as a party to the lawsuit; 2) reflect Plaintiff Bloom's dismissal of his claims against Defendant Commissioner Chad Brown; 3) add reference to the Right to Sue letter issued by the EEOC in April; and 4) to conform Bloom's pleadings to new evidence uncovered during discovery conducted in this matter. Defendants do not object to the amendments to show dismissal of claims by Roberts or against Brown.

1

**II.**
**LEGAL ARGUMENT**

**A. No Prejudice Will Result to Defendant by the Proposed Amendments-No New Discovery is Needed**

It is undisputed that the proposed Second Amended Complaint does not add new parties to this action, and that the only new legal claim is his failure-to-promote claim under Title VII.

Yet, Defendants contend:

> Although there might be time to complete new discovery on the Title VII claim, the fact that Defendants will be forced to commit more time and resources to claims and theories Plaintiff should have alleged almost two years ago, is itself prejudicial, as is the fact that Defendants are now forced to engage in additional motion practice as a result. *Sacks Holdings, Inc. v. Grin Nat. USA Ltd.*, No. 1:23CV1058, 2024 U.S. Dist. LEXIS 185831, 2024 WL 4476374, at \*6 (M.D.N.C. Oct. 11, 2024) (finding if the proposed amendments and new claims are allowed, fairness would require an extension of fact discovery would in turn increase cost, spur motions practice, and delay resolution of the case). Additionally, Plaintiff's amendment will multiply the scope, cost, and length of this case as Defendants will have to prepare a third Answer to Plaintiff's PSAC as well as a third Motion to Dismiss.

Defendants' argument is nonsensical, as they have no reason to conduct additional discovery because the new claim under Title VII arises under the same core facts as alleged in Plaintiffs' Amended Complaint, and it will be analyzed under the same legal standards as the existing failure-to-promote claim under 42 U.S.C. § 1981.

> Title VII and 42 U.S.C. § 1981 each prohibit employment discrimination on the basis of race. 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 1981. A race-based employment discrimination claim must assert that the plaintiff "belongs to a racial minority" and was either not hired, fired or suffered some adverse employment action due to his race. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The legal standard for Title VII and Section 1981 claims is the same. *Thompson v. Potomac. Power Co.*, 312 F.3d 645, 649 n.1 (4th Cir. 2002).

*Tabb v. Board of Education of Durham Public Schools*, 2020 LEXIS 177333 (M.D.N.C. 2020). Defendant's own brief admits that they cannot show prejudice on this front as they state:

2

> An opposing party may be prejudiced if a proposed amendment raises a new legal theory requiring the gathering and analysis of facts <u>not already considered by the opposing party.</u>

*Johnson*, 785 F.2d at 510. (emphasis added).

Moreover, although Defendants will have to file a new answer, that fact cannot be deemed prejudicial as they would have had to file a new answer even if the complaint was amended earlier, and again, because the proposed Second Amended Complaint does not change the legal theories, the answer should be very similar to the answer already filed (DE 40).

Defendants seem to imply, however, that Plaintiff could have added the EEOC claim to their First Amended Complaint. That is simply not the case. No Notice of Right-to-Sue letter was issued by the EEOC at that time, and the EEOC typically does not issue that Notice until an 180-day period has passed. "Generally, you must allow EEOC 180 days to resolve your charge. Although, in some cases, EEOC may agree to issue a Notice of Right To Sue before the 180 days." See, *https://www.eeoc.gov/what-you-can-expect-after-you-file-charge*. Bloom's charge was filed on October 16, 2024, which means the 180-day period would not have elapsed until April, 2025. [DE 31-5]. The First Amended Complaint was filed on February 3, 2025. (D.E. 31) Further, the First Amended Complaint specifically reserved the right to amend once the EEOC issued its Notice of Right to Sue. [DE 31 at ¶ 31]

Finally, although Defendants state that they will need to file another motion to dismiss, that is not a requirement, but a voluntary step. And again, it is one that they would have had to do anyway, even if Bloom had asked the EEOC earlier for a Right to Sue letter, received the Right to Sue letter, and filed the Motion to Amend earlier. Moreover, because the legal standards for Title VII and 42 U.S.C. § 1981 are the same, any new motion to dismiss would surely be almost identical to the one they have already filed (DE 38, 42). Additionally, because there has been no ruling on

the pending Motions to Dismiss, any oral argument will likely address the existing, as well as any new motion, and thus, no additional time will be needed for argument.

The existing requests for relief for the violations of law contained in the current complaint are made pursuant to 42 U.S.C. §§ 1983 and 1981. The new claim for damages under Title VII is almost identical to the existing claim under 42 U.S.C. §1981, with the only damages differences being the amount of damages. Under 42 U.S.C. §1981 there is no cap on damages—but under Title VII, there is a cap. 42 U.S.C. § 1981a(b)(3). In both cases, damages can include economic losses and compensatory damages for anxiety, depression, and the like. No punitive damages are available under either cause of action under 42 U.S.C. § 1981 or under Title VII because the Defendant employer is a governmental entity.

**B.** **There Was No Bad Faith or Improper Motive in Filing the Motion to Amend.**

Defendants correctly point out that the present motion to amend was filed after the Bloom settlement agreement was not approved by the County's BOCC, somehow attributing a bad motive to its timing. However, they have no reason to allege a bad motive, nor have they advanced any evidence to support this allegation. In fact, the timing of Bloom' motion to amend was driven by two factors—the three months which both sides devoted to mediation and settlement talks, and Defendant's recalcitrance in providing discovery.

Plaintiff received the Notice of Right to Sue in early April, when the parties were in the midst of resolving Roberts' and Bloom's claims. As the Court's docket shows, the parties agreed to and received Court permission for *seven* extensions of the mediation deadline, as well as some extensions of the time for completing discovery.

Defendants' claim, "upon information and belief," the EEOC informed Plaintiff's counsel that Defendants would not provide a position statement in response to Plaintiffs' charges of discrimination and that Plaintiff was dilatory in seeking his Right to Sue from that agency. [DE at 6-

4

7] A charging party, however, is not required to see a Notice of Right to Sue from the EEOC. Whether he does so or not is a matter of discretion.

The procedural context of this case matters. It is typical for plaintiffs to put on hold many litigation tasks during serious settlement talks, so that the parties' representatives can avoid running up the client's bill and spending, what will turn out to be, unnecessary time and money on litigation tasks.   Counsel does not believe it would have aided in the settlement of Roberts' and Bloom's claims to file a motion to amend in April or May, which would have required Defendant to respond during the time the settlement negotiations were ongoing.  Regardless of whether it would have aided or not, it is accurate that Plaintiff held off filing the motion to amend, in part, because of the extensive settlement negotiations that were occurring before and after the issuance of the EEOC's Right to Sue. As plaintiffs' attorneys who typically work on a contingency fee basis, the undersigned are very aware of the need to conserve time and money for their client and seek to find the most efficient way to litigate a case.  For those reasons, filing a motion to amend while settlement talks were ongoing is not typically done.

Instead of showing Plaintiff's bad faith, Defendants' own brief, again, provides support for the Plaintiff's timing of the motion to amend. Defendants acknowledge they provided "26,000+ emails on Plaintiffs on February 5, 2026."  That many pages of documents cannot be absorbed in a day or even a week and required significant review. That review, coupled with ongoing depositions and other work, added to the reasoning behind filing the motion to amend in June rather than earlier. In fact, depositions were still being taken in March (the Wong deposition), just before the mediation began on March 10.

Further, *Peamon v. Verizon Corp.*, 581 Fed. Appx. 291, 292 (4th Cir. 2014), cited by Defendants, is completely inapposite to the instant motion.  In that case, Peamon had filed a post-judgment motion to amend to allege more damages than he had stated in his original complaint,

seeking to overturn the district court's dismissal of his complaint for lack of subject matter jurisdiction. The Court found that act to constitute bad faith. Here, Plaintiff is filing to comply with the EEOC statutory deadline.

With respect to the minor new factual allegations in the proposed Second Amended Complaint, Defendant does not state an objection to most, nor could they as the allegations arise from discovery, which due to the Defendants' rolling production and the difficulty in scheduling depositions have developed over the past year and a half. The procedural posture of Bloom's motion is similar to that of the plaintiff in *Leonetti v. SWN Prod. Co.*, 2026 U.S. Dist. LEXIS 112881, (N.D. West Va. 2026) where the court noted the defendant's production of "over 40,000 pages of documents in this matter on a rolling basis" and found no "prejudice from the requested amendment as the proposed amendments to the complaint are simply to provide greater detail in light of the evidence produced in discovery." The Court stated in that case "it makes perfect sense to wait until discovery has concluded—and the whole universe of information related to the case is available—before seeking to amend a complaint to conform it to the evidence. This avoids the need for repeated motions to amend and ensures that a party has all the information it needs to properly amend. "

Nonetheless, Defendants contend that Plaintiff erred in three factual allegations contained in the proposed Second Amended Complaint. Plaintiff disagrees that his PSAC allegations are erroneous. Defendants specifically allege:

- *Both Zill and Brown testified that Brown did not encourage Zill to apply for the 2023 Chief of Police position [PSAC ¶ 27];*

While it is true that the individual Defendants provided this testimony, it is contradicted by the declaration Captain Roberts provided in response to Defendants' Motion to Quash and Protective Order to prevent the deposition of former Captain William Downey. [DE 69] In his declaration

opposing Defendants' motion, Roberts stated that Captain Downey told him that Brown had encouraged Zill to apply for the Police of Chief Position. [DE 71-2 at 3, ¶ 7] The Plaintiff has been unable to depose Mr. Downey as the Court has not yet resolved Defendants' motion. Regardless of the testimony of Zill and Brown, this is a disputed issue of fact at the present time.

Defendants also allege:

- *Roberts testified that Zill did not direct him to go home to change shirts because he was wearing a gray shirt [PSAC ¶ 45]; additionally, attorney Jenny Sharpe told the EEOC investigator on July 10, 2024, that Roberts said Zill did not actually send him.*

Defendants' contention is misleading and conflates two separate occasions in which Roberts felt singled out because of his attire: once by Zill in October 2023; and once by Holder on June 11, 2024. In connection with Zill's request, Roberts felt it was incumbent for him to go home and change into a white shirt because of the specific context in which that discussion arose. With regard to the Holder incident reflected in Ms. Sharpe's email to the EEOC's investigator, it is clear that this is a separate incident which occurred in 2024 as it coincided with Roberts' report of a white ERT member's threat to physically harm him. [DE 31 ¶ 61] As indicated by Ms. Sharpe's reference to Holder - rather than Zill - in her email to the EEOC's investigator, there were two separate occasions involving both Zill and Holder in which Roberts felt he was being treated differently than similarly-situated white police officers. In fact, Captain Roberts stated in his deposition "I think we're talking about two different things . . . ." (Roberts Dep. at 132; 125-136)."

Finally, Defendants allege:

- *Captain Yancey is paid a slighter higher hourly rate than Plaintiff because he has seven (7) more years of service than Plaintiff contrary to Plaintiff's claims [PSAC ¶ 76].*

Plaintiff's allegation is correct. Yancey is paid at a higher rate, as Paragraph 76 states.

7

Further, to the extent that Defendant contends Plaintiff's allegations are incorrect they can address them in their Answer.

### III.
### <u>CONCLUSION</u>

"Rule 15(a) grants the district court broad discretion concerning motions to amend pleadings, and leave should be granted absent some reason 'such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments, previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Nourison Rug Corporation v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008) (*citing HCMF Corp. v. Allen*, 238 F3d 273, 276-77 (4th Cir. 2001). "Delay alone, without prejudice, does not support the denial of a motion for leave to amend." *James River-Norwalk, Inc. v. Burch Roofing Co., 891 F.2d 287* (4th Cir. 1989) (quoting *Deasy v. Hill*, 833 F.2 38, 41 (4th Cir. 1987) *cert. denied* 485 U.S. 977, 108 S.Ct. 1271 (brackets in original)."

The federal rules strongly favor the grant of motions to amend. *Harley v. Chao*, 503 F. Supp. 2d 6763, 770 (M.D.N.C. 2007). *Raycap Asset Holdings, LTD v. Gora, LLC*, 2023 U.S. Dist. LEXIS 83122*2 (W.D.N.C. May 11, 2023) (granting motion for leave to amend following hearing on defendants' motion for summary judgment and more than 8 months after the scheduling order deadline). Finally, trial of this matter will not be delayed as trial has not yet been scheduled.

Therefore, Plaintiff Reginald E. Bloom, Jr. respectfully requests that this Court grant his motion and enter an Order permitting him to file and serve his Second Amended Complaint in this matter.

This the 20th day of July, 2026.

8

/s/ *Jenny L. Sharpe*
Jenny L. Sharpe
Attorney for Plaintiffs
N.C. State Bar No. 13698
**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC  28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

/s/ *Julie H. Fosbinder*
Julie H. Fosbinder
Attorney for Plaintiffs
N.C. State Bar No. 19400
**FOSBINDER LAW OFFICE**
840 Seneca Place
Charlotte, North Carolina  28210
Telephone: (704) 333-1428
Facsimile: (704) 560-8600
Email:  Jhanfos2@gmail.com

9

## NO USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in connection with the research for preparation of this document with the exception of such artificial intelligence embedded in the standard on-line legal research sources LEXIS, Westlaw, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered and the citation to authority provided.

## PAGE COUNT CERTIFICATION

Pursuant to this Court's Local Rules, the undersigned certifies that this Reply brief is less than ten pages and therefore compliant with the Local Rules governing page limitations in briefs.

Submitted respectfully this the 20th day of July 2026.

/s/ Julie H. Fosbinder
Julie H. Fosbinder

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel certifies that she has on this date electronically filed Plaintiff's

Memorandum in Support of Motion for Leave to Amend Complaint using the Court's CM/ECF

filing system which will automatically serve the filing on the following attorneys of record.

Kathleen K. Lucchesi
Kelly A. Walker
**LITTLER MENDELSON P.C.**
620 S. Tryon Street Ste. 950
Charlotte North Carolina 28202
Email: kluccchesi@Littler.com
Email: kewalker@littler.com
Counsel for Gaston County NC, Gaston County Board of
County Commissioners, and Stephen Zill


This the 20th day of July, 2026.


_/s/ Jenny L. Sharpe_
Jenny L. Sharpe
Counsel for Plaintiff