# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
Civil Action No. 3:24-cv-0927-DCK

REGINALD E. BLOOM, JR., )
        )
    Plaintiffs, )
        )
vs. )
        )
GASTON COUNTY, NORTH )
CAROLINA, THE GASTON COUNTY )
BOARD OF COUNTY )
COMMISSIONERS, and CHAD BROWN, )
In His Individual Capacity and STEPHEN )
ZILL, In His Individual Capacity, )
        )
    Defendants. )
_____

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT, FOR SANCTIONS, AND FOR AN EVIDENTIARY HEARING**

Defendant Chad Brown ("Commissioner Brown") and his counsel, Jennifer B. Milak ("Ms. Milak"), pursuant to Local Rule 7.1 of the United States District Court for the Western District of North Carolina, respectfully submit this Memorandum of Law in Opposition to Plaintiff's Motion to Enforce Settlement Agreement, For Sanctions, and For an Evidentiary Hearing to Show Cause Why Sanctions Should Not Be Imposed (hereinafter, "Motion to Enforce").

## STATEMENT OF THE CASE AND FACTS

This matter arises from a Complaint filed by Plaintiff Reginald E. Bloom, Jr. ("Plaintiff") on October 21, 2024, and an Amended Complaint filed on February 3, 2025, against Gaston County, Gaston County Board of County Commissioners, in its official capacity (the "Board of Commissioners"), Chad Brown, in his individual capacity ("Commissioner Brown"), and Stephen Zill, in his individual capacity (hereinafter, collectively, "Defendants") alleging the Defendants racially discriminated against him when they failed to promote him to the position of Assistant Chief of Police. [D.E. 1]; [D.E. 31]. The parties exchanged tens of thousands of documents and

conducted more than a dozen depositions during discovery. [D.E. 117, ¶ 7]. After extensive discovery, and when the evidence failed to implicate Commissioner Brown in any wrongdoing, Plaintiff filed a stipulation of dismissal with prejudice of his claims against Commissioner Brown. [D.E. 100]; [D.E. 117, ¶¶ 6-7].

### A. The Negotiations Between Plaintiff and Commissioner Brown.

The proposed Settlement Agreement at issue was between Plaintiff and Gaston County alone—and ***not*** with Commissioner Brown. [D.E. 117, ¶ 10, Ex. 5]. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

[D.E. 117, ¶ 10, Ex. 5]. Commissioner Brown likewise refused to sign a mutual release. [D.E. 117, ¶ 10, Ex. 5]. Instead, ████████████████████████████████████

██████████████████████████ [D.E. 117, ¶ 10, Ex. 5]. Nevertheless, Plaintiff—*not* Commissioner Brown—eventually initiated individual and separate settlement negotiations with Commissioner Brown. [D.E. 117, ¶ 9, Ex. 4].

In April 2026, ████████████████████████████████████████████

██████████████████████████████. [D.E. 117, ¶ 10]. ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ [D.E. 117, ¶ 10]. On May 7, 2026, however, ████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ [D.E. 117, ¶ 11, Ex. 4]. In response, ██████████████████████████████████████████████████



██████ [D.E. 117, ¶ 12, Ex. 6].

On May 12, 2026, ████████████████████████████

████████████████████ [D.E. 117, ¶ 13, Ex. 8]. In response, ████████████

████ ██ ████ ██ ██ ████ ████ ████ ████ ██ ████ ██

████████████ [D.E. 117, ¶¶ 14-15, Exs. 9, 10]. Counsel for Plaintiff and Commissioner Brown continued to exchange emails with revised and proposed language, but ultimately, they failed to agree on specific language or terms. [D.E. 117, ¶ 17]. Notably, however, Plaintiff agreed in principle to acknowledge the following: ████████

████████████████████████████████

████████████████████████████████ [D.E. 117, ¶ 17, Ex. 11].

Throughout these separate and secondary negotiations, Ms. Milak represented only Commissioner Brown, in his individual capacity. [D.E. 117, ¶ 2]. Ms. Milak never represented to Plaintiff's counsel whether Commissioner Brown approved or disapproved of the proposed settlement terms with Gaston County. [D.E. 117, ¶ 16]. ████████████████

████████████████████████████████

████████████████ [D.E. 117, ¶ 16]. While Plaintiff's counsel expressed concern about Commissioner Brown's influence on the matter, ████████████████████

████████████████████████████. [D.E. 117, ¶ 16].

As Commissioner Brown's attorney, Ms. Milak never represented how the Board of Commissioners intended to vote, never made a threat related to the anticipated vote, and never

discussed with the vote with Commissioner Brown or *any* member of the Board of Commissioners, and did not even attend or participate in the Board of Commissioners meeting. [D.E. 117, ¶ 16]; [D.E. 117, ¶ 21, Ex. 1]. Plaintiff never mentioned or discussed feeling threatened or alluded to improper negotiations prior to filing his frivolous Motion for Sanctions. [D.E. 117, ¶ 18].

Ultimately, on May 22, 2026, ██████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ [D.E. 117, ¶ 19]. Commissioner Brown agreed and Plaintiff agreed to file a corresponding Stipulation of Dismissal. [D.E. 117, ¶ 19]. Subsequently, and contrary to Plaintiff's contention, Ms. Milak never insisted nor demanded that Plaintiff file the dismissal on a certain date. [D.E. 117, ¶ 19]. Instead, ████████████ ████████████████████████████████████████████ [D.E. 117, ¶ 19, Ex. 12].

### B.    Settlement Negotiations between Gaston County and the Plaintiff.

Following mediation and after extensive discussions, ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████ [D.E. 117, ¶ 22, Ex. 15]. ████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████ [D.E. 117, ¶ 22, Exs. 13, 14]. Paragraph 19 of the final proposed Settlement Agreement states the following:

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████



[D.E. 117, ¶ 22, Ex. 15]. (emphasis added).

Throughout the settlement negotiations, ███████████████████ ████████████ consistent and transparently conveyed. [D.E. 117, ¶ 22, Ex. 13]. On March 10, 2026, Gaston County attorney, Ms. Lucchesi, sent Plaintiff's counsel an email ███████████ ██████████████████████ [D.E. 117, ¶ 22, Ex. 13]. On April 28, 2026, Ms. Lucchesi again clarified ████████████████████████ ████████████ [D.E. 117, ¶ 22, Ex. 13]. Then on May 18, 2026, ███ █████████████████████

[D.E. 117, ¶ 22, Ex. 13]. (emphasis added).

██████████████████████████ . [D.E. 117, ¶ 22, Ex. 15]. On May 22, 2026, Ms. Lucchesi emailed Plaintiff's counsel ████████████████ ████████████ [D.E. 117, ¶ 22, Ex. 13]. Ms. Lucchesi further stated ███████████████████████

5

████████████████████████ [D.E. 117, ¶ 22, Ex. 13]. Plaintiff's counsel sent Ms. Lucchesi and email to acknowledge her understanding ████████████████████████ ████████████████████████ [D.E. 117, ¶ 22, Ex. 13]. Plaintiff counsel later added, ████████ ████████████████████████ [D.E. 117, ¶ 22, Ex. 13]. Before the Board of Commissioners' vote, Plaintiff filed a dismissal with prejudice as to claims against Commissioner Brown. [D.E. 100]. This, by default, removed Commissioner Brown from this action prior to the Board of Commissioners' consideration or vote on the proposed Settlement Agreement. [D.E. 117, ¶ 3].

Approval by the Board of Commissioners requires a majority vote in favor of a motion to approve the Settlement Agreement.[1,2] No individual commissioner, including the chairman, possesses the authority to unilaterally approve or disapprove of this Settlement Agreement or *any* settlement agreement. ████████████████████████

████████████████████████

████████████████████████

████████████████████████ . [D.E. 117, ¶ 2, Ex. 1].

On June 8, 2026, Plaintiff's counsel sent a letter to Ms. Lucchesi and Ms. Milak that indicated their "intent to file a motion for sanctions with the Court tomorrow, Tuesday, June 9th." [Ex 1]. The proposed motion relied upon the following allegations and perceived misconduct: ████

████████████████████████

████████████████████████

---

[1] Procedures for the Gaston County Board of Commissioners, Rule 27, provides that, "[a] motion is adopted if supported by a simple majority of the votes cast, a quorum being present, except when a larger majority is required by [the] rules or state law."

[2] Procedures for the Gaston County Board of Commissioners, Rule 29(a), provides that, "[e]very Board member must vote except when excused from voting as provided by this rule."

███████████████████████████████ [Ex. 1] Ms. Lucchesi and Ms. Milak promptly responded and conveyed their opposition to Plaintiff's counsel's threat. [D.E. 117, ¶¶ 2, 21 Ex. 1]. Nevertheless, on June 12, 2026, Plaintiff's counsel filed the present Motion to Enforce without regard to Ms. Milak and Commissioner Brown's good names and reputations. [D.E. 106-2].

## ARGUMENT

**I.**    **The Proposed Settlement Agreement Required Mandatory Approval by the Board of Commissioners, and, Without Such Approval, There Was No Meeting of the Minds and Therefore, No Enforceable Contract.**

Plaintiff's request and Motion to Enforce bizarrely fails to recognize that ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████ [D.E. 117, ¶ 22, Ex. 13].

Moreover, North Carolina law specifically requires this condition precedent and the necessary inclusion of Board of Commissioners' approval. *See infra*, § II. Without this approval, there is no contract—and without a contract, there is nothing for this Court to enforce.

A court possess "inherent authority, deriving from [its] equity power, to enforce settlement agreements." *Hensley v. Alcon Labs.*, 277 F.3d 535, 540 (4th Cir. 2002). In seeking to resolve a motion to enforce a settlement agreement or in determining whether a contract exists, the court must rely on "standard contract principles." *Id*. Ultimately, when a court relies upon its judicial authority and enforces a settlement agreement, it "has the practical effect of entering a judgment by consent." *Id.* (internal quotes omitted). But before drawing upon its "its inherent power to enforce a settlement agreement, a district court (1) must find that the parties reached a complete agreement and (2) must be able to determine its terms and conditions.[3] *Id*. at 540-41. "[T]he Court

---

[3] The Court must "apply ordinary state-law principles that govern the formation of contracts," to analyze and determine whether an enforceable agreement exists. *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (internal

will look to the objectively manifested intentions of the parties to determine whether [] an agreement was reached[.]" *Ford v. Food Lion, LLC*, No. 3:11-cv-625-RJC-DCK, 2013 U.S. Dist. LEXIS 45669, at *3 (W.D.N.C. Mar. 29, 2013).

"If there is a factual dispute over the existence of an agreement, over the authority of attorneys to enter into the agreement, or over the agreement's terms, the district court may not enforce a settlement agreement summarily." *Hensley*, 277 F.3d at 541. And "[i]f a district court concludes that no settlement agreement was reached or that agreement was not reached on all the material terms, then it must deny enforcement." *Id*. Equally, a court must refuse "the admission of evidence to contradict or add to the terms of a clear and unambiguous contract." *Thompson v. First Citizens Bank & Trust Co.*, 151 N.C. App. 704, 709, 567 S.E.2d 184, 188 (2002) (discussing the parol evidence rule).

Under North Carolina law, "[a] settlement agreement…is a contract subject to the ordinary rules governing such instruments." *Powell v. City of Newton*, 364 N.C. 562, 566, 703 S.E.2d 723, 727 (2010). Ordinary rules of contract interpretation provide that "[n]o contract is formed without an agreement to which at least two parties manifest an intent to be bound." *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007). In negotiating the terms of a settlement agreement, "the parties may agree to any condition precedent, the performance of which is mandatory before they become bound by the contract." *Cox v. Funk*, 42 N.C. App. 32, 34-35, 255 S.E.2d 600, 601 (1979). Likewise, "if negotiating parties impose a condition precedent on the effectiveness of their agreement, no contract is formed until the condition is met." *Parker*, 182 N.C. App. at 232, 641 S.E.2d at 737.

---

quotes omitted); *see also Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015). Therefore, in this case, North Carolina law will determine and resolve "questions concerning the validity, revocability, or enforceability of" the Settlement Agreement. *Hill*, 412 F.3d at 543 (internal quotes omitted).

A condition precedent may rely upon the action of a contracting party, or it "may be condition[ed] upon the act or will of a third person" or third-party entity. *Federal Reserve Bank v. Neuse Mfg. Co.*, 213 N.C. 489, 493, 196 S.E. 848, 850 (1938). But a condition precedent "will not be construed as such in the absence of language *clearly requiring such construction*." *Cox*, 42 N.C. App. at 35, 255 S.E.2d at 601-02 (emphasis added). Therefore, the validity and interpretation of a condition precedent "depends entirely upon the intention of the parties shown by the entire contract as construed in the light of the circumstances of the case, the nature of the contract, the relation of the parties thereto, and other evidence which is admissible to aid the court in determining the intention of the parties." *Harris & Harris Constr. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 117, 123 S.E.2d 590, 595 (1962) (internal citation omitted).[4]

In this case, the proposed Settlement Agreement contained the



[D.E. 117, ¶ 22, Ex. 15]. (emphasis added).

---

[4] "The weight of authority is to the effect that the use of such words as when, after, as soon as, and the like, gives clear indication that a promise is not to be performed except upon the happening of a stated event." *Jones v. Palace Realty Co.*, 226 N.C. 303, 306, 37 S.E.2d 906, 908 (1946); *see also Farmers Bank, Pilot Mountain v. Michael T. Brown Distributors, Inc.*, 307 N.C. 342, 351, 298 S.E.2d 357, 362 (1983) (noting that the words "whether" and "if" meet the contractual "definition of a condition precedent").

██████████████████████████████████████████████ The phrase, █████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████ constitutes language that unambiguously expresses the parties clear intent to condition █████████████████████████████████████████

████████ [D.E. 117, ¶ 22, Ex. 15] (emphasis added); *see also Jones*, 226 N.C. at 306, 37 S.E.2d at 908.

███████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████ Plaintiff's counsel expressly acknowledged this requirement. [D.E. 117, ¶ 22, Ex. 13]. On April 1, 2026, for example, ████████████████████████████████████

██████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████ [D.E. 117, ¶ 22, Ex. 13]. And on April 9, 2026, Ms. Lucchesi, again conveyed ████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████████████████ [D.E. 117, ¶ 22, Ex. 13]. Finally, a mere day before the vote, Plaintiff's counsel sent an email to Ms. Lucchesi that stated, ███████████

██████████████████████████████████████████████████████████████████████

█████████████████████ [D.E. 117, ¶ 22, Ex. 13].

Ultimately, the ████████████████████████████████████ evidences a condition precedent, and North Carolina law supports and *requires* its inclusion. Moreover, ███████████

██████████████████████████████████████████████████████████████████████

████████████████ Therefore, the ████████████████████████████████ is a "mandatory" condition that must be satisfied "before [the parties] become bound by the contract." *Cox*, 42 N.C. App. at

34-35, 255 S.E.2d at 601. Here ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████.

## II. Plaintiff's Motion Improperly Disregards the Board of Commissioners' Statutory Authority and Its Decision to Not Approve the Settlement Agreement.

Plaintiff's Motion to Enforce improperly seeks a court Order that requires the Board of Commissioners—a democratically elected legislative body—to convene a new session and approve the Settlement Agreement by majority vote. This request directly contravenes North Carolina law and duly enacted Gaston County Resolutions that require the Board of Commissioners' express approval for any contract exceeding $25,000. *See e.g.*, Gaston County Res. 2002-235, ¶ 2 (Oct. 10, 2002).

Pursuant to N.C. Gen. Stat. § 153A-11, Gaston County possesses the power to "contract and be contracted with." This includes, but is not limited to, the power to execute settlement agreements. N.C. Gen. Stat. § 153A-11. And pursuant to N.C. Gen. Stat. § 153A-12, "each power, right, duty, function, privilege and immunity" held by Gaston County, "shall be exercised by the board of commissioners." As such, the "powers [vested in Gaston County] can only be exercised by its [elected] board of commissioners …"  or through "a resolution adopted by the board." *Jefferson Standard Life Ins. Co. v. Guilford County*, 225 N.C. 293, 301, 34 S.E.2d 430, 435 (1945); *see also Howard v. County of Durham*, 227 N.C. App. 46, 51, 748 S.E.2d 1, 4 (2013) ("Under N.C. Gen. Stat. § 153A-12, a county may act only upon approval by the county commissioners.").

In 2002, the Board of Commissioners exercised its statutory power when it unanimously passed Resolution 2002-235 which provided, in part, that "[t]he County Manager shall have the authority to settle all claims, between $5k and $25k with at least 48 hours notice to the Board of

Commissioners[.]" Gaston County Res. 2002-235, ¶ 2 (Oct. 10, 2002). Under this Resolution, the Board of Commissioners delegated certain settlement authority to the County Manager, but in doing so, it expressly retained and reserved the sole authority to approve of *any* contract or settlement agreement that exceeded $25,000.

In this case, ████████████████████████████████████████████████████████████████████████████████. [D.E. 117, ¶ 22, Ex. 15]. Accordingly, ████████████████████████████████████████████████████████████████████████. Approval of the Settlement Agreement required a majority vote by the Board of Commissioners. *See* Procedures for the Gaston County Board of Commissioners, R. 27. Here, ████████████████████████████████████████████████████████████████████████████████████████████████████

Now, Plaintiff asks this Court to ignore North Carolina law and unilaterally deem the proposed Settlement Agreement final, or in the alternative, to force the Board of Commissioners to renew its vote and approve the Settlement Agreement. This request completely ignores the fact that the Board of Commissioners exercised its statutory authority and ████████████████████████ Instead, this Court ought to leave the Board of Commissioners' decision in place and consider ████████████████████████████████████. And in doing so, this Court ought to deem the proposed Settlement Agreement invalid and non-enforceable for failing to satisfy an express condition precedent.

III.     **The Doctrine of Separation of Powers Cautions Against this Court Stepping into the Shoes of a Legislative Body.**

"Our legal system has broadly recognized the right of legislators to be free from arrest or civil process for what they do or say in legislative proceedings." *E.E.O.C. v. Washington Suburban*

*Sanitary Comm'n*, 631 F.3d 174, 180 (4th Cir. 2011) (internal quotes omitted). This "[l]egislative privilege against compulsory evidentiary process exists to safeguard this legislative immunity and to further encourage the republican values it promotes." *Id*. at 181.  Legislative "immunity enables legislators to be free, not only from 'the consequences of litigation's results, but also from the burden of defending themselves.'" *Burtnick v. McLean*, 76 F.3d 611, 613 (4th Cir. 1996) (citing *Dombrowski v. Eastland*, 387 U.S. 82, 85, 18 L. Ed. 2d 577, 87 S. Ct. 1425 (1967)). And "[b]ecause litigation[] costs do not fall on named parties alone, this privilege applies whether or not the legislators themselves have been sued." *E.E.O.C.*, 631 F.3d at 181. As such, "local legislators are entitled to absolute immunity when acting in a legislative capacity." *Burtnick v. McLean*, 76 F.3d at 613.

"[T]he doctrine of separation of powers[]" instructs that "some governmental decisions should be at least presumptively insulated from judicial review." *Owen v. Independence*, 445 U.S. 622, 667-68, 100 S. Ct. 1398, 1424, 63 L. Ed. 2d 673, 704 (1980). Under this doctrine, "[f]or a court…to review the reasonableness of the [County's] judgment on [discretionary or legislative] matters would be an infringement upon the powers properly vested in a coordinate and coequal branch of government. *Id*. at 648, 100 S. Ct. at 1414, 63 L. Ed. 2d at 691. Ultimately, legislative "[i]mmunity permits representatives of the public 'to discharge [their] public trust with firmness and success,' with 'the fullest liberty of speech,' regardless of whom that speech may, on occasion, offend." *S.C. State Conf. of the NAACP v. McMaster*, 584 F. Supp. 3d 152, 161 (D. SC. 2022) (citing *Tenney v. Brandhove*, 341 U.S. 367, 373, 71 S. Ct. 783, 786, 95 L. Ed. 1019, 1025 (1951)). And equally, this privilege protects "against compulsory evidentiary process[es]" such as the one sought here. *E.E.O.C.*, 631 F.3d at 181.

In this case, "it simply is not consonant with our scheme of government for a court to

inquire into the motives of" the Board of Commissioners. *Bogan v. Scott-Harris*, 523 U.S. 44, 55, 118 S. Ct. 966, 973, 140 L. Ed. 2d 79, 89 (1998) (internal quotes omitted). An individual commissioner's "act[] of voting" represents a "quintessentially legislative" function. *Id*. (recognizing that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions"). Thus, if Plaintiff seeks to elicit details about a vote, *or non-vote*, it must "be accomplished without the testimony of members of the Board as to their motives." *McLean*, 76 F.3d at 613. Absent such testimony, the only admissible evidence amounts to the outcome of the Board of Commissioners vote or non-vote and the clear and unambiguous language of the Settlement Agreement. [D.E. 117, ¶ 22, Ex. 15].

**IV.     The Failure to Satisfy a Mandatory Condition Precedent Precludes the Need to Hold an Evidentiary Hearing and, Even If This Court Requires a Hearing, Testimony Concerning the Failed Vote Is Barred by Legislative Immunity.**

Plaintiff requests an evidentiary hearing to purportedly elicit testimony and evidence regarding individual motivations and alleged bad faith or misconduct. Plaintiff further seeks an evidentiary hearing in pursuit of a court Order that requires an independently elected legislative body ███████████████████████████████████████████████. Despite issuing the request, Plaintiff fails to provide any support or basis in which this Court could mandate an evidentiary hearing. Conversely, basic principles of legislative independence and separation of powers, coupled with the abject failure to satisfy a necessary condition precedent, caution this Court against expending unnecessary time, money, and judicial resources on an evidentiary hearing.

Indeed, when "factual disputes arise" regarding the existence of a contract, "the court must 'conduct a plenary evidentiary hearing in order to resolve that dispute[.]'" *Hensley*, 277 F.3d at 541 (citing Millner, 643 F.2d at 1009). But an evidentiary hearing remains unnecessary when—as seen here—the evidence in the record patently resolves all disputed questions of fact. *See id*. ■

14

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████. [D.E. 117, ¶ 22,

Ex. 13]. ██████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████[5] As such, this fact eliminates any need to hold an evidentiary hearing in this

case.

**V.**      **Plaintiff Fails to Provide Any Evidence that Commissioner Brown or Ms. Milak Acted Unethically or in Bad Faith.**

Next, Plaintiff's Motion to Enforce alleges that Commissioner Brown. Ms. Milak and Ms. Lucchesi engaged in "objective bad faith and misconduct" in violation of 28 U.S.C. § 1927, North Carolina law, and the North Carolina Rules of Professional Conduct. [D.E. 106-2]. Plaintiff's frivolous allegations amount to pure unfounded speculation that are asserted for an "improper purpose," to "harass, cause unnecessary delay," and to "needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Likewise, Plaintiff's allegations and "legal contentions are [not] warranted by existing law" and constitute frivolous argument[s]. Fed. R. Civ. P. 11(b)(2).

28 U.S.C. § 1927 provides that, "[a]ny attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Bad faith on the part of the attorney is a precondition to imposing fees under § 1927." *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012); *see also Polpharma S.A. v. Kartha Pharms., Inc.*, No. 3:21-cv-133-MOC-DCK, 2024 U.S. Dist. LEXIS 10027, at *4 (W.D.N.C. Jan. 18, 2024 Section 1927 fundamentally "focuses on the conduct of the litigation, and is concerned only with limiting

---

[5] *See supra,* n.1.

the abuse of court processes[.]" *EEOC*, 667 F.3d at 522 (internal quotes omitted).

### A. Plaintiff Fails to Provide Any Evidence That Commissioner Brown Acted Unethically or in Bad Faith.

Foremost, Plaintiff's request for sanctions arises under 28 U.S.C. § 1927 which applies only to an "attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof[.]" Here, Commissioner Brown is not an "attorney," nor is he "admitted to conduct cases in any court of the United States[.]" 28 U.S.C. § 1927. As such, this statute does not apply, as a matter of law, to any of Commissioner Brown's alleged actions, omissions, or perceived misconduct. But assuming, *arguendo*, that this Court proceeds and considers whether to impose sanctions against Commissioner Brown, Plaintiff's baseless attempt nevertheless fails.

Here, Plaintiff derives his "bad faith" allegations against Commissioner Brown from N.C. Gen. Stat. § 14-234(a) and 14-118.4. [D.E. 106-2]. In relevant part, § 14-234 provides that:

> (1) No public officer or employee who is involved in making or administering a contract on behalf of a public agency may derive a direct benefit from the contract except as provided in this section, or as otherwise allowed by law.
> (2) A public officer or employee who will derive a direct benefit from a contract with the public agency he or she serves, but who is not involved in making or administering the contract, shall not attempt to influence any other person who is involved in making or administering the contract.
> (3) No public officer or employee may solicit or receive any gift, favor, reward, service, or promise of reward, including a promise of future employment, in exchange for recommending, influencing, or attempting to influence the award of a contract by the public agency he or she serves.

Next, Plaintiff cites § 14-118.4 which defines "extortion" as:

> Any person who threatens or communicates a threat or threats to another with the intention thereby wrongfully to obtain anything of value or any acquittance, advantage, or immunity[.]

Finally, Plaintiff alleges that Commissioner Brown's alleged actions violated the Gaston County Board of Commissioner's Rules of Ethics. In relevant part, Rule 43 provides that an "ethical County official should not":

(1) Engage in outside interests that are not compatible with the impartial and objective performance of his or her duties.
(2) Improperly influence or attempt to influence other officials to act in his or her own benefit.
(3) Accept anything of value from any source which is offered to influence his or her action as a public official.

Procedures for the Gaston County Board of Commissioners, R. 43; Gaston County Res. 1995-16.

In adopting § 14-234, North Carolina "made the condemnation of the transactions embraced within the terms thereof a part of the public policy of the State so as to remove from public officials the temptation to take advantage of their official positions to 'feather their own nests.'" *Lexington Insulation Co. v. Davidson County*, 243 N.C. 252, 254, 90 S.E.2d 496, 497-98 (1955). Still, "there is a presumption of honesty and integrity in those serving as adjudicator on a quasi-judicial tribunal." *In re North Wilkesboro Speedway, Inc.*, 158 N.C. App. 669, 675-76, 582 S.E.2d 39, 43 (2003). Therefore "in order to prove bias, it must be shown that the decision-maker has made some sort of commitment, due to bias, to decide the case in a particular way." *Id*.

Here, Plaintiff sets forth zero evidence of undue influence, bias, or that Commissioner Brown derived any resulting benefit, direct or indirect, from the Board of Commissioners' vote. First, Commissioner Brown was not a party to the proposed Settlement Agreement between Plaintiff and Gaston County. [D.E. 117, ¶ 22, Ex. 15]. Second, ███████████████████ ███████████████████████████████████ ████████████████. [D.E. 117, ¶ 22, Ex. 15]. In fact, ███████████████████ ██████████████████████████████████████████████████. [D.E. 117, ¶ 22, Ex. 15]. Finally, three days before the anticipated Board of Commissioners' vote, Plaintiff dismissed Commissioner Brown from this matter, with prejudice, after extensive discovery failed to uncover any evidence of wrongdoing by Commissioner Brown. [D.E. 100].

The Gaston County Board of Commissioners exists as a democratic body, and not an

authoritarian dictatorship. By its rules, "[a] motion is adopted if supported by a simple majority of the votes cast, a quorum being present, except when a larger majority is required by these rules or state law." Procedures for the Gaston County Board of Commissioners, R. 27. Therefore, *even if* Commissioner Brown remained in this action and *even if* he voted against the Settlement Agreement, his vote alone could not, and would not, have dictated the outcome ███████ ██████████████████████████████████████████████████████████

Despite Plaintiff's allegations, Commissioner Brown ███████████████████████ ████████████████████████████████████████████████████████ ███████. [D.E. 117, ¶ 9, Ex. 4]. Conversely, on May 7, 2026, Plaintiff approached Commissioner Brown ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████ [D.E. 117, ¶ 11, Ex. 4] (emphasis added). Commissioner Brown equally ████████ ███████████████████████████████████████████████ [D.E. 117, ¶ 12, Ex. 6].

Throughout this litigation, Plaintiff made bombastic, unsubstantiated accusations of intentional racial discrimination against Commissioner Brown. And despite his pleadings, Plaintiff himself eventually testified that he possessed no evidence, from any source, to support his allegations against Commissioner Brown, or to support his contention that Commissioner Brown played a role in Plaintiff's employment outcome. [D.E. 117, ¶ 6, Exs. 2, 3]. Notwithstanding a complete lack of evidence to support his allegations, now and throughout this litigation, Plaintiff continued to assert that Commissioner Brown somehow acted improperly, unethically, or in bad faith. [D.E. 117, ¶¶ 6-8]. Because Plaintiff poses frivolous, unsubstantiated, and untruthful

allegations, Commissioner Brown requests that the Court deny Plaintiff's Motion and award him reasonable attorney's fees associated with responding to this Motion.

### B. Plaintiff Fails to Provide Any Evidence That Ms. Milak Acted Unethically or in Bad Faith.

Plaintiff's "bad faith" allegations against Ms. Milak similarly fail to contain any legal or factual support, and consequently, they amount to utterly frivolous and patently unsubstantiated assertions. Here, Plaintiff's accusations against Ms. Milak rest on alleged violations of North Carolina Rules of Professional Conduct Rule 4 and 8. In relevant part, Rule 4 provides that, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." N.C. R. Prof. Cond. R. 4.4(a). And under Rule 8, "[i]t is professional misconduct for a lawyer to: state or imply an ability to influence improperly a government agency or official[.]" N.C. R. Prof. Cond. R. 8.4(e).

Plaintiff links Ms. Milak's purported bad faith, misconduct, or unethical conduct to the following written statements:



****

[D.E. 106-2, pp. 4-6]. In addition, Plaintiff relies upon the following, *unsubstantiated*, oral statements by Ms. Milak:

****

[D.E. 106-2, pp. 4-6]. Despite his allegations, Plaintiff fails to objectively or subjectively establish or provide any evidence that Ms. Milak made a threat, undermined the proposed Settlement Agreement, or, in any way, interfered with the Board of Commissioners' consideration of the proposed agreement and vote.

Here, Ms. Milak played no role in the Board of Commissioners' consideration of the proposed Settlement Agreement, or any ensuing vote. [D.E. 117, ¶ 16]. She never communicated with the Board of Commissioners regarding the proposed Settlement Agreement, she never advised the County or the Board of Commissioners about the proposal or any subsequent vote, and she never attended a Board of Commissioners meeting pertaining to the proposed Settlement Agreement. [D.E. 117, ¶ 16]. In fact, Ms. Milak ███████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████ [D.E. 117, ¶ 16].

Although Plaintiff and Plaintiff's counsel irrefutably possessed this knowledge, they nevertheless chose to file the present Motion for Sanctions based entirely on speculation and unfounded arguments. These threadbare allegations amount to pure conjecture, and Plaintiff abjectly fails to provide any evidence of improper influence or any action that intended to "embarrass, delay, or burden a third person." N.C. R. Prof. Cond. R. 4.4(a).[6] As such, this Court ought to deny Plaintiff's threat of sanctions against Ms. Milak because his frivolous allegations of

---

[6] Rule 4.4, Comment 2, provides that, "[t]hreats, bullying, harassment, insults, slurs, personal attacks, unfounded personal accusations generally serve no substantial purpose other than to embarrass, delay, or burden others and violate this rule. N.C. R. Prof. Cond. R. 4.4(a). cmt. 2. Comment 2 further provides that, "[c]onduct that serves no substantial purpose other than to intimidate, humiliate, or embarrass lawyers, litigants, witnesses, or other persons with whom a lawyer interacts while representing a client also violates" Rule 4.4. *Id.*; *see also N.C. State Bar v. Livingston*, 257 N.C. App. 121, 145, 809 S.E.2d 183, 198 (2017) (finding that a party violated Rule 4.4(a) when they "threaten[ed] to file lawsuits monthly" and the "only purpose in doing so was to coerce a settlement").

"bad faith" rely solely on unsubstantiated, unproven, and patently unsupported facts and award Ms. Milak costs, including reasonable attorney's fees associated with responding to this Motion.[7]

## <u>CONCLUSION</u>

For the foregoing reasons, Commissioner Chad Brown and Jennifer B. Milak respectfully request that the Court Deny Plaintiffs' Motion to Enforce Settlement Agreement, For Sanctions, and For an Evidentiary Hearing.

This the 10th day of July, 2026.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: _/s/ J. Matthew Little_____
J. Matthew Little
State Bar No. 20032
P.O. Box 19207
Raleigh, NC 27619-9207
Telephone: (919) 873-0166
Facsimile: (919) 873-1814
mlittle@teaguecampbell.com
***Attorney for Defendant Chad Brown and Jennifer B. Milak***

---

[7] On July 1, 2026 counsel for Commissioner Brown and Ms. Milak sent counsel for Mr. Bloom a draft Motion for Sanctions under Rule 11 thus triggering the 21-day safe harbor provision for the Motion to Enforce and For Sanctions to be withdrawn. Fed.R.Civ.P. 11(c)(2).

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the undersigned has this date served the foregoing in the above-entitled action upon all other parties to this cause through the Court's electronic filing system and as follows:

Jenny L. Sharpe
J Sharpe, PLLC
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC 28277
sharpeattorney@gmail.com
***Attorney for Plaintiff***

Julie H. Fosbinder
Fosbinder Law Office
840 Seneca Place
Charlotte, NC 28210
jhanfos2@gmail.com
***Attorney for Plaintiff***

Kathleen K. Lucchesi
Kelly A. Walker
Littler Mendelson P.C.
620 S. Tryon Street
Suite 950
Charlotte, NC 28202
kluccchesi@Littler.com
kewalker@littler.com
***Attorneys for Defendants Gaston County, NC,***
***Gaston County Board of Commissioners,***
***and Stephen Zill***

This the 10th day of July, 2026.

                                           **TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

                     BY:    */s/   J. Matthew Little*
                               J. Matthew Little

*Attorney for Defendants Chad Brown and Jennifer B. Milak*