IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-0927-DCK

| | |
|---|---|
| **REGINALD E. BLOOM, JR.,** | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| **GASTON COUNTY, NORTH CAROLINA, GASTON COUNTY BOARD OF COUNTY COMMISSIONERS, In its Official Capacity, and STEPHEN ZILL, In His Individual Capacity.** | ) |
| **Defendants.** | ) |

**<u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CHAD BROWN'S AND JENNIFER B. MILAK'S MOTION FOR SANCTIONS</u>**

Plaintiff, Reginald E. Bloom Jr., and his counsel hereby submit their Memorandum in Opposition to Defendant Brown's and attorney Jennifer B. Milak's Motion for Rule 11 Sanctions.

Contrary to Brown's and Milak's assertions, the Motion to Enforce was filed based upon admissible facts, [redacted]; (ii) the August 19, 2025 deposition testimony of Brown that as Chairman of the Gaston County Board of County Commissioners ("BOCC"), "**<u>[He]sign[s] off on legal matters</u>**" and has "**<u>the authority for that</u>**" (DE 130-4 at 34-35); (iii) the close temporal proximity

[redacted]

In this case, Bloom has not advanced a frivolous motion. *See, Hunter v. Earthgrains Co. Bakery*, 281 F.2d 144, 153 (4th Cir. 2002) ("only the lack of any legal or factual basis is sanctionable."). Each of the legal arguments contained in the Motion to Enforce is well supported by existing law, as discussed below. Brown's Motion for Sanctions, therefore, must be denied.

## I.
## STATEMENT OF FACTS

The Complaint and First Amended Complaint filed in this matter assert claims of race discrimination and retaliation under Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. §§ 1983 and 1981 on behalf of two plaintiffs, Brent Roberts, and Bloom, both of whom were Captains employed by the Gaston County Police Department. Both Bloom and Roberts were passed over for promotions to the position of Assistant Chief because of their race on three separate occasions, in favor of less qualified white candidates. A period of lengthy discovery ensued and on March 10, 2026, the parties attended a mediated settlement conference. [redacted] culminating in the resolution of the claims brought by Captain Brent Roberts on April 28th, which the BOCC executed without hesitancy.[1] The BOCC approved the Roberts' settlement agreement by a vote of 6 to 1. [DE 130-1, ¶ 23]

[redacted]

---

[1] Roberts filed a stipulation of dismissal, approved by all counsel, including Ms. Milak, against all defendants, including Chad Brown, on May 14, 2026.

[redacted]

[redacted]

[redacted]

[redacted]

Then on May 20th, [redacted]

[2] [redacted]

[redacted]

Captain Bloom remains employed by the Gaston County Police Department and is the only remaining African-American Captain on its staff.

## II.
## LEGAL ARGUMENT

Rule 11(b) states in pertinent part:

By presenting to the court a pleading, written motion, or other paper - whether by signing, filing, submitting or later advocating it - an attorney … certifies that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances

(1) It is not being presented for any improper purpose . . . .;

(2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing, existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified will likely have evidentiary support after a reasonable opportunity for further investigation or discovery;

(4) the denials of factual allegations are warranted. . . . .

Defendant Brown and his counsel correctly note that the court must apply an objective standard in determining whether Rule 11 sanctions are warranted, but "only the lack of *any* legal or factual basis is sanctionable." (emphasis added.) *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 153 (4th Cir. 2002). The Rule "does not seek to stifle the exuberant spirit of skilled advocacy or to require that a claim be proven before a complaint can be filed. . . . . And we have recognized that 'creative claims coupled with even ambiguous or inconsequential facts may merit dismissal but not punishment.'" *Id.* [citations omitted][4]

In *Hunter*, *supra*, – a case arising in the Western District of North Carolina – the Fourth Circuit reversed the district court's imposition of Rule 11 sanctions. Attorney Hunter filed two Title VII class action lawsuits against Earthgrains despite the presence of an arbitration clause contained in the collective

[4] Unlike many cases where Rule 11 sanctions are awarded, this Court has not issued any admonishments, warnings, or rulings to Bloom or to his attorneys regarding their conduct or their conduct of these proceedings or regarding the merits of his case.

bargaining agreement. At summary judgment, Hunter argued that the language of Earthgrains' CBA was not sufficient to require the plaintiffs to first arbitrate their claims and sought to align her case to those outside the Fourth Circuit. The district court granted summary judgment and later suspended Hunter from practice within the Western District for five years. Holding that the district court committed an abuse of discretion in suspending Hunter, the Fourth Circuit found that Hunter was "plainly entitled (and probably obligated)" to advocate a legal proposition that was supported by a majority of the courts which was later substantially adopted by the Supreme Court. Here, as in *Hunter*, Bloom's arguments supporting his Motion to Enforce, for Evidentiary Hearing, and for Sanctions do not amount to a frivolous filing without legal or factual support.

**A. <u>Instead of "Zero Evidence," Bloom Has Presented Ample Evidence Warranting Plaintiff's Motion to Enforce Settlement Agreement and For Evidentiary Hearing and For Sanctions as to Brown and His Counsel</u>.**

1. [redacted]

Brown's Motion for Sanctions has been filed prior to the plenary evidentiary hearing requested by Bloom in his Motion to Enforce and seemingly, without his counsel having carefully read Bloom's briefings to this Court. *See, Lokhova v. Halper,* 30 F.4th 349, 357-58 (4th Cir. 2022) (holding that district court erred in sanctioning attorney and his client under R. 11 where defense filed motion for sanctions before a full record could be developed regarding an absolute privilege defense). According to Brown and his attorney, Bloom has provided "zero evidence" [redacted]

This argument must be rejected in its entirety, [redacted]

[redacted] However, in determining whether bad faith exists under the Court's inherent authority and under Section 1927, objective facts matter. *See*, *Yoder v. Conaway Racing & Trucking LLC*, 2026 U.S. Dist. 38229 * 17 (D. Md. Feb. 25, 2026) citing, *Collins v. Dollar Tree Stores Inc.*, 2010 U.S. Dist. 144911 (E.D. Va. May 28, 2010) ("objective bad faith does not require a finding of malice or ill will; reckless indifference to the law will qualify."). [redacted] [DE 106-1 at 5-6]

[redacted] *See, N.C. RPC 8(e)* (An attorney engages in misconduct by "stating or implying an ability to influence improperly a governmental agency or official."); *Espinoza v.*

*Mex-Am Café, LLC*, 2014 U.S. Dist. LEXIS 122597 * 21-22 (noting that threats by defendants of criminal prosecution could be considered misconduct under the N.C. Rules of Professional Conduct Rule 8.4(d)); *see also* , *N.C. G.S. § 14-118.4* (defining extortionate conduct); *N.C.G.S. § 14-234(a)(3)* ("No public officer or employee may solicit or receive any gift, favor, reward, service, or promise of reward . . . in exchange for recommending, influencing, or attempting to influence the award of a contract by a public agency he or she serves."); *ABA Section of Litigation Ethical Guidelines for Settlement Negotiations*, 4.3.2 (2002). [redacted]. Bloom's Reply memoranda clearly articulated these facts and the legal authorities supporting his contentions.

That Ms. Milak did not personally attend the BOCC's May 26th meeting is irrelevant [redacted]

At the beginning of this litigation Brown issued a public statement to WCNC Charlotte stating that the lawsuit was "frivolous" and that "the plaintiff has needlessly includes[sic] my name and wrongfully attacks my character for the sole purpose of sensationalizing plaintiff's case. His false and defamatory statements about me are clearly intended to derail my campaign for Secretary of State. I WILL fight these false accusations like there is no tomorrow." [DE 106-1 at 31]

Third, [redacted] Chad Brown **is** an [redacted] within Gaston County. He is a prominent, local politician whose vote ensured that the 30-foot Confederate statue would remain in its current location in front of the Gaston County Courthouse. Brown testified in his deposition that he was

asked by an outside third party to use his influence to stifle the passage of the City of Gastonia's 5-year DEI plan even though he does not sit on that city's council. [DE 130-4 at 14-16, 19] Most significantly, in his August 19, 2025 deposition, he described what his duties as Chairman of the BOCC entails, stating that he "specifically run[s] the [BOCC] meetings" and he "**sign[s] off on legal matters . . . my signature would be on the documents from the county. I have the authority for that**." [DE 130-4 at 7]

[redacted] This was not the case, as the only publicly available record of that meeting shows that the BOCC failed to honor its obligation to fulfill the alleged condition precedent and that no vote was taken. [DE 130-1 at 5-11] [redacted] Thus, the pretextual nature of both Brown's and the Defendants' competing explanations is yet another important factor supporting an inference of bad faith on the part of [redacted]

2. **<u>Brown's and the Defendants' Misplaced Reliance Upon Legislative Immunity Lends Further Support for Bloom's Request for an Evidentiary Hearing</u>.**

Neither counsel for Brown nor the other Defendants have presented any affidavit or declaration from any of the 5 (of 7) council members or anyone else who attended the closed session. Instead, they have offered only hearsay regarding what occurred in that meeting. [redacted] only repeating the statements of others, while offering them for the truth of the matter asserted. Defendants' and Brown's explanations do not fall within any recognized hearsay exceptions. *See, Fed. R. Evid. 801(c); Giles v. AMTRAK*, 2021 U.S. Dist. LEXIS 131615 *13-14 (W.D.N.C. 2021) (Affidavits containing inadmissible hearsay cannot be considered on motion for summary judgment).

[redacted] in connection with her client's May 26th Closed Session. *Hawkins v. Stables*, 148 F.3d 379, 384, nt. 4 ("As a general rule implied waiver occurs when the party claiming the privilege has made any disclosure of a confidential communication to any individual who is not embraced by the privilege.")

Under North Carolina law and under the BOCC's procedural rules, a general account or minutes of each closed session which is "sufficiently detailed to provide a person not in attendance with a reasonable understanding of what transpired" is required. "Such accounts may be a written narrative, or video, or audio recordings." *See, N.C. Gen. Stat. § 143-318.10(e)* ("Every public body shall keep full and accurate minutes of all official meetings, including any closed sessions held pursuant to G.S. §143-318.11. Such minutes may be in written form or, at the option of the public body, may be in the form of sound or video and sound recordings. When a public body meets in closed session, it shall keep a general account of the closed session so that a person not in attendance would have a reasonable understanding of what transpired. Such accounts may be a written narrative, or video or audio recordings. Such minutes and accounts shall be public records

within the meaning of the Public Records Law, G.S. § 132-1 *et seq*.; provided, however, that minutes or an account of a closed session conducted in compliance with G.S. §143-318.11 may be withheld from public inspection so long as public inspection would frustrate the purpose of a closed session."). *See also*, Rule 6, *Procedures for the Gaston County Board of County Commissioners*. Even Brown testified in his deposition that closed sessions are recorded.

> Q: Are your closed sessions recorded?
> A: Yes ma'am
> . . . . . .
>
> Q: Have you ever reviewed the closed session minutes?
> A: We review them every time for the record to sign off on but they're not – they're given in a hard copy to look at.
> Q: I'm sorry? They're given a hard copy to look at? Who's they?
> A: The clerk will give us a hard copy to make sure if there's any notations or anything that need to be added or taken out or if something has been looked at. But usually, it's just a hard copy given at that time at the clerk's discretion to look at to sign off that we saw them.

[DE 130-4 at 11]

[redacted] basing their refusal on alleged legislative immunity and the attorney-client privilege. [DE 130-1 at 13-[redacted]

Legislative immunity does not apply where, as here, the BOCC's purpose for the meeting impacts a specific individual. In *EEOC v. Wash. Suburban Sanitary Comm'n,* 631 F. 3d 174 (4th Cir. 2011) – a case heavily relied upon by both Brown and the Defendants [ DE 120 at p. 18; DE 118 at 13] – the Fourth Circuit specifically declined to expand legislative immunity to legislators' employment and personnel decisions. *Id.*, at 184; *see, Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995); *see also, Free Spirit Aviation, Inc.,* 191 N.C. App.

581, 585 (2008) (holding that public official immunity is inapplicable where Airport Authority threatened loss of a contract if plaintiff failed to provide a discount on fuel).

Similarly, the attorney-client exception to North Carolina's Open Meeting Law is to be construed and applied narrowly. In *Multimedia Publ'g of N.C. v. Henderson County*, 145 N.C. App. 365 (2001) the N.C. Court of Appeals held that the burden is on the governing body to demonstrate that the attorney-client exception applies, noting that "'public bodies [cannot simply] delegate responsibilities to attorneys and then cloak negotiations and [closed] session in secrecy by having attorneys present.'" *Id.*, at 371 (quoting *Fisher v. Maricopa County Stadium Dist.*, 912 P.2d 1345, 1353 (Ariz. Ct. App. 1995)). Brown's and the Defendants' reliance on hearsay is insufficient to meet this burden.

[redacted] constitutes a waiver of any privilege assigned to the BOCC's May 26th Closed Session. *See, Hawkins v. Stables*, 148 F.3d at 384 nt. 4. In *Multimedia Publ'g of N.C.* , *infra*, for example the Court of Appeals held that the Superior Court correctly found that the Board violated the Public Records Law based upon its public explanation regarding suggestions made by its attorney in closed session. Citing N.C. Gen. Stat. § 143-318.10(e), the Court of Appeals held that the Board then "had a duty to disclose the minutes of the closed session to the public since it ' would [no longer] frustrate the purpose of the closed session. . . .' Because the Board failed to disclose the closed meeting's minutes, we hold that the Board did violate the Public Records Act." *Id.*, at 374. *See also, In re Grand Jury Proceedings (John Doe)*, 727 F.2d 1352, 1355 (4th Cir. 1984) (The party asserting the privilege must demonstrate that the attorney-client communication was intended to be confidential and its primary purpose was to obtain legal advice); *U.S. v. Cohn*, 303 F. Supp. 2d 672, 683 (D. Md. 2003) ("Communications are not privileged merely because one of the parties is an attorney or because an attorney was present when the communications were made."); *Neuder v. Batelle Pac. Northwest Nat'l Lab*, 194 F.R.D. 289 (D.D.C. Mar. 9, 2000) (Privilege held to be inapplicable, where, in wrongful termination case, court

found that committee's decision to fire the plaintiff was primarily a personnel decision and where legal advice at the meeting was only incidental).

[redacted] As noted in *Multimedia Publ'g of N.C.*, the burden of showing privilege remains on the Defendants and Brown. Neither Brown nor the Defendants have satisfied this burden here and their refusal to provide the documents requested by Bloom's counsel should not stand.

Without further information regarding what occurred in the BOCC's closed session when it is so readily available, Bloom stands behind his decision to pursue an evidentiary hearing and enforcement of the settlement agreement given the totality of the factual circumstances of this case. Thus, while Brown and Ms. Milak contend that Bloom has presented "zero" evidence [redacted] sufficient to support his Motion to Enforce. Indeed, [redacted]. In essence, it is [redacted]

**B. <u>Bloom's Motion to Enforce is Supported by Applicable Legal Authority</u>.**

Brown and his attorney argue that Bloom's Motion to Enforce "represents an unapologetically frivolous filing made for an improper purpose." [DE 136 at 10] This assertion is simply incorrect.

Bloom has never disputed the existence of [redacted] Bloom's argument is based on three legal claims. First, Bloom asserts that Defendants and Brown [redacted] Second, he asserts, [redacted]

[redacted]. Third, Bloom contends that [redacted]

[redacted] The publicly available record of the May 26th BOCC confirms this fact. Thus, [redacted] *See, Cox v. SNAP, Inc.,* 859 F.3d 304, 308-09(4th Cir. 2017) ("there is no doubt that SNAP had an obligation to bring about the condition it now tries to hide behind."). One hundred years ago, in *George A. Fuller Co. v. Brown*, the Fourth Circuit stated that "[i]t is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance . . . of a condition upon which his own liability depends, he cannot take advantage of the failure," 15 F.2d 672, 678 (4th Cir. 1926) (quoting *2 Williston on Contracts § 677*).[5] *See also, Moore Bros. Co. v. Brown & Root, Inc., 207 F.3d 717, 725 (4th Cir. 2000)* ( "The prevention doctrine is a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused."). The *Moore Bros.* court found that under Virginia law where the general contractor's wrongful actions "contributed materially to the non-occurrence of the condition precedent" the contractor could not rely on the pay-when-paid defense to bar plaintiff's recovery.

---

[5] Here, Defendants' failure [redacted]

The Restatement (Second) of Contracts §205 provides that "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Comment d. of § 205 states:

> *Good faith performance*. Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: *bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty*. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence, and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

[redacted] As noted in his briefing to the Court, the covenant of good faith and fair-dealing also extends to the fulfillment of conditions precedent. [DE 130 at 4] *See, Cox v. SNAP*, Inc., 859 F.3d 304, 308-309 (4th Cir. 2017); *NLRB v. Local 554 Graphic Commc'ns Int'l Union*, 991 F.2d 1302, 1307-08 (7th Cir. 1993). On this point, the Restatement of Contracts (Second), § 245 states that "Where a party's breach by non-performance contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused." Comment a. of § 245 is particularly instructive as it provides

> Where a duty of one party is subject to the occurrence of a condition, the additional duty of good faith and fair dealing imposed on him under § 205 may require some cooperation on his part either by refraining from conduct that will prevent or hinder the occurrence of that condition or by taking affirmative steps to cause its occurrence. . . . Under this Section it has the further effect of excusing the non-occurrence of the condition itself, so that performance of the duty that was originally subject to this occurrence can become due in spite of the non-occurrence.

The presence of evidence that [redacted]

[redacted]

[redacted] is, in and of itself, enough to excuse the condition precedent. But when coupled with [redacted] Brown's comments at the outset of this case, and the close temporal proximity between [redacted] he evidence is sufficient to put "two and two together," that [redacted] *See, Paul Morrell, Inc., v. Kellogg Brown & Root Servs.*, 453 Fed. Appx. 322, (4th Cir. 2011) (applying Texas law and holding that prevention doctrine bars a party from relying on a condition precedent where that party's own wrongful conduct has prevented the condition from being met.); *Board of Regents v. Doe*, 278 Ga. App. 878, 882 (2006) (holding that parties formed a contract when they exchanged mutually interdependent promises that contained all of the essential terms of a contract and that provision requiring Board approval created an implied duty for both parties to exercise good faith in securing such approval.). Furthermore, by choosing not to provide the Court with any admissible evidence that the condition precedent was justified, neither Brown nor the Defendants have met their burden of proof to show that its failure of performance did not contribute materially to its non-occurrence. *NLRB v. Local 554 Graphic Communications Int'l Union*, 991 F.2d 1302, 1308 (7th Cir. 1993) citing *Restat. 2nd Contracts § 245 comment b.* ("The burden of showing this is properly thrown on the party in breach.").

Contrary to Brown's current motion, this is not a case in which Bloom's counsel has attempted to "create something from nothing." [DE 136 at 14] Nor is this a case in which the BOCC was divorced from

the litigation of the Roberts and Bloom claim. Here the BOCC is a named party defendant. [redacted] The N.C. Rules of Professional Conduct would require her to do so. *See, N.C. RPC 1.2(a) and 1.4(a)(1).* [redacted] *See, N.C. Gen. Stat. 143-318.11(a)(3)* (public bodies can give instructions to their attorneys to settle litigation so long as the settlement terms are later entered into the minutes in open session.); *Moore v. Beaufort Cnty.,* 936 F.2d 159 163 (4th Cir. 1991) ("a meeting which simply authorized negotiation would have been pointless."). In this case, because the Defendants have refused to produce the general account, minutes, or recordings of the BOCC's April 28th and May 26th Closed Sessions, [redacted] *See, Global Impact Ministries v. Mecklenburg Cnty.*, 2024 U.S. Dist. LEXIS 168626 *2 (W.D.N.C. Sept. 18, 2024) ("One who challenges the actions of an attorney as being unauthorized has the burden of rebutting this

presumption and proving the lack of authority to the satisfaction of the court."); *Brown v. Amazon.com Servc., LLC*, 2026 U.S. Dist. LEXIS 32321*2 (W.D.N.C. Feb. 18 2026) ("'Apparent authority results from a principal's manifestation of an agent's authority to a third party regardless of the actual understanding between the principal and his agent'") *[citations omitted]*.

Most significantly, [redacted] Assuming that the BOCC [redacted] or a pre-audit certification under N.C.G.S. § 159-28(a1). *See, Town of Forest City v. Florence Redevelopment Partners, LLC*, 292 N.C. App. 86, 93-94 (2024); *Myers v. Town of Plymouth*, 135 N.C. App. 707 (1999).

[redacted]] This accusation is unfounded. [redacted]

[redacted] N.C. Gen. Stat. § 159-28(a2) is explicit: "Failure to Preaudit. – An obligation incurred in violation of subsection (a) or (a1) of this section is invalid and may not be enforced. . . ." But by May 20th – [redacted]

Finally, Brown's and Ms. Milak's Rule 11 Motion contends that Bloom's counsel "should have known better" than to attempt to enforce [redacted] While true that Bloom's counsel have negotiated other settlements with municipal and county governments, including Gaston County, over their respective careers, [redacted]

**III.**
**<u>CONCLUSION</u>**

The Motion for Rule 11 Sanctions should be denied in its entirety. Bloom's counsel did not file their Motion to Enforce and for Sanctions lightly, nor for any malicious reason. Bloom did so because of [redacted]

The evidence which has developed since the Motion to Enforce was filed - [redacted] along with Defendants' refusal to provide any information of what took place in the Closed

Session, adds to the conclusion that the Bloom Agreement should be enforced, and that bad faith on the part of [redacted]

Respectfully submitted this the 7th day of August 2026.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe
Attorney for Plaintiff
N.C. State Bar No. 13698
**J SHARPE, PLLC**
15720 Brixham Hill Avenue Suite 300
Charlotte, NC 28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

*/s/ Julie H. Fosbinder*
Julie H. Fosbinder
Attorney for Plaintiff
N.C. State Bar No. 19400
**FOSBINDER LAW OFFICE**
840 Seneca Place
Charlotte, North Carolina 28210
Telephone: (704) 560-8600
Email: Jhanfos2@gmail.com

## NO USE OF ARTIFICIAL INTELLIGENCE CERTIFICATION

No artificial intelligence was employed in connection with the research for preparation of this document with the exception of such artificial intelligence embedded in the standard on-line legal research sources LEXIS, Westlaw, FastCase, and Bloomberg.

Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered and the citation to authority provided.

## PAGE COUNT CERTIFICATION

Pursuant to the Local Rules of the Western District the undersigned counsel hereby certifies that the page count for Plaintiff's Memorandum, is compliant with the Local rules for page limits in briefs.

Submitted respectfully this the 7th day of August 2026.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has filed a copy of the foregoing Plaintiff's Memorandum in Opposition to Chad Brown's and Jennifer B. Milak's Motion for Sanctions using the ECF/CMS system and has emailed a copy of the same to the following individuals:

Kathleen K. Lucchesi
**LITTLER MENDELSON, P.C.**
620 S. College Street, Ste. 905
Charlotte, North Carolina 28202
Email: KLucchesi@littler.com
*Attorney for Defendants Gaston County, the Gaston County Board of County Commissioners, & Stephen Zill*

&

J. Matthew Little
Jennifer B. Milak
**TEAGUE, CAMPBELL, DENNIS & GORHAM, LLP**
Post Office Box 19207
Raleigh, North Carolina 27619-9207
Email: mlittle@teaguecampbell.com.
Email: jmilak@teaguecampbell.com
*Attorneys for Chad Brown*

This the 7th day of August, 2026.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe
Counsel for Plaintiff