IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No. 3:24-cv-0927

| | | |
|---|---|---|
| **REGINALD E. BLOOM, JR.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**GASTON COUNTY, NORTH CAROLINA; GASTON COUNTY BOARD OF COUNTY COMMISSIONERS, in its official capacity; and STEPHEN ZILL, In His Individual Capacity.**<br><br>**Defendants.** | ) | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

The Plaintiff, Reginald E. Bloom, Jr., avers and says the following:

## INTRODUCTION & BACKGROUND

In 1972, Detective Walter McGill brought a civil lawsuit in the U.S. District Court for the Western District of North Carolina against the Gaston County Police Department, alleging he was denied promotional opportunities because of his race (black). Subsequently, the District Court entered judgment in favor of Officer McGill, awarding McGill back pay and promoting him to the rank of Sergeant. Additionally, the Court recognized that systemic racism existed within the Gaston County Police Department and ordered measures to be implemented to combat racial inequalities then existing within the Department. Those measures resulted in positive changes, such as establishing written rules for promotions, and, as a result of these measures, more black officers

were hired and promoted into leadership positions, including, the eventual promotion of James Buie, to the rank of Chief of Police in 2011 - the first African-American officer to hold such a position in the history of the Gaston County Police Department.

However, as discussed in this action, beginning in or about 2015, the racism that plagued the Gaston County Police Department in the '70's has made an ugly resurgence. The Defendants named in this case have devised new methods of keeping blacks out of leadership positions within the Gaston County Police Department. Those methods include, but are not limited to, changes in the practices and procedures used for promotions to leadership positions, creation of new promotional criteria designed to eliminate individuals that oppose the County's racially discriminatory practices, „ failing to require testing for the position of Assistant Chief, failing to post leadership positions, and failing to adhere to stated selection criteria. For example, as discussed in further detail below, during 2023, discriminatory measures were taken by Defendant Gaston County and the Board of County Commissioners to disregard the County's publicly stated selection criteria, as well as State law, to ensure that an internal white male applicant, then Captain Stephen Zill, was promoted to the rank of Chief of Police – despite the fact that he did not meet the stated qualifications for the position and despite the fact that he had never served as an Assistant Chief of Police.

More disturbingly, Defendants Gaston County and its Board of County Commissioners have expressly encouraged and permitted the discriminatory behaviors described in this Second Amended Complaint. On August 25, 2020, in the wake of public outcry, Defendants Gaston County and Board of County Commissioners resolved that its Confederate Heroes Monument – an acknowledged symbol of white supremacy – remain standing in front of the Gaston County Courthouse. That this artifact of racism remains standing is emblematic of the expressed racial bias of Defendant Gaston County's highest-ranking policymakers and officials. In connection with this

decision, Chad Brown, Chairman of the Board of County Commissioners along with the then County Attorney, introduced the resolution and was one of four County Commissioners voting to maintain the Confederate Heroes Monument in its current location. Most recently, in connection with his unsuccessful campaign for N.C. Secretary of State, Brown placed a post on Facebook (attached hereto as **Exhibit 1**) - which he has now taken down – stating that he wanted to "start a white dudes" [sic] for Brown…." whose membership in his "club" includes a number of white officers within the Gaston County Police Department including, Assistant Chief Anderson Holder – one of the Assistant Chiefs who, in 2023 was promoted to that rank over more qualified African-American officers, including Plaintiff Bloom, and who became Captain Bloom's immediate supervisor.

Further, since 2023, Defendant Chief of Police Stephen Zill has promoted a "good old boys" culture and has aligned himself with Brown's "white dudes" mentality by discriminatorily instituting unwritten selection criteria for the position of Assistant Chief of Police, by ignoring state mandated promotion procedures, by failing to post open positions and to articulate selection criteria for the selection of qualified candidates for leadership positions and, in 2024 following the filing of charges of discrimination with the U.S. Equal Employment Opportunity Commission, implementing new promotional policies intended to exclude Captain Bloom and another African -American Captain, Brent Roberts. Instead, Defendant Zill has stated in the presence of Captain Bloom, and others, that only members of the almost all-white Emergency Response Team or "ERT" make the "best leaders," thus, indicating that only white officers will be considered by him for promotional opportunities for leadership roles. Furthermore, Defendant Zill has fostered and encouraged a retaliatory working environment for anyone, including the Plaintiff, Captain Bloom and others, who dare to challenge racial inequities and discriminatory policies existing within the Gaston County Police Department.

## II.
## NATURE OF ACTION

This civil action arises from violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (hereinafter referred to as "Title VII"), 42 U.S.C. § 1981, and 42 U.S.C. § 1983 ("Section 1983") and state law. The Plaintiff, Reginald E. Bloom - who currently serve as a Captain of the Gaston County Police Department - alleges that the Defendants have denied him promotional opportunities because of his race (black), and have retaliated against him for his opposition to the discriminatory practices of the Gaston County Police Department (the "GCPD").

In addition, Captain Bloom contends that the Defendant Gaston County and Defendant Gaston County Board of Commissioners currently maintain and have endorsed policies and practices intended to exclude him and other minorities from promotional opportunities because of race, and to effectively establish a glass ceiling, barring qualified black and minority candidates from obtaining the highest leadership ranks within the Gaston County Police Department. In sum, the Defendants have moved the goal post with the intent and purpose to deny Captain Bloom, and other minorities, promotional opportunities because of race and in retaliation for their protected activity.

In this action, Captain Bloom seek appropriate equitable and monetary relief from the Defendants in the form of present and future lost wages, compensatory damages for emotional distress, punitive damages against the individual Defendant, attorney's fees and costs, and such other relief to which he is entitled as a consequence of the Defendants' discriminatory and retaliatory actions.

## III.
## JURISDICTIONAL STATEMENT & PARTIES

1. The Plaintiff, Reginald E. Bloom, Jr., is a black male citizen and resident of Gaston County, North Carolina. At all times relevant to this Complaint, Captain Bloom was, and continues to be an employee of the Defendant, Gaston County, North Carolina. He currently serves Defendant Gaston County as a Captain of the Gaston County Police Department.

2. The Defendant, Gaston County, North Carolina (hereinafter referred to as "Defendant County"), was, and is a county government organized and existing under the laws of the State of North Carolina. At all times relevant to this Second Amended Complaint, Defendant Gaston County adopted and took discriminatory action, in conjunction with, and pursuant to the direction of its final policymakers, the Gaston County Board of County Commissioners and Defendant Stephen Zill.

3. At all times relevant herein, the Defendant County is and continues to be an "employer" under federal and state law in that it is engaged in commerce and/or an activity or industry affecting commerce, and employs fifteen (15) or more employees for each working day during each of twenty (20) or more calendar workweeks in this the current and/or preceding calendar year. Currently, the Gaston County Police Department employs over 150 officers and over 100 civilian employees.

4 At all times relevant herein, Defendant County has waived its governmental immunity by the purchase of liability insurance coverage and/or through its participation in a governmental risk pool. Based upon information and belief, such liability insurance and/or participation in a governmental risk pool extends liability insurance coverage to the acts and omissions of its policymakers and its officials.

5. Defendant Gaston County Board of County Commissioners is the governing body of Defendant Gaston County. All members of the current Defendant Board of County Commissioners are white. No blacks have served on the Board since 2008. Under North Carolina law the Board is charged with establishing Gaston County Police Department employment requirements beyond the minimum requirements established by the North Carolina Criminal Justice Education and Training Standards Commission, and requirements for the conduct and service of Gaston County Police Department employees. *N.C. S. L. 1983-904, Sec. 4.* The Board of County Commissioners is responsible for establishing "policies and procedures" for promotions within the Gaston County Police Department. *Id., Sec. 8.* Further, pursuant to State Law, "the rules, regulations, and procedure under which the Gaston County Police Department operates shall be subject to the approval of the Gaston County Board of Commissioners." *Id., at Section 7.*

6. According to Defendant Gaston County's website, "The Board is charged with providing policy direction for the administration of county government…." The former and current County Managers of Defendant Gaston County serve at the will of Defendant Board of County Commissioners. Further, upon the recommendation of the County Manager, the Defendant Board appoints the Chief of Police of the Gaston County Police Department, has a role in the selection process for Chief of Police, and has the sole authority to remove the Police Chief. Compensation paid to all employees of the Gaston County Police Department, is determined by the Board of County Commissioners. *Id.*, Sec. 2-3.

7. Chad Brown (white) is the Chairman of the Defendant County's Board of County Commissioners and has held the role of Chairman since December, 2022, and has served as a member and a past Chairman of the Board of County Commissioners since at least 2016. As Chairman, Brown holds significant influence and authority over the affairs of Defendant County and Defendant Board of County Commissioners. In that regard, Brown wields significant control

over Defendant County's decisions regarding its operational policies and procedures. Further, upon information and belief, Brown exercises and continues to exercise substantial influence and control over Defendant County's former and current County Managers, and its current Chief of Police, Defendant Stephen Zill. The Defendant Board of County Commissioners, is a final policy making authority for the County, as discussed below.

8. Defendant Stephen Zill is the current Chief of Police of the Gaston County Police Department. Under Defendant County's policies, the Chief of Police is responsible for, among other things, administering the Gaston County Police Department's role in the promotional process and for establishing criteria for promotion consistent with Defendant County's Personnel Policies (where not inconsistent with N.C.S.L. 1983-904) and consistent with state and federal law. According to state law, "All promotions within the Gaston County Police Department shall be made by the Chief of Police, _*pursuant to policies and procedures adopted by the Board of Commissioners*_; provided, that _*promotions to any position other than that of Chief of Police shall be made by the Chief of Police after a competitive examination is administered to eligible officers*_." *Id.*, Sec. 8.

9. This Court has jurisdiction over the parties and the subject matter of this Complaint. Venue in the U.S. District Court for the Western District of North Carolina is proper.

10. All procedural prerequisites to the institution of this action have been fulfilled.

## IV.
## STATEMENT OF FACTS

### A. Captain Bloom's Employment with Defendant Gaston County.

11. Captain Bloom is a 1997 graduate of Woodberry Forest School, located in Orange, Virginia. Following his graduation from high school, Captain Bloom obtained a B.A. degree in Political Science from Furman University in 2001. Defendant County hired Captain Bloom in 2004 as a community police (Patrol) officer with the Gaston County Police Department. Like Captain Roberts, Captain Bloom earned his Advanced Law Enforcement Certification from the State of

North Carolina and has held various positions within the Police Department, including emergency response team negotiator, lead criminal investigation detective, field training officer, Educational Service Unit Sergeant, Criminal Investigation Unit Sergeant, and Civil Emergency Unit Commander. Notably, in 2017, Captain Bloom was promoted from the rank of patrol officer to the rank of Sergeant. After holding the rank of Sergeant for a period of 6 years, Defendant County promoted him to the rank of Captain on April 29, 2023.

12. Throughout his more than 21 years of dedicated service to Defendant County's Police Department, Captain Bloom has been recognized for his outstanding performance. For example, the Gaston County Police Department recognized Captain Bloom for civic engagement leadership during 2019-2020 and awarded him the Chief's Commendation during 2010. In addition, he was recognized for his outstanding service with a unit during May, 2009, was awarded Problem Solver of the Year in 2008, and recognized as Sworn Employee of the Month during September, 2008 and during April, 2007.

13. Since beginning his employment with Defendant County, Captain Bloom has progressed more slowly through the ranks than some of his white peers, despite the fact that he achieved high ratings on his annual job performance evaluations.

14. Further, since at least 2022, Captain Bloom has been warned by a white peer that he should "distance himself" from Captain Brent Roberts because of Roberts' advocacy for racial equality within the Police Department. Bloom's association with Roberts was being questioned by his fellow officers, who said ""They're just trying to see if you are like Brent or anything like that." One white peer testified that he had to repeatedly defend Bloom in response to comments by other white peers about how Bloom was "sounding more and more like Brent" and it was a "turnoff" to them, referring to Roberts' repeated complaints about racism within the GCPD. Captain Bloom regarded these comments as a threat to his professional career within the Gaston County Police Department

and as comments intended to chill his desire to complain about racial inequality and bias within the Gaston County Police Department.

15. Pursuant to S.L. 1983-904, Sec. 8, "All promotions within the Gaston County Police Department shall be made by the Chief of Police pursuant to policies and procedures adopted by the Board of Commissioners; provided, that promotions to any position other than Chief of Police shall be made by the Chief of Police *after a competitive examination is administered to eligible officers*." Unlike all other positions within the Gaston County Police Department and in contravention of State law and Defendant Gaston County's general personnel policies regarding the announcement of vacant positions - which states, in relevant part, "*Department Directors are required to ensure all employees have access to both internal and public job announcements and opportunities to apply*" - Defendant Gaston County's Police Department has never maintained written formal policies prior to July, 2024, which defined the process or criteria to be used in connection with its promotion of officers to the rank of Assistant Chief, nor, has its Police Department defined who is eligible to be promoted to the rank of Assistant Chief. Instead, prior to July, 2024 and prior to the filing of charges of discrimination with the U.S. Equal Employment Opportunity Commission, Defendant County's Police Department maintained a practice or custom by which the Chief of Police personally selects officers for the position of Assistant Chief without the "administration of a competitive examination" and without posting vacancies within the rank of Assistant Chief.

16. All other promotions within the Defendant County's Police Department – from Sergeant, and Captain - however, are subject to a written policy that defines and describes who is eligible for promotion and the process for promotion, including the submission of applications and/or letters of interest, and the administration of a competitive examination.

17. Prior to Defendant Zill's promotion to the position as Defendant County's Chief of Police, Gaston County's Chiefs of Police typically selected candidates who had held the rank of Captain for

a period of two or more years and this eligibility practice was well-known throughout the Department. Further, during 2015, an internal email was published indicating that any persons interested in promotion to the rank of Assistant Chief had to respond to questions from the Chief of Police,

18. Subsequently, during 2020, when a new Assistant Chief position became available, then Chief of Police, Joseph Ramey (white), did not announce the position vacancy at all, did not take applications for the position, and simply hand-selected a white Captain for the position. Thus, Chief Ramey abandoned the previous application and interview process described in the 2015 internal email, without written notification and without placing any new eligibility requirements in writing. As a result, Defendant County's only two black Captains – Captain Roberts and Captain Eric Johnson, who had had at least two or more years of experience as Captains at that time, were not considered and were passed over for promotion.

B. **Captain Roberts Had Been a Vocal Advocate Throughout his Employment for Equal Opportunity for Black and Minority Officers**.

19. Throughout his employment with Defendant County, Captain Roberts advocated for equal opportunity for black and minority officers and otherwise engaged in protected activity under the federal anti-discrimination laws. For instance, on August 3, 2016, Captain Roberts, while serving as a Sergeant, filed an internal complaint of discrimination alleging that the Department – and in particular, then Chief of Police, Joseph Ramey – discriminated against black Sergeants and Captains with regard to promotional pay increases, and that the County maintained a practice and policy of treating black officers, including himself, unequally than similarly situated white officers. He also complained that black and minority officers with qualifications superior to those of white male officers were passed over for promotional opportunities. Although Defendant Gaston County did not sustain Captain Roberts 2016 complaint, it did make some changes, largely to pacify the complainants, including the promotion of Reggie Bloom to the position of field

training officer.

20. During July, 2019, Captain Roberts, and most minority supervisors, met with then Chief Ramey to discuss issues affecting minority supervisors, including a culture within the Department which created a hostile working environment for black and minority supervisors.

This meeting concerned an internal complaint filed by Captain Eric Johnson (black) and included then Sergeant, Plaintiff Reggie Bloom, and Sergeant Katherine Williamson (white female).

21. Similarly, on April 11, 2022, Captain Roberts filed another internal complaint with then Chief Ramey and with the Defendant County's Human Resources Director, Amia Massey, alleging that minorities within the Department were being excluded and that minorities within the Department felt subjected to a racially hostile working environment. In addition, Captain Roberts complained that a former Assistant Chief of Police (white) made disparaging comments about him to other current white officers of the Police Department, including the remarks that "Brent is dead to me" and "Brent doesn't exist." Captain Roberts viewed these comments as a threat to his personal safety at that time, and in his internal complaint, he questioned whether other disparaging comments had been made about him and more specifically, whether racial slurs had been used during the officers' conversation.

22. The County largely ignored Captain Roberts' 2022 internal complaint, although its investigation substantiated that the comment, "Brent is dead to me," was made. Following Defendant County's investigation of his complaint, however, Captain Roberts received a warning letter for alleged insubordination on or about December 20, 2022. Captain Roberts denies that the written warning was justified under the circumstances, and alleges that the warning letter was an act of retaliation on the part of then Chief of Police, Joseph Ramey, for Captain Roberts' protected activity.

C. **<u>Gaston County's Policies for the Selection of a New Chief of Police in 2022 Were Intended to and Did Exclude Qualified Minorities</u>.**

23. On or about September 27, 2022, then Chief of Police, Joseph Ramey, announced that he would be stepping down from his position as Chief of Police once a replacement could be hired, in order to transition to a newly-created school safety role within Defendant County.

24. On November 4, 2022, Defendant County formally posted the Chief of Police position and began taking applications through December 5, 2022. The announcement of the job vacancy stated that the salary range for the position of Chief of Police was $150,000.00 - $180,000.00 annually. Defendant County represented that it was conducting a nationwide search to fill the position. According to Defendant County's job announcement for the Chief of Police position, the County minimally required that the successful candidate would possess **"<u>10 years of progressive law enforcement experience, *including 5 years of senior supervisory/management experience at a command staff level"* and a BA/BS degree (Master's degree strongly preferred....)</u>"** A "command staff level position" within the County's Police Department means an administrative role at the level of Captain or above.

25. Notwithstanding the County's expressed job requirements, North Carolina S. L.1983-904, Section 3, states, in pertinent part, that

> The process used by the County Manager to recommend the appointment to the Office of Chief of Police shall be one ...that provides equal opportunity for employment, that establishes a selection and appointment process based on merit and a reasonable evaluation of each candidates' qualifications, which may minimally include, ... (1) Bachelor's Degree; (2) A minimum of ***<u>four years'</u>*** police administrative experience; (3) Above average physical condition and excellent state of health; ....

26. The County's 5-year requirement exceeded the requirements of S.L. 1983-904 and this heightened criteria was intended to screen out the two qualified internal black Captains. At the time of the County's job posting, Captain Roberts was 1 of 2 black Captains employed by the County. The other Captain, Captain Eric Johnson, at the time the Chief of Police position was posted, had

announced his plan to retire from the Police Department in May, 2023. Captain Roberts, however, possessed 4.875 years of senior/management experience at a command staff level and was literally weeks away from meeting the 5-year County requirement.

27. At the time of the posting of the job announcement for the position of Chief of Police, Commissioner Chad Brown actively encouraged at least 2 white Captains, Billy Downey, Reid Rollins, and upon information and belief actively encouraged a third, Stephen Zill to submit their applications for the role. Rollins and Zill did not even meet the County's minimum or preferred qualifications for the Chief of Police position. With regard to Captain Downey, Brown and Downey exchanged text messages regarding a vacancy in the Chief of Police Position. Brown told him in early 2022 that Chief Ramey would be gone by the end of that year and asked him whether he wanted to be the next Chief of Police. When Captain Downey opined that he was not as qualified as one of the then Assistant Chiefs, a female, Brown advised Downey it did not matter and that as long as he had anything to do with it, the female Assistant Chief would never become Chief of Police.

28. Unlike his white counterparts, neither Brown nor any other County official, encouraged Captain Roberts or Captain Johnson to apply for the position of Chief of Police. Had Captain Roberts received the same encouragement, he would have applied for the position of Chief of Police.

29. By on or about January 10, 2023, Defendant County narrowed down the original pool of job applicants to 6 individuals – 1 of whom was an internal, fully qualified female candidate, and 2 external, fully qualified black candidates. Downey, Rollins and Zill were not a part of the six qualified candidates.

30. Despite the fact that they had been disqualified to move forward in the interview process, on or about January 14, 2023, Defendant Gaston County abandoned its publicly stated application process and notified the 3 white male internal applicants, Captains Downey, Rollins, and Stephen

Zill, that they would be folded back into the selection process and would be included in the final round of interviews for the Chief of Police position. While Captain Billy Downey is believed to have met the 5-year requirement of command staff level experience, Captains Reid Rollins and Defendant Stephen Zill did not.

31. On or about February 10, 2023 Defendant County and Defendant Board of County Commissioners approved the selection of then Captain, Defendant Stephen Zill for promotion to the position of Chief of Police of the Gaston County Police Department. In connection with their decision to select Defendant Zill, Defendants Gaston County and Board of Commissioners overlooked the superior qualification of the two black external candidates, both of whom had served as Chiefs of Police, and the only female internal candidate, who had served as the County's Assistant Chief of Police since 2018. It also abandoned its publicly stated job requirements for the position.

32. On or about March 6, 2023, Defendants County and Board of Commissioners formally installed Defendant Stephen Zill as its new Chief of Police, despite the fact that he did not possess 5, or even 4, years of command level experience, and did not possess 10 years of progressive law enforcement experience as he had only been promoted to the rank of Sergeant in 2016. At the time of his application, Defendant Zill had not taken any executive leadership training as required by his previous supervisors. Further, Defendant Zill did not possess a Masters' Degree and did not meet the preferred qualifications stated by Defendant County in its original job posting. This fact was confirmed by a communication authored by Defendant County's HR Director, which stated, "The candidate ultimately offered the position of Chief of Police lacked the 5 years of command staff experience."

33. In short, the Defendants County and Board of Commissioners discriminatorily and intentionally manipulated its own selection criteria to ensure that a white male internal candidate

would be selected as its Chief of Police to the exclusion of qualified black and/or minority candidates.

**D. <u>The Defendants Fail to Promote Captain Bloom and Another African American Captain to the Rank of Assistant Chief of Police in Favor of Less-Qualified White Candidates During 2023</u>.**

34. Following his promotion to the position of Chief of Police, during March, 2023 Defendant Zill promoted Anderson Holder (white) from the rank of Sergeant to the rank of Captain. **<u>A mere 5 months later</u>**, in August 2023, Defendant Zill promoted Anderson Holder, an ERT member, to the rank of Assistant Chief of Police. In addition, Defendant Zill promoted Captain Jon Cole (white) to the rank of Assistant Chief of Police during August, 2023, albeit Cole's promotion would not be announced until after October 28, 2023.

35. The position of Assistant Chief of Police was not posted, nor was any competitive examination conducted as required by S.L. 1983-905, Sec. 8. Defendant County published no eligibility criteria for the position. Further, Holder had not held the rank of Captain for two or more years as had other Assistant Chiefs promoted to the position in previous years. Had the positions been posted, Plaintiff Captain Bloom and Captain Roberts would have applied for them.

36. At the time of Holder's promotion to Assistant Chief of Police, Captain Roberts was fully eligible and qualified for promotion to the position of Assistant Chief for several years. Further, at the time of Anderson Holder's promotion, Captain Roberts had held a command staff level position since January 2018, versus the less than 5 months Holder had held a Captain's rank. Holder's selection violated Defendant County's Police Department practice requiring that Assistant Chiefs have at least two years of experience as Captain. Moreover, Captain Roberts had more experience than Holder with the Gaston County Police Department. As of August, 2023, Anderson Holder had 17 years of experience with the Police Department versus Captain Roberts' 26 years of experience. Captain Roberts also had superior supervisory/management experience when compared to that of

Holder. At the time of Holder's selection, Roberts was the Captain over and supervisor of Defendant County's Telecommunication Division, and Captain Roberts' role was a very visible and significant one. This role was identical in responsibilities and liability to the job of Assistant Chief of Police, albeit the compensation is considerably less. Further, every other Captain who has commanded the Telecommunications Division has been promoted to the rank of Assistant Chief of Police within the Gaston County Police Department because of the similarities in responsibilities between Captain over Telecommunications and Assistant Chief of Police. Roberts was more qualified than Holder to be selected as Assistant Chief.

37. At the time of Holder's promotion to Assistant Chief of Police, Captain Bloom had been employed by the Defendant for 19 years, compared to Holder's 17 years of employment. Captain Bloom had more experience with the Gaston County Police Department than Holder and had more supervisory/management experience when compared to that of Holder. Captain Bloom was more qualified than Anderson Holder to be Assistant Chief.

38. Defendant Zill selected Holder and refused to select, or even consider, Captain Roberts or Captain Bloom for the position of Assistant Chief of Police because of their race.

39. Similarly, during August, 2023, Defendant Zill selected Captain Jon Cole (white) for the rank of Assistant Chief of Police. The Defendant County did not post this second available position nor was that position the subject of a competitive bidding or competitive examination process in violation of S.L. 1983-904, Sec. 8. Had that position been posted, both Captains Roberts and Bloom would have applied for it. At the time of Cole's promotion, Captain Roberts had superior supervisory/management experience when compared to that of Cole. Furthermore, prior to his promotion, Cole had announced that he had planned to retire from the Gaston County Police Department during 2024. Defendant Zill selected Cole and refused to select, or even consider, Captains Roberts or Bloom for the position of Assistant Chief of Police because of their race.

40. With regard to the selections of Holder and Cole to the positions of Assistant Chief of Police, Defendant Zill deliberately disregarded State law, conducted no competitive examination of eligible officers, and intentionally excluded Captains Roberts and Bloom from selection because of their race.

41. Neither Captain Roberts, nor Captain Bloom, nor any black officer has ever been fast-tracked for promotion in the same manner as Defendant Chief Zill and Assistant Chiefs, Anderson Holder and Matt Johnson, as described below. In addition, since his promotion to Captain in March, 2023, Assistant Chief Holder's hourly compensation almost doubled. Similarly, Assistant Chief Cole's hourly compensation dramatically increased since 2023.

42. Since at least 2011, all Assistant Chiefs of Police employed by Defendant County's Police Department have been white.

**E. <u>Captains Roberts and Bloom Lodge Complaints Regarding Defendant County's Discriminatory Employment Practices and Become the Targets of Disparate Treatment</u>.**

43. Since the promotion of Defendant Zill to the position of Chief of Police and since the promotion of Anderson Holder to Assistant Chief of Police, Captain Bloom, as well as Captain Roberts, have been the subject of disparate treatment in the terms and conditions of their employment.

44. During July, 2023, for instance, Defendant Zill claimed that Captain Roberts was on a Performance Improvement Plan and that he had not complied with its terms and demanded an explanation. The allegation that he had been placed on any formal Performance Improvement Plan is false and Captain Roberts immediate supervisor at that time, Assistant Chief Suzanne Mauney-Smith, stated she was unaware of any such Performance Improvement Plan directed at him. The falsity of Defendant Zill's allegation was also confirmed by Defendant County's Human Resources Director and Public Safety Director, Vincent Wong.

45. As another example of the disparate treatment and hostility directed at Captain Roberts, during October, 2023, Defendant Zill directed Captain Roberts to go home because he was wearing a gray shirt with his uniform and to change into a white shirt. Captain Roberts had been wearing a gray shirt for almost one year as had several white officers. On the date in question, Defendant Zill did not direct Captain Roberts' white counterparts, who were also wearing gray shirts, to go home and change.

46. In addition, since his promotion, Defendant Zill has questioned Captain Roberts' decision-making authority within the Communications Division and complained that he did not like how Captain Roberts writes his reports, but gave no feedback regarding what was objectionable about them. Captain Roberts, however, had never previously received any coaching or disciplinary action regarding his writing skills.

47. Further, since the promotion of Anderson Holder to the position of Assistant Chief of Police, Anderson Holder has refused to return Captain Roberts' calls and refused to engage in verbal communications with him. Instead, Holder required Captain Roberts to text or email him if he wished to have any communication with him at all. Captain Roberts has not observed Anderson Holder treat his white counterparts in a similar manner.

48. Both Chief Zill and Assistant Chief Holder have also excluded Captain Roberts from meetings where most, if not all, other Captains are included. For instance, Defendant Zill sent Captain Roberts to an out-of-county meeting that was not relevant to his position on a day when a critical meeting was being held with all Captains.

49. In connection with his 2023 Job Performance evaluation, Captain Roberts wrote that he found the current culture within the Gaston County Police Department to be "hostile and discriminatory" and that a "good old boys' club culture flourishes" under the administration of Defendant Zill. Defendant Zill was made aware of Captain Roberts remarks in connection with his

2023 evaluation.

50. In late November, 2023, Captain Roberts verbally complained to Defendant County's Human Resources Director, Amia Massey, and to Vincent Wong, Defendant County's Public Safety Manager, regarding actions and employment practices Captain Roberts reasonably perceived to be discriminatory on the basis of race and his previous protected activity. Ms. Massey, however, was dismissive of Captain Roberts' complaint and told him there would be no investigation unless he filed a formal grievance with the County.

51. On January 29, 2024, Captain Roberts filed a formal written grievance with Defendant County's Human Resources Department, alleging race discrimination in the area of promotional opportunities and disparate treatment because of race. In addition, Captain Roberts alleged that he had been subjected to a hostile working environment because of his race and because of his previous protected activity.

52. On January 29, 2024, Captain Roberts also filed a formal charge of discrimination with the U.S. Equal Employment Opportunity Commission, styled, "*Brent Roberts v. Gaston County, North Carolina*," EEOC Charge No. 430-2024-01433. In his charge of discrimination, Captain Roberts alleged that Defendant County discriminated against him in violation of Title VII of the Civil Rights Act, of 1964, as amended. A copy of Captain Roberts' charge of discrimination is attached hereto as "**Exhibit 2**."

53. On April 23, 2024, Defendant County concluded its investigation regarding Captain Roberts' internal grievance and dismissed his grievance as unsubstantiated. Despite Roberts' internal grievance and the filing of his charge of discrimination, Defendant County's Human Resources Department failed to monitor the working environments of both Captain Roberts and Captain Bloom to ensure that they are not the subject of reprisal from members of its County Police Department.

54. Unfortunately, Captain Roberts continued to be the subject of retaliatory conduct, as well as disparate treatment, because of his race and his protected activity.

55. In or about the first Quarter of 2024, Defendant Zill and Assistant Chief Holder began to research changes to the promotional practices of the County Police Department to ensure that Captain Roberts would not be eligible for promotion to a third vacancy within the rank of Assistant Chief of Police.

56. On or about June 10, 2024, Captain Bloom informed Captain Roberts that he had received a report from one of the white officers he supervises, that a former member of the ERT, wanted to physically assault Captain Roberts. On June 11, 2024, Captain Roberts, through his attorney, informed counsel for Defendant County of what he perceived as a threat to his personal safety. Despite this notification, neither Defendant County nor Defendant Zill undertook any investigation regarding this threat to Captain Roberts' personal safety and well-being nor implemented measures to ensure the safety of either Roberts or Bloom

57. Instead, on July 9, 2024, Assistant Chief Holder issued a non-disciplinary counseling to Captain Roberts for not responding to Holder's inquiry regarding where he would like to be assigned in the future. Because he had already expressed to Defendant Zill that he wished to remain in charge of the Communications Unit and had been given assurances that he would remain in this position, Captain Roberts did not respond to Holder's inquiry.

58. On July 29, 2024, the U.S. Equal Employment Opportunity Commission issued its Notice of Right to Sue to Captain Roberts in the matter of EEOC Charge No. 430-2024-01433. A copy of the Notice of Right to Sue is attached hereto as "**Exhibit 3**."

59. On or about August 2, 2024, *within days 3 days after* the EEOC issued its Notice of Rights to Captain Roberts, the Defendant County announced that it planned to fill a third Assistant Chief of Police position. In connection with this announcement, Defendants County and Stephen Zill

also announced that they had replaced the County's former promotional practices by implementing a new written policy for the Assistant Chief position. Specifically, the new policy states, in pertinent part, that

> Any sworn employee who receives a sustained violation from the list below will be ineligible for promotion or participating in a promotional process for Assistant Chief for a period of two (2) years from the date of adjudication of said allegation:
>
> * Unsatisfactory performance
> * Truthfulness
> * Insubordination
> * Conformance to laws that results in an arrest and conviction (e.g. DWI, Domestic Violence)
>
> Exceptions: Nothing in this policy shall serve to restrict the authority of the Chief of Police to make promotions, demotions, or appointments in any position he or she shall deem to be in the best interest of the Department.

In direct contravention of S.L. 1983-904, the change in the promotional policies of the Gaston County Police Department was not submitted to the Defendant Board of County Commissioners for approval, nor were employees given an opportunity to voice their concerns and make comments to the Board prior to the implementation of them.

60. The requirement that an applicant for the Assistant Chief position have no sustained disciplinary action for a 2-year period was never previously a stated requirement for the position. The new requirement that the applicant have no violations from the list for a period of two (2) years made Captain Roberts ineligible for promotion to the position of Assistant Chief, despite his overall qualifications, experience, knowledge, and years of service with Defendant County and despite his eligibility for promotion to the Assistant Chief positions in 2023.

61. The change to Defendant County's promotional process for the position of Assistant Chief was intended to exclude Captain Roberts from promotional opportunities because of his race and because of his protected activities under federal law. Captain Roberts was the only Captain who was negatively impacted by the new written policy. Although the new written promotional policy is silent

regarding whether it would apply retroactively or prospectively, the policy was applied retroactively to bar Captain Roberts from eligibility for the Assistant Chief position. Significantly, this change in policy which discriminatorily affected Captain Roberts was meant to send a message to Captain Bloom that he, too, would not be promoted within the Department.

62. On August 12, 2024, Captain Bloom submitted his letter of interest and resume to Defendant Zill consistent with Defendant County's new requirements for promotion to the third vacant position of Assistant Chief of Police. Defendant Zill did not interview Captain Bloom.

63. On August 15, 2024, Captain Roberts submitted his letter of interest and resume to Defendant Zill consistent with Defendant County's new requirements for promotion to the third vacant position of Assistant Chief. Defendant Zill did not interview Captain Roberts.

64. On September 3, 2024, Defendants Gaston County and Chief Zill rejected Captains Roberts' and Bloom's applications and announced that Matt Johnson (white) was promoted to the position of Assistant Chief of Police. At the time, neither Defendant Zill nor Defendant County provided Captain Roberts or Captain Bloom with any explanation for the decision to reject them from consideration for the position. Defendant Zill did not administer any competitive examination in connection with the promotional process to fill the Assistant Chief position.

65. Captain Bloom, as well as Captain Roberts, are more qualified than Matt Johnson to hold the position of Assistant Chief of Police. Matt Johnson was promoted to the rank of Captain in or about February, 2024. At the time of his promotion, Matt Johnson had held the rank of Captain for less than one year and had less supervisory training and experience than either Captain Roberts or Captain Bloom. Moreover, Bloom had more than 20 years of supervisory experience in comparison to Johnson's 17 years. Bloom had been a supervisor longer, had supervised in more specialized units and had held the rank of Captain longer than Johnson at the time of Johnson's promotion to Assistant Chief.

66. The explanation for Johnson's selection over Bloom is pretext for purposeful race discrimination and/or retaliation in violation of federal law.

67. On September 4, 2024, Defendants County and Zill informed Captain Roberts that he would be transferred from his position over the Communications Division to a patrol position. While the transfer did not affect Captain Roberts rank or hourly rate of pay, the new role required him to work almost every holiday and every other weekend. Further, it is a much more dangerous role than the position he held over the Communications Division. More significantly, the new patrol position is less prestigious and less visible than the position he held over Communications. In his former role over Communications, Captain Roberts interacted with County officials, as well as with more than 100 Chiefs and Assistant Chiefs of other area law enforcement departments, fire departments and EMS services. He was the only Captain who managed a $5,000,000.00+ budget.

68. Defendants' decision to transfer Captain Roberts to Patrol was a demotion for him. More significantly, Captain Roberts' transfer to Patrol resulted in the placement of the only African American Captains serving the Police Department into the Patrol Division, placing both of them in more danger and doing jobs usually reserved for newly promoted sergeants and captains.

69. Robbie Waldrop (white) was transferred to assume Captain Roberts' former position over the Communications Division. Like Anderson Holder, Captain Waldrop was only promoted to the position of Captain in July, 2023, by Defendant Zill. At the time of his promotion, Captain Waldrop did not have any previous experience in managing a multi-million-dollar budget and had not taken any formal executive accounting or management courses through the Gaston County Police Department or Gaston County. Further, at the time of his reassignment, Captain Waldrop had little workforce management experience.

70. Captain Bloom also experienced disparate treatment just like Captain Roberts. Following his promotion to the position of Assistant Chief of Police, Anderson Holder specifically questioned

Captain Bloom regarding his "feelings" concerning Holder's promotion to Assistant Chief of Police, stating that he had heard "rumors" about Bloom making negative remarks about Holder's promotion. Holder's notes of this conversation state that he felt Bloom's alleged remarks bordered on insubordination and that he intended to hold Bloom to a higher standard and could subject him to discipline if Holder substantiated such rumors. Captain Bloom denied the substance of the alleged rumors and was so upset about this conversation with Holder that he asked several of his white colleagues about the comment. At least one of these colleagues – another Captain - stated that they had witnessed and overheard negative comments made by members of the Gaston County Police Department about Captain Bloom and that he had to defend Bloom because of his association with Captain Roberts.

71. In November 2023, Assistant Chief Holder provided Captain Bloom with the lowest job performance evaluation score among all Captains. The evaluation was devoid of any areas of concern, and Assistant Chief Holder had been Captain Bloom's supervisor for only two months. When Captain Bloom questioned Assistant Chief Holder about the score, Holder stated that he "did not give high scores to new captains." However, Assistant Chief Holder evaluated Captain Waldrop (white) and gave him a higher job performance evaluation, despite the fact that Captain Waldrop was promoted to Captain ***after*** Captain Bloom. The difference in scores resulted in Captain Waldrop's receipt of a higher pay raise than Captain Bloom.

72. Following his discussion with Assistant Chief Holder, Captain Bloom spoke to Public Safety Manager, Vincent Wong, regarding his 2023 job performance evaluation. This conversation was not the first time Captain Bloom had discussed issues of race discrimination or racial disparity with Mr. Wong. While Mr. Wong stated he would "look into the matter," Captain Bloom has received no follow-up from him.

73. Since his discussion with Mr. Wong regarding his 2023 job performance evaluation, Assistant Chief Holder has undermined Captain Bloom's authority over his subordinates and has instructed him to disregard Gaston County Police Department policies. Further, Assistant Chief Holder has questioned Captain Bloom multiple times during 2024 about his decisions concerning his patrol squad and Captain Bloom has received at least one email from Assistant Chief Holder attacking Captain Bloom's ability to lead and directing him to stay in his lane of supervision.

74. On October 16, 2024, Captain Bloom filed a charge of discrimination against Defendant Gaston County, styled, "*Bloom v. Gaston County, NC*," EEOC Charge No. 430-2025-00213, alleging that he has been passed over for promotional opportunities in favor of less qualified white candidates and has been subjected to disparate treatment and harassment because of his race. In addition, Captain Bloom alleged that the Defendant County discriminates against African American officers as a class in violation of Title VII inasmuch as white officers have been fast-tracked for promotion over equally or more qualified black officers. A copy of Captain Bloom's charge of discrimination is attached hereto as "**Exhibit 4**"

75. Since the filing of his October 16, 2024 charge of discrimination, Captain Bloom has continued to face both race discrimination and retaliation because of his race, protected activity, and close association with Captain Roberts. He has frequently been denied participation on hiring boards and has been excluded from meetings in which significant decisions about policies and procedures have been made. This exclusion has diminished his role and reputational standing within the Gaston County Police Department and sends a message that he is not welcomed.

76. In addition, Captain Bloom's pay has been affected. At the time he was promoted to Captain in 2023, his compensation exceeded several of his white peers, including Captains Yancey, Hamrick, Isenhour, and Waldrop. Since that time, on information and belief, all of his peers have surpassed Captain Bloom's pay, despite Bloom's longer tenure, responsibilities and qualifications.

77. Further, Captain Bloom's conduct has been scrutinized and subjected to review by County Human Resources and/or Internal Affairs, whereas his white peers' behavior and conduct has not been questioned.

78. With regard to Captain Bloom's Title VII claim against the County stemming from its failure to promote him to the rank of Assistant Chief of Police in August, 2024, and its ongoing retaliation, the EEOC issued its Notice of Right to Sue to Bloom in April 9, 2026 in connection with EEOC No. 430-2025-00213.

79. The Defendants were motivated in whole and/or in part to discriminate against Captain Bloom as well as Captain Roberts because of their race and because of their protected activity.

80. As a result of the Defendants' refusal to promote him to the Assistant Chief of Police position 3 times, Captain Bloom has suffered and continues to suffer economic, professional and emotional harm. For example, as a Captain, Captain Bloom is paid significantly less than Assistant Chiefs Holder, Cole, and Johnson because they now receive a salary that is nearly at the top of the salary band for the rank of Assistant Chief of Police. Given his age and his expected retirement date, Defendants' refusal to promote Captain Bloom to the position of Assistant Chief of Police because of race and/or protected activity will result in the loss to him of salaries and other benefits, including retirement benefits, of over $500,000.00.

**<u>FIRST CLAIM FOR RELIEF AGAINST DEFENDANT GASTON COUNTY</u>**
**(Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* – Race Discrimination, Promotions)**

81. Captain Bloom realleges and incorporates by reference herein Paragraphs 1 through 80 of this Second Amended Complaint.

82. Title VII prohibits discrimination based upon an employee's race. This prohibition includes subjecting an individual to disparate treatment in the terms and conditions of his employment or refusing to provide promotional opportunities because of an employee's race.

83. Defendant Gaston County subjected Captain Bloom to disparate treatment by rejecting him as a candidate for promotional opportunities for which he was qualified and by promoting less qualified white candidates in 2023 and 2024 to the position of Assistant Chief of Police.

84. Defendant Gaston County's explanation for its failure to promote Captain Bloom to the position of Assistant Chief of Police in 2023 and in 2024 is a pretext for purposeful race discrimination.

85. Captain Bloom' s race was a motivating factor, in whole or in part, in the Defendant Gaston County's decision not to promote him to one of the two available Assistant Chief of Police positions in 2023 and to the one available Assistant Chief of Police position in 2024.

86. As a direct and proximate result of Defendant Gaston County's acts and omissions, Captain Bloom suffers and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits, including retirement benefits. In addition, Captain Bloom has sustained, as a direct and proximate result of Defendant County's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Bloom is entitled to have and recover of Defendant Gaston County back pay, front pay, and compensatory damages in amounts to be proved at trial.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS COUNTY AND BOARD OF COUNTY COMMISSIONERS

**(Violations of 42 U.S.C. § 1983 & 42 U.S.C. § 1981 – Race Discrimination & Retaliation; Denial of Promotional Opportunities, Discriminatory Transfer)**

87. Captains Bloom realleges and incorporates by reference herein Paragraphs 1 through 81 of this Second Amended Complaint.

88. Captain Bloom is a citizen of the United States of America.

89. Defendants County and Board of County Commissioners, and its Chief of Police, Defendant Stephen Zill, have deprived Captain Bloom of his right to be free of race discrimination within the workplace as secured by the Equal Protection Clause of the Constitution of the United States and the laws of the United States, such as Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 1981 and 42 U.S.C. Section 1983.

90. Section 1981 states that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

91. For purposes of Section 1981, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

92. Captain Bloom's employment relationship with Defendant County may be deemed a contractual one for purposes of Section 1981.

93. Similarly, 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State … subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress …."

94. Defendants County and Board of Commissioners, in coordination with, and by and through the actions of Defendant Zill, have deprived Captain Bloom of his right to be free of racial discrimination in the terms and conditions of his employment.

95. Defendants County and Board of County Commissioners, in coordination with, and by and through the actions of Defendant Zill, have established a custom, practice, or usage of racial discrimination by significantly changing and/or altering its promotional practices and policies in order to achieve the discriminatory goal of filling its highest-ranking positions, the positions of Chief of Police and Assistant Chief of Police, with white officers only. Through their manipulation of promotional policies and practices and their violation of state laws regarding the police department promotions, Defendants, Gaston County and its Board of County Commissioners, have created a widespread practice of discrimination against African American county employees. Alternatively, the Defendants, Gaston County and its Board of County Commissioners, have known about the acts of race discrimination in promotions committed by Defendant Zill and have failed to stop it, thus creating a custom and practice of such discrimination by endorsement.

96. The acts of Defendant Zill, at all times relevant to this Second Amended Complaint represent the acts of official policy, custom and usage by Defendants, Gaston County and its Board of County Commissioners.

97. Defendants, Gaston County and its Board of County Commissioners purposely and discriminatorily manipulated its employment policies to ensure that only white male candidates are considered for promotion to the positions of Chief of Police and Assistant Chiefs of Police to the exclusion of qualified black and/or minority candidates, including Captain Bloom. In this regard, Defendants, Gaston County and its Board of County Commissioners, in coordination with and by and through the efforts of Defendant Stephen Zill, discriminatorily

a. Deviated from state law by imposing a 5-year requirement of command level experience in connection with its position posting for Chief of Police in November 2022, thereby excluding Captain Roberts – the only qualified black internal candidate - from eligibility for the position.

b. Encouraged only white, non-minority internal candidates to apply for the Chief of Police position despite the fact that they failed to meet its 5-year requirement of command level experience to the exclusion of its

black Captains – Brent Roberts and Eric Johnson.

c. Returned the 3 white internal male candidates to the application process for the position of Chief of Police despite the fact that they had been disqualified to proceed to the second round of interviews, and were significantly less qualified than Roberts and external black candidates.

d. Selected Defendant Stephen Zill to the position of Chief of Police to the exclusion of more qualified black and/or minority candidates.

e. Failed to consider Captains Roberts and Bloom for promotion to the position of Assistant Chief of Police in August , 2023, and selected two unqualified white Captains over the qualified Plaintiffs.

f. Changed its internal practice for the selection of Assistant Chief of Police to ensure that Captain Roberts was ineligible for selection to the position in August, 2024.

g. Failed to consider Captains Roberts and Bloom for promotion to the position of Assistant Chief of Police in August, 2024.

h. Selected a white candidate for the position of Assistant Chief of Police who is less qualified for the role than Captains Roberts and Bloom on September 3, 2024.

i. Subjected Captain Roberts and Bloom to disparate terms and conditions of employment negatively affecting their promotional opportunities, professional reputation, and compensation, and, in the case of Captain Roberts, by transferring him to a lesser role, causing him injury respecting the terms and conditions of his employment.

98. Defendants Gaston County's and its Board of Commissioners' explanation for their failure to promote Captains Bloom or Roberts to the position of Assistant Chief of Police in 2023 and in August, 2024, is a pretext for purposeful race discrimination and retaliation.

99. Captain Bloom's race was the factor which prompted the Defendants Gaston County's and its Board of County Commissioners' decision not to promote him to one of the two available Assistant Chief of Police positions in 2023 and the third Assistant Chief of Police position in August, 2024.

100. As a direct and proximate result of Defendants Gaston County's and its Board of County Commissioners' acts and omissions, Captain Bloom suffers and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Captains Bloom has sustained, as a direct and proximate result of Defendants Gaston County's and its Board of County Commissioners' actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Bloom is entitled to have and recover of Defendants, Gaston County and its Board of County Commissioners, back pay, front pay, and compensatory damages in amounts to be proved at trial.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS GASTON COUNTY AND BOARD OF COUNTY COMMISSIONERS

**(Violation of 42 U.S.C. §§ 1983 and 1981 – Retaliation & Race - Hostile Working Environment)**

101. Captain Bloom reallege and incorporate by reference herein Paragraphs 1 through 100 of this Second Amended Complaint.

102. Since at least June, 2023, Defendants, Gaston County and its Board of County Commissioners, in conjunction with and by and through the actions Defendant Zill, have established a custom, practice, or usage of racial discrimination by creating a racially hostile and retaliatory work environment for Captain Bloom because of his race and protected opposition to employment practices which he reasonably believes to be discriminatory.

103. Defendants, Gaston County and its Board of County Commissioners sanctioned, ratified, and condoned the discriminatory acts and omissions of Defendant Zill and Assistant Chief Holder.

104. Defendants, County and its Board of County Commissioners, by and through the actions of Defendant Zill created a racially hostile and retaliatory work environment by, among other things, holding Captain Bloom to different workplace standards than those imposed by his white counterparts

and have also encouraged and promoted a work environment which was intended to discourage Captain Bloom, from assisting or supporting Captain Roberts in his protected activities.

105. Further, Defendants, County and its Board of County Commissioners, by and through the actions of Defendant Zill and Assistant Chief Holder, have created a racially hostile and retaliatory work environment by lowering Bloom's 2023 evaluation compared to that of a similarly-situated white Captain and by denying him a merit pay increase, by unjustly singling out Captain Bloom for unwarranted criticism following his verbal complaint to Vincent Wong, and by fomenting and encouraging negative rumors about Captain Bloom because of his association with Captain Roberts.

106. Such acts and/or omissions on the part of Defendants, Gaston County and its Board of County Commissioners, were deliberately intended to dissuade, and would dissuade a reasonable employee from filing further legal action to enforce his rights under the federal anti-discrimination statutes.

107. As a direct and proximate result of Defendants Gaston County's and its Board of County Commissioners' acts and omissions, Captain Bloom suffers and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Captain Bloom has sustained, as a direct and proximate result of Defendants County's and its Board of County Commissioners' actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Bloom is entitled to have and recover of Defendants, Gaston County and its Board of County Commissioners, back pay, front pay, and compensatory damages in amounts to be proved at trial.

**FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT STEPHEN ZILL IN HIS INDIVIDUAL CAPACITY**
**(Violation of 42 U.S.C. §§ 1983 and 1981 & U.S. Constitution – Race Discrimination; Retaliation)**

108. Captain Bloom realleges and incorporates by reference herein Paragraphs 1 through 107 of this Second Amended Complaint.

109. Defendant Stephen Zill directly participated, in his individual capacity, in the selection process for new Assistant Chiefs of Police and altered Defendant County's promotional policies and practices in order to effectuate the racially discriminatory result which they intended, i.e. – the selection of internal white candidates for promotion to the positions of Assistant Chiefs of Police. Captain Bloom's race, as well as his protected activities, were the factors in Defendant Zill's decisions to deny and/or to refuse him promotional opportunities with regard to the 3 Assistant Chiefs of Police positions.

110. Defendant Zill knew that his acts and omissions were in direct contravention of federal law prohibiting racial discrimination and retaliation with the regard to the terms and conditions of Captain Bloom's employment.

111. As a result of Defendant Zill's discriminatory and retaliatory acts and omissions, Captain Bloom has been deprived of his right to be free of race discrimination and retaliation within the workplace as secured by the Equal Protection Clause of the Constitution of the United States, Section 1981, and Title VII of the Civil Rights Act of 1964, as amended.

112. As a direct and proximate result of Defendant Zill's acts and omissions, Captain Bloom suffers and continues to suffer present and future pecuniary losses, including, but not limited to loss of wages and other benefits. In addition, Captain Bloom has sustained, as a direct and proximate result of Defendant Zill's actions, damages in the form of emotional distress, including, but not limited to anxiety, depression, humiliation, embarrassment, and loss of professional standing. Accordingly, Captain Bloom is entitled to have and recover of Defendant Zill, in his individual capacities, jointly and/or severally, back pay, front pay, and compensatory damages in amounts to be proved at trial.

113. Defendant Zill's acts and omissions were undertaken with malice and/or a reckless indifference to Captains Bloom's federally protected rights. Accordingly, Captain Bloom is entitled to have and recover from Defendant Zill, jointly and/or severally punitive damages in amounts to be proved at trial.

## PRAYER FOR RELIEF

Wherefore, the Plaintiff, Captain Reginald E. Bloom, Jr., respectfully requests the Court to:

A. Enter a judgment in his favor and grant a permanent injunction enjoining all Defendants from engaging in unlawful employment practices because of race and retaliation, including those practices which violate Title VII, Section 1981, Section 1983, and the U.S. Constitution.

B. Order the Defendants, jointly and/or severally, to make Captain Bloom whole by providing him with equitable relief and monetary damages in an amount in amounts to be proved at trial for present and future lost wages and benefits, as well as for their emotional distress, anxiety, and humiliation caused by the acts of the Defendants.

C. Order Defendant, Stephen Zill, in his individual capacity, to pay to Captain Bloom punitive damages in amounts to be proved at trial for their discriminatory and retaliatory actions taken under color of state law against him.

D. Award Captain Bloom his reasonable costs and attorney's fees incurred in this action as provided by federal law.

E. Grant such further and different relief to Captain Bloom as the Court deems necessary and proper under the circumstances.

## JURY TRIAL DEMANDED

The Plaintiff, Captain Reginald E. Bloom, Jr., demands a jury trial regarding the matters alleged herein.

This the 23rd day of September, 2026.

*/s/ Jenny L. Sharpe*
Jenny L. Sharpe
Attorney for Plaintiff
N.C. State Bar No. 13698

**J SHARPE, PLLC**
15720 Brixham Hill Avenue
Suite 300
Charlotte, NC 28277
Telephone: (704) 944-3272
Facsimile: (704) 944-3201
Email: sharpeattorney@gmail.com

*/s/ Julie H. Fosbinder*
Julie H. Fosbinder, Esq.
Attorney for Plaintiff
N.C. State Bar No. 19400

**FOSBINDER LAW OFFICE**
840 Seneca Place
Charlotte, North Carolina 28210
Telephone: (704) 560-8600
Email: Jhanfos2@gmail.com

<u>BLOOM V. GASTON COUNTY ET.AL.</u>

<u>SECOND AMENDED COMPLAINT EXHIBIT 1</u>

chad brown

All Posts People Groups Photos Videos

**Chad Brown**

Going to start a white dudes for Brown. Who's with me!! What no one wants to join. Not one white dude rrally. Not one.




Anderson Holder and 7 others · 2 comments

Like · Send · Share

**Chad Brown**
May 26

Last night the intensity was unrivaled!!!
#ncgop #3rdnamedownvotechadbrown #chadbrownforncsecretaryofstate #ncpol



Video · Marketplace · Notifications · Menu

BLOOM V. GASTON COUNTY ET.AL.

SECOND AMENDED COMPLAINT EXHIBIT 2

# E-File for Attorneys Information

**EEOC Charge Number: 430-2024-01433**
**Date: 01/29/2024**

**Verified Path**

Receiving Office: Charlotte District Office

## Attorney Information

Name: Jenny L. Sharpe Esq.
Pronouns:
Address: 15720 Brixham Hill Avenue Suite 300
Charlotte, NC 28277
Email Address: sharpeattorney@gmail.com
Primary Phone: 704-858-2581
Secondary Phone: 704-944-3272
Fax: 704-944-3201

Language Needs:
Disability Needs:

Bar Number: 13698
Bar Jurisdiction: North Carolina

## Client Information

Name: Mr. Brent Roberts
Pronouns:
Address: 205 Cooke Circle
Kings Mountain, NC 28086
Email Address: brobertsgcp@yahoo.com
Primary Phone: 704-616-6425
Secondary Phone:

Date of Birth: 01/22/1975
Gender: Male
Disability: No
Hispanic or Latino: No
Race: Black or African American
Ethnicity/National Origin Group: Unavailable
Ethnicity/National Origin: Unable to Obtain Information from Charging Party

Language Needs:
Disability Needs:

## Respondent Information

Name: Gaston County North Carolina
Address: 128 West Main Street
Gastonia, NC 28053
Primary Phone: 704-866-3400
Fax:

Institution Type: County/City/Local Govt. Agency

C

Number of Employees: 201 - 500 Employees

North American Industry Classification System (NAICS) Code:
Tax Identification Number:

Worksite Address:
128 West Main Street, Gastonia, NC, 28053

Service Address: 128 West Main Street, Gastonia, NC, 28053

## Allegation Information

Allegations: Race, Retaliation

## Additional Information

Class: Yes
Other similarly-situated black employees who are qualified for promotion within the Gaston County Police Department

Policy: Yes
The acts and omissions described in this charge involve the County's promotional policies and practices.

Related Inquiries/Charge: I dont know

Related Lawsuit: No

Requested Immediate Notice of Right to Sue: No

Requested Mediation: Yes

**CHARGE OF DISCRIMINATION**
This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form.

ENTER CHARGE NUMBER
☐ FEPA
X EEOC

| | | |
|---|---|---|
| NAME (Indicate Mr., Ms., or Mrs.)<br>BRENT ROBERTS | HOME TELEPHONE NO. (Include Area Code)<br>(704) 616-6425 | DATE OF BIRTH<br>01/22/1975 |
| STREET ADDRESS<br>205 Cooke Circle | CITY, STATE AND ZIP CODE<br>Kings Mountain, NC 28086 | COUNTY<br>Gaston |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| | | |
|---|---|---|
| NAME<br>Gaston County, NC | NO. OF EMPLOYEES/MEMBERS<br>300+ | TELEPHONE NUMBER (Include Area Code)<br>(704) 866-3400 |
| STREET ADDRESS<br>128 West Main Street | CITY, STATE AND ZIP CODE<br>Gastonia, NC 28053 | |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

X RACE ☐ COLOR SEX ☐ RELIGION ☐ NATIONAL ORIGIN

☐ AGE X RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE: 2/10/2023 and continuing
(Month, day, year)

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):
Please see attachment to charge of discrimination.

I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and beliefs.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

BRENT ROBERTS
Date Charging Party Signature
1-24-2024 Brent Roberts

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month and year)

*Attachment to Charge of Discrimination*
***BRENT ROBERTS v. GASTON COUNTY, NORTH CAROLINA***
*EEOC Charge No.* ____________________

1. I am an African American citizen and resident of Gaston County, North Carolina. My date of birth is January 22, 1975. I am currently employed as a Captain by the Gaston County Police Department.

2. I have been employed by the Respondent since August, 1997. Since that time, I have served in various capacities, including Field Training Officer, Master Police Officer, Sergeant and as Captain. I have also worked in multiple sections within the department as well, such as patrol, school resource, highway interdiction, recruitment, filed training, special investigations, honor guard, and communications. In my current assignment, I supervise 63 telecommunicators or about 24% of the department's employees. I have over 26 years of experience in law enforcement and currently, I am the second most senior captain in the Department.

3. The position of Chief of Police was announced and posted on November 4, 2022. The qualifications for the position stated that "Gaston County seeks a law enforcement leader with a minimum of 10 years of progressive law enforcement experience, including 5 years of senior/management experience at a command staff level; a BA or BS degree (Master's degree strongly preferred); a valid NC drivers' license, or the ability to obtain one .... Executive law enforcement training (e.g. – FBI National Academy, SMIB, FBI LEEDA, Administrative Officers Management Program, etc.) preferred."

4. On or about February 10, 2023, I was notified that Respondent selected Captain Stephen Zill (white) for promotion to the position of Chief of Police. Captain Zill, however, did not meet the minimum qualifications for the position. He does not have a Master's degree nor does he possess extensive executive law enforcement training. Further, Captain Zill had only occupied a command position for 19 months. He did not have 10 years of progressive law enforcement experience as he had been promoted to the rank of sergeant in January of 2016. A "command staff level" within the Gaston County Police Department is at the level of Captain or above. At the time of his application, Captain Zill did not meet the minimum qualifications for the position of Chief of Police.

5. I did not apply for the Chief of Police position at that time because I did not have 5 years of senior/management experience at a command staff level as the County required. Instead, I had been in a command staff level position for only 58.5 months or approximately 4.875 years. Had I known that the Respondent intended to waive that requirement during the selection process, I would have applied for the Chief of Police position.

6. Following Captain Zill's installation as Chief of Police, the Respondent, by and through its new Chief of Police, promoted Anderson Holder (white) from the position of Sergeant to the position of Captain in March of 2023. On or about August 5, 2023, Chief Zill promoted Mr. Holder to the position of Assistant Chief of Police. Subsequently, on or about November 14,

2023, Chief Zill promoted Captain John Cole (white) to the position of Assistant Chief of Police. These positions were not formally posted and were not subject to a competitive promotion process as required by North Carolina State Law S.L. 904-626 Section 8.

7. I am more qualified to hold the position of Assistant Chief of Police than either Mr. Holder or Mr. Cole.

8. I contend that these promotions violate state law, as well as the federal anti-discrimination laws, including Title VII. Under state law, "promotions to any position other than that of Chief of Police shall be made by the Chief of Police after a competitive examination is administered to eligible officers." No competitive examination was conducted by Chief Zill or the Respondent prior to the promotions of Mr. Holder and Mr. Cole. The promotions made by Respondent, by and through Chief Zill, have negatively impacted me, however, because of my race and have had the effect of negatively impacting African American employees in the area of promotional opportunities.

9. The Respondent has established well-defined practices and policies for every rank within the Gaston County Police Department that consists of competitive examinations administered to all eligible candidates, except for the rank of Assistant Chief of Police. Every promotional process for other supervisory positions requires that the candidate submit at least a resume and cover letter, and must be subject to a minimum experience requirement, an interview, and assessment center, except for the position of Assistant Chief of Police. Even lateral promotions require at least a resume, cover letter, and interview. The exclusion of the Assistant Chief's position from this established practice discriminates and adversely affects minority candidates and has discriminated against me individually because of my race. The position of Assistant Chief of Police carries a substantially higher pay grade than my current position of Captain.

10. Chief Zill has repeatedly stated that the "ERT (Emergency Response Team) makes the best leaders." The ERT, however, comprises only around 15% of the Gaston County Police Department and all members of ERT (the entry and sniper team) are white. Assistant Chief Holder and Chief Zill were part of ERT prior to their promotions to their new positions and Holder is the Chief's best friend. Assistant Chief Cole worked closely with ERT and was a high school friend of Chief Zill at Hunter Huss High School prior to his promotion. For Chief Zill to make this comment is tantamount to saying that only "white males make the best leaders."

11. Throughout the last few years of my employment with the Respondent, I have complained internally of racial discrimination at the Gaston County Police Department. For instance, during 2022, I complained to then Chief Joseph Ramey that a white Assistant Chief of Police made negative comments about me, including the statement that I "was dead to him" and made other derogatory comments about me in the presence of others.

Chief Ramey, at that time, told me that this particular Assistant Chief of Police was "his friend and that he would never say this." I also lodged a complaint with Respondent's HR Department and complained that I felt I was being subjected to a racially-hostile working environment. Following my complaint to Human Resources, Chief Ramey told me that all complaints were to be lodged with him, before they were taken to Human Resources. Amia Massey, Respondent's HR Director, required me to turn in my complaint to Chief Ramey even though he was part of the complaint.

12. Since his installation, Chief Zill also has created a racially hostile and retaliatory working environment. Since his installation, Chief Zill has attempted to undermine my supervisory role within telecommunications. Although I have not received any formal disciplinary warnings while employed with the Gaston County Police Department, Chief Zill claimed that he could not understand my written reports and did not like how I write them. In addition, during July, 2023, he claimed that I was on a Performance Improvement Plan and that I had not done anything to comply with the action plan. I had not, however, been placed on any Improvement Plan, and at the time, my former supervisor, Assistant Chief Suzanne Mauney-Smith, stated she was unaware of my placement on any disciplinary Performance Improvement Plan. I was later told by Human Resources that this was a "misunderstanding." In October, 2023, Chief Zill directed me to go home because I was wearing a gray shirt with my uniform and to change into a white shirt. I had been wearing the gray shirt for almost one year and at least two other white officers also wore them. While I complied with Chief Zill's request, the other white officers were not told to go home and change and were permitted to continue to wear their gray shirts. I believe these actions were taken against me because of my race and because of my past opposition to Respondent's discriminatory employment practices.

13. I am required to report to Assistant Chief Holder at this time. Assistant Chief Holder ignores my requests to communicate and I have been excluded from meetings that I would ordinarily attend.

14. I complained to Respondent's Human Resources Director, Amia Massey, verbally regarding all of these issues during November, 2023 and I also included some of my complaints of discrimination in my comments to my 2023 Job Performance Evaluation. Since that time, I am unaware of any investigation which has been or is being conducted by Respondent regarding my complaints of race discrimination and the creation of a racially hostile working environment. Amia Massey the HR Director stated she could investigate Chief Zill and my claims, but that I would have to turn it in to Chief Zill first, the subject of my complaint.

15. I have filed an internal formal grievance and/or complaint of discrimination with Gaston County.

16. For the foregoing reasons, I allege that Respondent has discriminated against me by denying me promotional opportunities because of my race and that it has created a racially-hostile and retaliatory working environment for my opposition to its employment practices all in violation of Title VII of the Civil Rights Act of 1964, as amended. I also allege that the Respondent discriminates against African American employees as a class in violation of Title VII in the area of promotional opportunities.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
# E-FILE FOR ATTORNEYS

**RE:** EEOC Charge No. 430-2024-01433

1. I acknowledge that I am submitting a charge of discrimination with the EEOC on behalf of Mr. Brent Roberts against Gaston County North Carolina.
2. I acknowledge that the EEOC is required to serve notice of the charge on Gaston County North Carolina, and that the notice may include Mr. Brent Roberts's name or other identifying information.
3. I certify that (1) I am an attorney licensed to practice law, (2) I represent Mr. Brent Roberts, (3) this client has authorized me to submit this charge, and (4) the information I am providing is true and correct to the best of my knowledge.

**Signature**

Jenny L Sharpe

Jenny L Sharpe

**Date**

01/29/2024

BLOOM V. GASTON COUNTY ET.AL.

SECOND AMENDED COMPLAINT EXHIBIT 3

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 07/29/2024

To: Mr. Brent Roberts
205 Cooke Circle
Kings Mountain, NC 28086

Charge No: 430-2024-01433

EEOC Representative and email: KYLE PFLAGER
Investigator
kyle.pflager@eeoc.gov

---

## DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 430-2024-01433.

On behalf of the Commission,

DN: cn=TaKeesha R. Washington, o=Equal Employment Opportunity Commission, ou=Charlotte District Office, email=takeesha.washington@eeoc.gov, c=US
Date: 2024.07.29 14:05:56 -04'00'

for

Elizabeth "Betsy" Rader
District Director

Cc:
Kathleen Lucchesi
Jackson Lewis, PC
200 S College St Ste 1550
Charlotte, NC 28202

John Joye
Gaston County
PO BOX 1578 JOHN JOYE@GASTONGOV COM
Gastonia, NC 28053

Amia Massey
Gaston County Police Department
128 West Main Ave
Gastonia, NC 28052

Jenny L Sharpe Esq.
J Sharpe, PLLC
15720 Brixham Hill Avenue Suite 300
Charlotte, NC 28277

Please retain this notice for your records.

# Information Related to Filing Suit Under the Laws Enforced by the EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## Important Time Limits – 90 Days to File a Lawsuit

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice.** Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## Attorney Representation

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## How to Request Your Charge File and 90-Day Time Limit for Requests

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 430-2024-01433 to the

District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 430-2024-01433 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# BLOOM V. GASTON COUNTY ET.AL.

# SECOND AMENDED COMPLAINT EXHIBIT 4

U.S. Equal Employment Opportunity Commission

# Confirmation

You have successfully filed a charge of discrimination against Gaston County North Carolina.

Charge Number
430-2025-00213

Date
October 16, 2024

Respondent
Gaston County North Carolina

Charging Party
Mr. Reginald E Bloom Jr.

Attorney
Jenny L Sharpe

Assigned EEOC Office
Charlotte office
(980) 296-1250

Once EEOC staff is assigned to this charge, their contact information will be available in the EEOC Public Portal.

**You and your client may access the file.** You may access the file in the EEOC Public Portal. To do so, you will need to log into the EEOC Public Portal using the account affiliated with the email address you provided for yourself (that is,

sharpeattorney@gmail.com). If you do not have an account, you should create an EEOC Public Portal account affiliated with that email address. Your client may also access the file in the EEOC Public Portal. For your client to do so, they will need to log in using the account affiliated with the email address you provided for them (that is, Reggie9924@gmail.com).

**Amending the charge.** You cannot amend a charge using this application. If you would like to amend a charge, please contact the EEOC staff assigned to that charge. You can find that information in the EEOC Public Portal.

If you have any questions or concerns, please contact us at e-file-for-attorneys@eeoc.gov.

Submit another charge:

◯ Against a different respondent based on different allegations

◯ Against a different respondent based on the same allegations

◯ Against Gaston County North Carolina based on different allegations

Is the charge for the same client or a different client?

◯ For Mr. Reginald E Bloom Jr.

◯ For a different client

A single charge may contain multiple allegations. When possible, please include all allegations involving the same client and the same respondent in a single charge.

Begin New Charge

Or

Return to top

EEOC.gov Privacy Policy Accessibility

U.S. Equal Employment Opportunity Commission

## Agency Contact Center

(800) 669-4000

**CHARGE OF DISCRIMINATION**
This form is affected by the Privacy Act of 1974: see Privacy Act Statement on the reverse before completing this form.

ENTER CHARGE NUMBER
☐ FEPA
X EEOC

| | | |
|---|---|---|
| NAME (Indicate Mr., Ms., or Mrs.)<br>**REGINALD E. BLOOM, Jr.** | HOME TELEPHONE NO. (Include Area Code)<br>(704) 674-9063 | DATE OF BIRTH<br>02/06/1978 |
| STREET ADDRESS<br>717 Hanna Woods Drive | CITY, STATE AND ZIP CODE<br>Cramerton, NC 28032 | COUNTY<br>Gaston |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| | | |
|---|---|---|
| NAME<br>Gaston County, NC | NO. OF EMPLOYEES/MEMBERS<br>300+ | TELEPHONE NUMBER (Include Area Code)<br>(704) 866-3400 |
| STREET ADDRESS<br>128 West Main Street | CITY, STATE AND ZIP CODE<br>Gastonia, NC 28053 | |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

X RACE ☐ COLOR SEX ☐RELIGION ☐NATIONAL ORIGIN

☐AGE RETALIATION ☐ DISABILITY ☐OTHER (Specify)

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE: 08/02/2024 and continuing
(Month, day, year)

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s)):
Please see the attachment to a charge of discrimination

I also want this charge filed with the EEOC.
I will advise the agencies if I change my address or telephone number, and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information, and beliefs.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
10/15/2024

REGINALD E. BLOOM, JR.
Date Charging Party Signature

*Attachment to Charge of Discrimination*
***REGINALD E. BLOOM, JR. v. GASTON COUNTY, NORTH CAROLINA***
*EEOC Charge No.* ___________________

1. I am an African American citizen and resident of Gaston County, North Carolina. My date of birth is February 6, 1978. I am currently employed as a Captain by the Gaston County Police Department.

2. I am a 1997 graduate of Woodbury Forest School, located in Orange, Virginia. After graduating high school, I obtained a B.A. in Political Science from Furman University in 2001. Respondent hired me in 2004 as a community police (Patrol) officer with the Gaston County Police Department. I was promoted to the Criminal Investigations Unit in 2007 after a competitive resume and interview board process. Since 2004, I have earned an Advance Law Enforcement Certification from the State of North Carolina. I have held various positions within the Police Department, including Emergency Response Team Negotiator in 2008 following a competitive selection process, Lead Criminal Investigations Detective in 2009, Field Training Officer in 2016 following a competitive selection process, Community Policing Patrol Sergeant in 2017 following a competitive selection process, Educational Service Unit Sergeant in 2019, Criminal Investigations Sergeant in 2020, Patrol Captain in 2023 following a competitive selection process, and Civil Emergency Unit Commander in 2023.

3. In July 2017, the Respondent promoted me from Patrol Officer to Sergeant. After holding the rank of Sergeant for 6 years, the Respondent promoted me to the rank of Captain on April 29, 2023.

4. Throughout my more than 20 years of dedicated service to Respondent Police Department, I have been recognized for my outstanding performance. For example, the Respondent recognized me for Sworn Employee of the Month in April 2007 and September 2008, Problem Solver of the Year in May, 2008, Outstanding Service in a Unit in May 2009, Chief's Commendation in May 2010, and for Civic Engagement Leadership during 2019-2020.

5. Since beginning my employment with Defendant County, I have progressed more slowly through the ranks than some of my white peers, even though I achieved high ratings on my annual job performance evaluations. Further, since at least, 2022, I have been warned by several of my fellow officers and supervisors that I should "distance myself" from Captain Brent Roberts because of Roberts' advocacy for racial equality within the Police Department. Captain Roberts has advocated for my advancement within Respondent Police Department and has filed at least two formal charges of race discrimination and retaliation with the EEOC. (EEOC Charge Nos. 430-2024-01433 & 430-2024-04567. These charges allege that the Respondent discriminates against black officers in the area of promotional opportunities.

6. I have regarded the comments from my white peers as a threat to my professional career within Respondent Police Department, and these comments have had the effect of chilling my desire to move forward with any complaints of my own until now.

In addition, since Captain Roberts filed his charges of discrimination, I have recently received extra scrutiny and the lowest evaluation I have ever received. My job performance did not warrant this heightened scrutiny and I believe that the lowered evaluation and heightened scrutiny was intended to keep me in my place and is a form of harassment.

7. On August 2, 2024, the Respondent changed its promotional process for promotion for Assistant Chief of Police and announced that it intended to conduct a promotional process to fill a third vacancy for that position. During 2023, it had filled two vacancies existing for the position of Assistant Chief of Police with white officers. These positions were not formally announced and no competitive application process was held in violation of North Carolina law and the standards of the Gaston County Police Department. I would have applied for those positions had an application process been held. My understanding of the promotional process for the position is the requirement that the applicant have held a position for a minimum of 2 years before being eligible to be promoted to the next higher rank.

8. On August 12, 2024, I submitted my application for promotion to the third Assistant Chief of Police position. I was not interviewed. On September 3, 2024, I was advised that Matt Johnson (white) was promoted into this position. The Chief of Police, Stephen Zill, had just promoted Johnson to the rank of Captain in January, 2024. I was not given an explanation regarding why I was not promoted to the position.

9. I have 20 years of experience in law enforcement compared to Johnson's 17 years. I have been a supervisor longer, supervised in more specialized units, and held the rank of Captain longer. I am more qualified than Matt Johnson to hold the position of Assistant Chief of Police.

10. Since 2023, Respondent has fast-tracked the promotions of the now Chief of Police, Stephen Zill (white), who was promoted from Captain to Chief of Police, Anderson Holder (white), who was promoted from the position of Sergeant to the position of Captain in March, 2023 and then to the position of Assistant Chief of Police on or about August 5, 2023. Matt Johnson (white) was promoted to the position of Sergeant sometime during 2020 and was promoted to Sergeant sometime during 2020 and was promoted from Sergeant to Captain in or about March, 2024 and is now an Assistant Chief of Police after only holding the rank of Captain for less than 7 months. As a result of their promotions to Assistant Chief of Police, the salaries of Holder and Johnson have increased substantially.

11. Based upon the foregoing facts, I allege that I have been denied promotional opportunities and have been the subject of disparate treatment and harassment because of my race. In addition, I further contend that the Respondent discriminates against African-American officers as a class inasmuch as white officers have been fast-tracked for promotion over equally or more qualified black officers in violation of Title VII.

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## E-FILE FOR ATTORNEYS

**RE:** EEOC Charge No. 430-2025-00213

1. I acknowledge that I am submitting a charge of discrimination with the EEOC on behalf of Mr. Reginald E. Bloom Jr. against Gaston County North Carolina.
2. I acknowledge that the EEOC is required to serve notice of the charge on Gaston County North Carolina, and that the notice may include Mr. Reginald E. Bloom Jr.'s name or other identifying information.
3. I certify that (1) I am an attorney licensed to practice law, (2) I represent Mr. Reginald E. Bloom Jr., (3) this client has authorized me to submit this charge, and (4) the information I am providing is true and correct to the best of my knowledge.

**Signature**

Jenny Sharpe

Jenny L Sharpe Esq.

**Date**

10/16/2024

BLOOM V. GASTON COUNTY ET.AL.

SECOND AMENDED COMPLAINT EXHIBIT 5

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, NC 28202
(980) 296-1250
Website: www.eeoc.gov

# DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 04/09/2026

To: Mr. Reginald E. Bloom Jr.
717 Hanna Woods Drive
Cramerton, NC 28032

Charge No: 430-2025-00213

EEOC Representative and email: JAMILAH MARTIN
INVESTIGATOR
JAMILAH.MARTIN@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 430-2025-00213.

On behalf of the Commission,

Jamilah Martin Digitally signed by Jamilah Martin
Date: 2026.04.09 10:00:04 -04'00'

For Elizabeth "Betsy" Rader
District Director

Cc:
Incident Location
Gaston County North Carolina
128 West Main Street
Gastonia, NC 28053

Kathleen Lucchesi
Jackson Lewis PC
200 S College St Ste 1550
Charlotte, NC 28202

Amia Massey
Gaston County Police Department
128 West Main Avenue
Gastonia, NC 28052

Jenny L Sharpe Esq.
J Sharpe, PLLC
15720 Brixham Hill Avenue Suite 300
Charlotte, NC 28277

Please retain this Notice for your records.

# INFORMATION RELATED TO FILING SUIT UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal.** You should **keep a record of the date you received EEOC's official notice of dismissal.** Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to: https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 430-2025-00213 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 430-2025-00213 to the District Director at Elizabeth "Betsy" Rader, 129 West Trade Street Suite 400, Charlotte, NC 28202.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that she has filed a copy of the foregoing Plaintiff's Second Amended Complaint using the ECF/CMS system which shall serve and email a copy of the same to the following individuals:

Kathleen K. Lucchesi
Kelly A. Walker
**LITTLER MENDELSON, P.C.**
620 S. College Street, Ste. 905
Charlotte, North Carolina 28202
Email: KLucchesi@littler.com
Kewalker@littler.com
*Attorneys for Defendants Gaston County, the Gaston County Board of County Commissioners, & Stephen Zill*

This the 23rd day of September, 2026.

/s/ Jenny L. Sharpe
Jenny L. Sharpe
Counsel for Plaintiff